## SUBLEASE BETWEEN LITCHAIN CORP.,

### AS SUBLANDLORD AND ISW Holdings Inc AS SUBTENANT SUBLEASE

SUBLEASE made as of the 18th day of October, 2021 (this "**Sublease**"), by and between LITCHAIN CORP., a Florida corporation having an address at 3415 W Lake Mary Blvd, Suite 950702, Lake Mary Florida 32795 ("**Sublandlord**"), and ISW Holdings Inc, a a Nevada corporation having an office at 700 Louisiana St, Suite 3950, Houston Texas 77002 ("**Subtenant**").

### W I T N E S S E T H :

**WHEREAS**:

A. By lease dated 23rd Of September 2021 (the "**Master Lease**"), Gaffney Board Of Public Works (the "**Master Landlord**") leased to Sublandlord certain space (the "**Premises**") in the property known as the Suez Station aka 154 Hyatt Street Gaffney SC29340 as more particularly described in the Master Lease. A true copy of the Master Lease has been delivered to Subtenant, from which certain economic terms which do not relate to Subtenant's obligations hereunder have been deleted.

B. Sublandlord and Subtenant desire to consummate a subleasing of a portion consisting of 2.93 acres of the Premises (the "**Subleased Premises**"), shown cross hatched on Exhibit A attached hereto, on the terms and conditions contained in this Sublease.

C. Capitalized terms used herein without definition which are defined in the Master Lease shall have the same meaning herein as given to such terms in the Master Lease.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter contained, it is hereby agreed as follows:

### ARTICLE I. SUBLEASED PREMISES, TERM AND FIXED RENT.

**1.1.**

(a) Sublandlord hereby leases to Subtenant and Subtenant hereby hires from Sublandlord the Subleased Premises, for a term (the "Sublease Term") to commence upon the later of (i) October 1, 2021, and (ii) Sublandlord's receipt of Master Landlord's written consent to the Sublease (the "Sublease Commencement Date"), and to end on September 30, 2029 or on such earlier date on which this Sublease may be cancelled or terminated pursuant to any of the provisions of this Sublease or the Master Lease or pursuant to law (the "Sublease Expiration Date"). At Sublandlord's request, Subtenant shall execute and deliver to Sublandlord a letter setting forth the Sublease Commencement Date. Any failure of the parties to execute such letter agreement shall not affect the validity of the Sublease Commencement Date as fixed in accordance with the applicable provisions of this Sublease.

(b) Subtenant shall pay on behalf of Sublandlord the fixed rent (the "Fixed Rent") as set forth on Exhibit B attached hereto and made a part hereof to Sublandlord:

if by mail at:

1

EXHIBIT B to Blockquarry Compl.

Litchain Corp

3415 W Lake Mary Blvd

Suite 950702

Lake Mary, FL 32795

in advance in equal monthly installments as set forth on <u>Exhibit B</u>, without prior demand, offset, abatement or deduction, on or before the first day of each month during the Sublease Term, commencing on the Sublease Commencement Date (the "**Rent Commencement Date**"). Notwithstanding the foregoing, one (1) calendar month's Fixed Rent shall be paid by Subtenant to Sublandlord upon Subtenant's execution hereof, and be applied to the first Fixed Rent payable hereunder for the first full calendar month after the month in which the Rent Commencement Date occurs.

(c)    If the Rent Commencement Date occurs on a day other than the first day of a month, Fixed Rent from such day through the last day of the then calendar month shall be prorated on a per diem basis and shall be payable, in advance, on or before the Rent Commencement Date.

**1.2.**

(a)    Subtenant shall also pay to Sublandlord, as Additional Rent (as hereinafter defined) under this Sublease, effective as of the Sublease Commencement Date, all other additional rent and other charges payable by Sublandlord to Master Landlord pursuant to the Master Lease, including, without limitation, (i) for work, utilities, services and/or labor provided to the Subleased Premises by Master Landlord during any time that is not normal business hours, or (ii) in excess of work, services, utilities and/or labor provided for in the Master Lease to be without charge or fee to the Subleased Premises, or (iii) at the request of Subtenant or otherwise pertaining solely to the Subleased Premises, or (iv) with respect to alterations to the Subleased Premises by or for the account of Subtenant, or (v) charges for utilities provided to the Subleased Premises, but excluding from the provisions of this sentence Escalation Rent (as defined in Article IV hereof) payable pursuant to the Master Lease.

(b)    The cost of electric energy is not included in the Fixed Rent payable hereunder. Commencing on the Sublease Commencement Date, Subtenant shall pay for electricity, by payment directly to the local utility service providing such energy as provided in the Master Lease.

(c)    All rent (other than Fixed Rent) and other sums payable by Subtenant pursuant to this Sublease, including, without limitation, Electric Charges and Sublease Escalation Rent (as hereinafter defined) (collectively, "**Additional Rent**") shall be paid within five (5) days after Subtenant's receipt of the bill therefor, without offset, abatement or deduction.

**1.3.**    If Subtenant shall default in the payment of any sums due under Section 1.2 hereof or of any Sublease Escalation Rent or any other Additional Rent, Sublandlord, in addition to any other right or remedy, shall have the same rights and remedies as in the case of a default by Subtenant in the payment of Fixed Rent.

EXHIBIT B to Blockquarry Compl.

**1.4.**   This Sublease is conditioned upon the consent thereto by Master Landlord, which consent shall be evidenced by Master Landlord's signature appended hereto or a separate consent in the standard form utilized by Master Landlord for such purposes. Sublandlord agrees promptly to request such consent, but Sublandlord shall have no responsibility or liability whatsoever if such consent is refused or not obtained for any reason whatsoever or for no reason, including Master Landlord exercising its right of recapture, and Sublandlord shall have no obligation to initiate any litigation or other proceeding or pay any sums to Master Landlord to obtain such consent (other than such sums, if any, which Sublandlord is required to pay pursuant to the express provisions of the Master Lease). Subtenant agrees to cooperate with Sublandlord with respect thereto and to furnish all financial statements, references and other data with respect to Subtenant as Master Landlord may request in accordance with the provisions of the Master Lease and execute and deliver such consent form provided by Master Landlord. In the event that Master Landlord notifies Sublandlord that Master Landlord will not give such consent, Sublandlord will so notify Subtenant and this Sublease shall be deemed to be canceled and without force or effect. In the event that the previous sentence does not apply but Sublandlord does not receive such consent of Master Landlord by a date which is sixty (60) days after the date of this Sublease, then, upon written notice to the other, Sublandlord or Subtenant may cancel this Sublease, and upon the giving of such notice, this Sublease shall be deemed canceled and of no further force or effect. If either of the two (2) previous sentences shall be applicable, Sublandlord shall promptly return to Subtenant any pre-paid rent and security deposit heretofore paid hereunder and thereafter Sublandlord and Subtenant shall have no further obligations or liabilities to the other with respect to this Sublease.

## ARTICLE II. PROVISIONS OF MASTER LEASE, ETC.

**2.1.**   All of the terms, covenants, conditions and provisions in the Master Lease, including specifically the provisions regarding Tenant's default and Landlord's remedies with respect thereto, are hereby incorporated in, and made a part of this Sublease, except (i) as herein otherwise expressly provided; (ii) which by their nature or purport are inapplicable to the subleasing of the Subleased Premises pursuant to this Sublease; (iii) are inconsistent with or modified by any of the terms, covenants or conditions of this Sublease; (iv) the obligation to pay rent and additional charges under the Master Lease; and such rights and obligations are hereby imposed upon the respective parties hereto with the same force and effect as if (A) references in the Master Lease to the "Lease" and to the "Premises" were references, respectively, to this Sublease and the Subleased Premises, and (B) references in the Master Lease to "Landlord" and "Tenant" were references, respectively, to Sublandlord and Subtenant and (C) references in the Master Lease to "Rent" and "Additional Rent" (D) references in the Master Lease to "Term" and "Commencement Date" were references to Sublease Term and Sublease Commencement Date herein; provided, however, with reference to this Sublease:

(a)   Subtenant's covenant to pay Fixed Rent and Additional Rent (collectively, the "Sublease Rent") shall be independent of every other covenant in this Sublease. Sublandlord's failure to prepare and deliver any statements or notice set forth in Article IV hereof or elsewhere in this Sublease, or Sublandlord's failure to make a

demand, shall not in any way cause Sublandlord to forfeit or surrender its rights to collect any items of Sublease Rent which may have become due during the Sublease Term. Subtenant's liability for such amounts shall survive the expiration of the Sublease Term.

(b)   Subtenant agrees that the Subleased Premises shall be occupied only as executive, administrative and general offices for Subtenant's business as a Crypto Hosting & Mining Facility.

(c)   References in the Master Lease to work, repairs or restorations to be performed or services or maintenance to be supplied by "Landlord" in respect of the Subleased Premises shall continue to mean and provide that such work, repairs or restorations shall be performed and services or maintenance provided by Master Landlord (and not by Sublandlord) pursuant to the terms, covenants and conditions of the Master Lease, applicable to the Subleased Premises.

(d)   Except as otherwise expressly set forth herein, all notice or cure periods of Subtenant provided for herein or other time limits for Subtenant to give notice or perform any act, condition or covenant, or exercise any right or remedy, shall be the same as those provided for in the Master Lease, but reduced by the greater of 25% (rounded to the greatest reduction) or three (3) days and, if notice is required, measured from the earlier of the date on which notice is given to Subtenant by either Master Landlord or Sublandlord.

(e)   Supplementing the Master Lease, if a separate consent by Master Landlord to this Sublease is signed by Subtenant, the term "Master Lease" and "Sublease" as used herein shall each be deemed to include such consent, and it shall be a default under this Sublease if Subtenant shall default in the full and timely performance of any of its covenants and other agreements set forth in such consent.

**2.2.**

(a)   This Sublease and all rights of Subtenant hereunder are and shall be subject and subordinate in all respects to the Master Lease and all of the terms, covenants, agreements, provisions and conditions of the Master Lease, and to all modifications, amendments and extensions of the Master Lease and to all of Sublandlord's obligations under the Master Lease. Sublandlord agrees with Subtenant that so long as Subtenant is not in default hereunder, Sublandlord shall not enter into any modification or amendment to the Master Lease not expressly provided for or contemplated by the Master Lease, which will prevent or materially adversely affect the use by Subtenant of the Subleased Premises in accordance with the terms of this Sublease, or increase the obligations of Subtenant or decrease its rights under the Sublease in any other way materially adversely affecting Subtenant.

(b)   Subtenant shall duly and fully keep, observe and perform each and every term, covenant, provision and condition on Sublandlord's part to be kept, observed and performed pursuant to the Master Lease as incorporated herein, including, without limitation, the rules and regulations adopted by Master Landlord pursuant thereto, except as may otherwise be specifically provided in this Sublease. In furtherance of the foregoing and notwithstanding anything herein to the contrary, Subtenant shall

EXHIBIT B to Blockquarry Compl.

not (i) take or permit any action inconsistent with the terms of the Master Lease or, (ii) do or permit to be done anything which Sublandlord is prohibited from doing or permitting under the Master Lease, or otherwise do or suffer to permit anything to be done which would result in a default under the Master Lease or cause the Master Lease to be terminated or forfeited, or (iii) take any action or do or permit anything to be done which could result in any additional cost or other liability to Sublandlord under or pursuant to the Master Lease.

2.3.    If, for any reason whatsoever, the Master Lease is terminated as to the Subleased Premises, by either Master Landlord or Sublandlord, including, without limitation, Sublandlord's termination of the Master Lease and in the event of any damage, destruction or condemnation with respect to all or part of the Subleased Premises, this Sublease shall thereupon be terminated, and Sublandlord shall not be liable to Subtenant by reason thereof for any loss, cost or expense incurred by Subtenant in connection therewith, unless said termination shall have been effected because of the breach or default of Sublandlord under the Master Lease (and Subtenant is not in default hereunder) or voluntary surrender of the Master Lease by Sublandlord to Master Landlord as to the Subleased Premises if Sublandlord has reserved the right to exercise a termination right under the Master Lease add: except as permitted in this Sublease (which shall not be deemed to include a right of termination by reason of casualty or condemnation), provided that in no event shall Sublandlord be liable to Subtenant for any loss, cost or expense incurred by Subtenant if Master Landlord shall accept an attornment by Subtenant to Master Landlord upon substantially the same (or more favorable to Subtenant) terms as provided in this Sublease and provided further that in no event shall Sublandlord be liable for any special, consequential or punitive damage to Subtenant.

2.4.    Notwithstanding anything to the contrary contained in this Sublease, Subtenant shall not under any circumstances seek or require Sublandlord to perform or provide or to cause there to be performed or provided any work, services, signage, utilities, maintenance or repairs or make any claim against Sublandlord for any damage which may arise by reason of Master Landlord's failure to perform or provide the same pursuant to the Master Lease. Except as may be expressly provided in this Sublease, Subtenant shall be entitled to receive all of the work, services, signage, utilities, maintenance and repairs from Master Landlord to the extent that Sublandlord is entitled to receive the same under the Master Lease, unless Master Landlord is excused therefrom by reason of acts or omissions of Subtenant.

2.5.    Subtenant may, subject to the consent of Master Landlord, request directly from Master Landlord ordinary work, services, utilities, maintenance and repairs which Master Landlord is obligated to perform in the Subleased Premises pursuant to the Master Lease, but such right of Subtenant shall be conditioned on Subtenant not being in default beyond any applicable notice and/or cure periods in payment for any such work, services, utilities, maintenance and repairs previously so provided to the Subleased Premises or otherwise under this Sublease. In the event Subtenant desires any additional services from Master Landlord which are not provided in the Master Lease and require an additional charge, Subtenant may request such additional services from Master Landlord, provided such services shall not be obtained pursuant to the Master Lease and Master Landlord so agrees and further agrees that Sublandlord shall have no liability therefor.

**2.6.**    Sublandlord shall in no event be liable to Subtenant nor shall the obligations of Subtenant hereunder be impaired or abated or the performance hereof by Subtenant be excused because of (i) any failure or delay on Master Landlord's part in furnishing any services, signage, utilities, parking facilities or maintenance or in doing such repairs or work, including those which may be contemplated by this Sublease, (ii) any other failure of Master Landlord to observe and perform its covenants and agreements pursuant to the Master Lease, or (iii) the acts or omissions of Master Landlord, its agents, contractors, servants, employees, invitees, or licensees. If Master Landlord shall default in any of its obligations to Sublandlord with respect to the Subleased Premises, Sublandlord will use reasonable efforts to cause Master Landlord to perform and observe such obligations (except that Sublandlord shall not be obligated to commence any legal or other proceedings against Master Landlord or to make any payment of money or other consideration, or to utilize any self-help rights), but Sublandlord shall have no liability for failure to obtain the observance or performance of such obligations by Master Landlord or by reason of any default of Master Landlord under the Master Lease, of any failure of Master Landlord to act or to grant any consent or approval under the Master Lease, or from any misfeasance or nonfeasance of Master Landlord, nor shall the obligations of Subtenant hereunder be excused or abated in any manner by reason thereof, except as provided in this Sublease. If Sublandlord elects to commence legal or other proceedings against Master Landlord to enforce Sublandlord's rights under the Master Lease, Subtenant shall be responsible to reimburse Sublandlord for *to the Subleased Premises only then for all of,* the reasonable costs of such proceedings, including, without limitation, reasonable attorneys' fees incurred by Sublandlord, such reimbursement to be made by Subtenant within twenty (20) days after demand therefor.

**2.7.**    In the circumstances described in <u>Section 2.6</u> of this Sublease, Sublandlord may, in its sole discretion, elect to exercise any or all of its self-help rights as Tenant under the Master Lease.  Subtenant agrees that if Sublandlord elects to exercise any such rights, Subtenant shall reimburse Sublandlord for [*if applicable, add: Subtenant's Proportionate Share of, or if pertaining to the Subleased Premises only then for all of,*] the cost incurred by Sublandlord therefor (including by reason of any indemnity of Master Landlord in connection therewith but excluding any reimbursement therefor which has at such time been paid by Master Landlord to Sublandlord), such reimbursement to be made by Subtenant within twenty (20) days after demand therefor, provided that if Master Landlord shall after such payment by Subtenant reimburse Sublandlord for all or any portion of such costs, and Subtenant is not in default under the provisions of this Sublease, Sublandlord will reimburse Subtenant for the amounts paid to Sublandlord by Subtenant pursuant to this sentence to the extent [*of the applicable percentage thereof (in accordance with this sentence)*] of such costs so reimbursed to Sublandlord from Master Landlord.  If, however, Sublandlord elects not to exercise any of or all such self-help rights, Sublandlord shall not be liable to Subtenant for any costs, liabilities or expenses, all of which are hereby released by Subtenant.

**2.8.**    In the circumstances described in <u>Section 2.6</u> of this Sublease, if Sublandlord elects not to institute legal or other proceedings against Master Landlord in the name of Sublandlord to enforce Sublandlord's rights as tenant under the Master Lease but Subtenant shall nevertheless request Sublandlord to do so, Sublandlord shall, at Sublandlord's option, either (i) assign to Subtenant its causes of action or rights against Master Landlord to the extent

applicable to Subtenant, the Subleased Premises or Subtenant's rights hereunder, and shall permit Subtenant to institute such legal or other proceeding against Master Landlord in the name of Subtenant or, if necessary in order to effectuate the benefit of such assignment, in the name of Sublandlord, provided Subtenant shall use counsel reasonably approved by Sublandlord and Subtenant shall not settle such proceeding without the prior written consent of Sublandlord (which shall not be unreasonably withheld or delayed), or (ii) institute legal or other proceedings against Master Landlord at the request of Subtenant in the name of Sublandlord, provided in either of (i) or (ii) that (A) in Sublandlord's commercially reasonable judgment, such proceedings will not reduce or impair any claims Sublandlord may have against Master Landlord, (B) Subtenant shall not then be in default under this Sublease beyond any applicable notice and cure period, (C) such proceeding shall be prosecuted at the sole cost and expense of Subtenant and Subtenant shall agree to indemnify and hold harmless Sublandlord from any claims, liabilities, damages, costs and expenses, including any reasonable attorneys' fees incurred by Sublandlord as a result of Subtenant exercising its rights under this subsection, and Subtenant shall furnish to Sublandlord a cash deposit or other security in an amount, form and substance reasonably satisfactory to Sublandlord securing Sublandlord against all such liability, (D) Sublandlord shall reasonably determine that such proceeding is a bona fide attempt by Subtenant to enforce Sublandlord's rights under the Master Lease applicable to Subtenant and the Subleased Premises and is not primarily of nuisance value, and that there are no other practical bona fide methods for obtaining the performance of Master Landlord's obligations under the Master Lease, and (E) Subtenant's rights under this Sublease or use and enjoyment of the Subleased Premises are materially affected.

2.9.    If, in this Sublease, Subtenant is required to obtain Sublandlord's consent or approval, Subtenant understands that Sublandlord may be required to first obtain the consent or approval of Master Landlord pursuant to the Master Lease. Sublandlord will cooperate with Subtenant in requesting any such consent or approval. Subtenant shall reimburse Sublandlord for any costs or expenses payable under the Master Lease or otherwise reasonably incurred by Sublandlord (including, without limitation, legal fees and disbursements) in connection with requesting Master Landlord's consent or approval on behalf of Subtenant with respect to any matter as to which Master Landlord's consent or approval is required under the Master Lease or hereunder. If Master Landlord should refuse such consent or approval, Sublandlord shall be released of any obligation to grant its consent or approval with respect to such matter whether or not Master Landlord's refusal, in Subtenant's opinion, is arbitrary or unreasonable. In any instance in which Sublandlord is required by any provision of this Sublease or applicable law not unreasonably to withhold consent or approval, Subtenant's sole remedy shall be an action for specific performance or injunction requiring Sublandlord to grant such consent or approval, all other remedies which would otherwise be available being hereby waived by Subtenant, including any claim for monetary damages of any kind or nature.

2.10.    The rights of Subtenant hereunder are subject and subordinate to all ground and underlying leases and to all mortgages to which the Master Lease may be subject and subordinate to, or to which the Master Lease may now or hereafter be subjected or subordinated, whether now or hereafter affecting such leases or the real property of which the Subleased Premises are a part.

EXHIBIT B to Blockquarry Compl.

**2.11.** Sublandlord agrees to forward to Subtenant, upon receipt thereof by Sublandlord, a copy of each notice of default received by Sublandlord in its capacity as tenant under the Master Lease. Subtenant agrees to forward to Sublandlord, upon receipt thereof, copies of any notices received by Subtenant from Master Landlord or from any governmental authorities with respect to the Subleased Premises.

**2.12.** If Subtenant shall default under any of the provisions of this Sublease on its part to be performed, and Subtenant shall not have commenced diligently to cure such default within five (5) days after notice thereof to Subtenant (except in the case of what Sublandlord reasonably believes to be an emergency situation in which case no such notice need be given), Sublandlord may, in addition to any other remedy provided in this Sublease, by law or otherwise, cure such default and the cost thereof, together with interest thereon from the date incurred until paid at the rate provided in Article X hereof, shall be payable by Subtenant within ten (10) days following written demand therefor, and in the event Subtenant fails to pay the same, Sublandlord may recover such costs, including interest, as Additional Rent, in an action brought against Subtenant.

**2.13.** Sublandlord represents that it is the holder of the interest of the tenant under the Master Lease, and that the Master Lease is in full force and effect.

**2.14.** Subtenant agrees to indemnify Sublandlord and hold Sublandlord harmless from all losses, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Sublandlord may incur, or for which Sublandlord may be liable, to Master Landlord, arising from the acts or omissions of Subtenant, Subtenant's agents, contractors, employees, invitees, or licensees, that are the subject matter of any indemnity or hold harmless of Sublandlord to Master Landlord under the Master Lease, and all amounts payable by Subtenant to Sublandlord on account of such indemnity shall be deemed to be Additional Rent hereunder.

**2.15.** If as a result of the provisions of the Master Lease, Master Landlord has abated any of the fixed rent and/or additional rent payable by Sublandlord as tenant of the Subleased Premises under the Master Lease, Sublandlord shall, without duplication of any other provision of this Sublease, correspondingly abate the Fixed Rent and Additional Rent payable under this Sublease as to all or part of the Subleased Premises, as applicable under the Master Lease as to which rent is abated under the Master Lease and for as long as such abatement shall continue under the Master Lease.

### ARTICLE III. "AS IS".

**3.1.** Subtenant has examined the Subleased Premises, is aware of the physical condition thereof, and agrees to take the same "as is" with the understanding that there shall be no obligation on the part of Sublandlord to incur any expense whatsoever in connection with the preparation of the Subleased Premises for Subtenant's occupancy thereof. Neither Sublandlord nor Sublandlord's agents or other representatives have made, nor has Subtenant relied upon, any representations, warranties, or promises, express or implied, with respect to the Subleased Premises or the equipment and improvements therein situated or serving the same or the physical condition thereof or Master Landlord's title thereto, or compliance with laws with respect thereto or with respect to any other matter or thing relating to the Subleased Premises.

EXHIBIT B to Blockquarry Compl.

**3.2.**    Subtenant agrees to indemnify Sublandlord and hold Sublandlord harmless from all losses, damages, and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Sublandlord may incur, or for which Sublandlord may be liable, with respect to any applicable sales or use tax relating to the sale of the FF&E.

### ARTICLE IV. SUBLEASE ESCALATIONS.

**4.1.**

(a)    In the event any additional rent or other amounts are payable with respect to any time period falling within the term of this Sublease which are attributable to the provisions of Section [section] of the Master Lease (including estimated increases, if the Master Lease provides for estimated payments) (**"Escalation Rent"**) then Subtenant shall pay such amount as Additional Rent hereunder (such additional rent payable by Subtenant hereinafter called **"Sublease Escalation Rent"**). At any time after receipt by Sublandlord of any statement for any Escalation Rent, or if Sublandlord is at any time obligated to pay any Escalation Rent, Sublandlord may deliver to Subtenant a statement prepared, at the option of Sublandlord, by Sublandlord and/or Master Landlord (**"Escalation Statement"**) with respect to the payment of the Sublease Escalation Rent and, within ten (10) days after delivery of such statement, Subtenant shall pay to Sublandlord the Sublease Escalation Rent.

(b)    If an annual Master Landlord's Statement is furnished by Master Landlord to Sublandlord which shows that there has been an overpayment by Subtenant of Sublease Escalation Rent or if Master Landlord shall notify Sublandlord that Sublandlord is entitled against subsequent rent due to a refund of Taxes and/or Operating Expenses (each as defined in the Master Lease) as to which Subtenant paid Sublease Escalation Rent, and if Master Landlord shall actually give Sublandlord credit therefor under the Master Lease, Sublandlord shall permit Subtenant to credit the amount of such overpayment or Subtenant's portion of such refund, as the case may be, against the next subsequent Sublease Escalation Rent payments under this Sublease.  After the termination of this Sublease and the payment to Sublandlord of the balance, if any, of all Sublease Rent due hereunder, Sublandlord shall promptly pay to Subtenant the amount of any such refund or credit not previously applied by Subtenant.  In the event that on or after the Sublease Expiration Date any Escalation Rent is due under the Master Lease with respect to any period during the Sublease Term and payable as Sublease Escalation Rent but not otherwise paid by Subtenant to Sublandlord, Subtenant's obligations hereunder on account of such Sublease Escalation Rent shall be appropriately prorated and Subtenant shall pay the same as Additional Rent under this Sublease. Subtenant's obligations pursuant to the preceding sentence shall survive termination or expiration of this Sublease.

(c)    Subject to the provisions of Section 2.8 hereof, Subtenant shall not have the right to question the propriety of or the basis for any such Escalation Statement rendered by Master Landlord and Sublandlord shall be under no obligation to challenge, object to or contest any such statement, any allocations or determinations made by Master Landlord pursuant to such Escalation Rent, although Sublandlord may do so in its

sole and absolute discretion.  In the event that overpayment of Escalation Rent is determined after contest of any statement, as to which Subtenant and Sublease Escalation Rent, Sublandlord shall promptly notify Subtenant thereof, and if Master Landlord has actually credited Sublandlord therefor under the Master Lease for the period occurring during the Sublease Term, Sublandlord shall permit Subtenant to credit Subtenant's overpayment, but less all costs and expenses incurred by Sublandlord in connection with such dispute to the extent not reimbursed by Master Landlord to Sublandlord) against the next subsequent Sublease Escalation Rent payments under this Sublease.  After the termination of this Sublease and the payment to Sublandlord of the balance, if any, of all Fixed Rent, Sublease Escalation Rent and other Additional Rent due hereunder, Sublandlord shall promptly pay to Subtenant the amount described in the previous sentence to the extent not previously applied by Subtenant.

## ARTICLE V. NOTICES.

Any notice, demand or communication which, under the terms of this Sublease or under any statute or municipal regulation must or may be given or made by the parties hereto, shall be in writing and given or made by mailing the same by registered or certified mail, postage prepaid, return receipt requested, or by nationally recognized overnight courier for next business day delivery, addressed to the party for whom intended at its address as aforesaid; provided, however, from and after the Sublease Commencement Date, Subtenant's address shall be the Subleased Premises, and with a copy of such communications addressed to Sublandlord sent to [address], Attn: [name], Esq. and with a copy of such communications addressed to Subtenant sent to [address].  Either party, however, may designate such new or other address to which such notices, demands or communications thereafter shall be given, made or mailed by notice given in the manner prescribed herein.  Any such notice, demand or communication shall be deemed given or served, as the case may be, on the date of receipt or if receipt is refused.

## ARTICLE VI. END OF SUBLEASE TERM; HOLDOVER.

6.1.    At the expiration or earlier termination of this Sublease for any reason, Subtenant shall thereupon restore the Subleased Premises to the condition as required by the Master Lease upon the expiration of the term, and shall surrender and deliver up the Subleased Premises in good condition and repair, including, but not limited to, free of any furniture, fixtures and equipment and any cabling, and reasonable wear and tear and damage by fire or other casualty and condemnation which Subtenant is not required to restore or repair excepted, and Subtenant shall [leave at the Subleased Premises or remove the FF&E as provided in Sections 3.2 and 3.3 hereof and] leave electrical power in electric safe off condition.  If the Subleased Premises are not timely vacated and surrendered in such condition at the Sublease Expiration Date, Subtenant shall and hereby agrees to indemnify and hold Sublandlord harmless from and against any and all claims, losses, expenses or damages, including, without limitation, attorneys' fees and disbursements, arising out of or resulting from any delay by Subtenant in so surrendering the Subleased Premises, or any portion thereof, including, without limitation, any claims made by any succeeding tenant or prospective tenant founded upon such delay and the loss of the benefit of the bargain should such successive sublease be terminated by reason of such holding over and, including,

without limitation, any amounts payable by Sublandlord to Master Landlord pursuant to the Master Lease in respect of the Premises.

6.2.    In the event Subtenant remains in possession of the Subleased Premises, or any portion thereof, after the Sublease Expiration Date, the parties recognize and agree that the damage to Sublandlord resulting therefrom will be substantial and will exceed the amount of the monthly installments of the Sublease Rent payable hereunder. Subtenant therefore agrees that in addition to any other right or remedy Sublandlord may have hereunder or at law or in equity, Subtenant, at the option of Sublandlord, shall be deemed to be occupying the Subleased Premises as a subtenant from month to month, at a monthly rental equal to two times (i) the monthly Fixed Rent and Additional Rent and other charges payable during the last month of the scheduled term hereof or (ii) the fair market value for the Subleased Premises, whichever is greater, subject to all of the other terms of this Sublease and the Master Lease insofar as the same are applicable to a month to month tenancy. The provisions of the preceding sentence shall not be construed to limit any other rights or remedies which might be available to Sublandlord as a result of Subtenant's failure to surrender possession of the Subleased Premises or any portion thereof on the Sublease Expiration Date, including, without limitation, prosecuting a holdover or summary dispossess proceeding.

### ARTICLE VII. ALTERATIONS.

Subtenant may make no changes, alterations, additions, improvements or decorations in, to or about the Subleased Premises without Sublandlord's prior written consent and, if required by the Master Lease, Master Landlord's prior written consent. All work to be performed by Subtenant, including the work necessary for Subtenant's initial fit-out and occupancy of the Subleased Premises (if any), including telecommunications wiring and cabling ("**Subtenant's Initial Construction**"), shall be performed at Subtenant's cost in accordance with and subject to the terms and provisions of the Master Lease, except as may be inconsistent with the express provisions of this Sublease, but Subtenant shall be responsible to pay all fees, costs and expenses to Master Landlord in connection therewith as and when required by the Master Lease.

### ARTICLE VIII. SECURITY.

8.1.    Subtenant shall prior to, or simultaneously upon, execution and delivery of this Sublease to Sublandlord, deposit with Sublandlord a letter of credit complying with the provisions of Section 8.2 below (the "**Letter of Credit**") in the face amount of $50,000.00 USD (the "**Security Deposit Amount**"), in Certified Funds via Cashier's Check payable to:

Gaffney Board Of Public Works
210 East Frederick Street
PO BOX 64
Gaffney SC 29342
Account Number: 60041001

The Letter of Credit shall be maintained as provided in Section 8.3 below (and should any Letter of Credit be drawn upon there shall have been deposited with Sublandlord from the funds of the

Issuing Bank (as hereinafter defined) a cash security deposit), all as security for the faithful performance and observance by Subtenant of all of the terms, provisions and conditions of this Sublease (including the payment of any Fixed Rent and Additional Rent (collectively referred to as "**Sublease Rents**"). Subtenant agrees that, in the event that Subtenant defaults in respect of any of the terms, provisions and conditions of this Sublease (including the payment of any Sublease Rents), Sublandlord may make a demand for payment under said Letter of Credit and use, apply, or retain the whole or any part of the proceeds thereof, or any cash security deposited, as the case may be, to the extent required for the payment of any Sublease Rents, or any other sum as to which Subtenant is in default, or for any sum that Sublandlord may expend or may be required to expend by reason of Subtenant's default, in respect of any of the terms, provisions and conditions of this Sublease (including any damages or deficiency accrued before or after summary proceedings or other re-entry by Sublandlord). In the event that Sublandlord applies or retains any portion or all of such proceeds of such Letter of Credit or cash security, as the case may be, Subtenant shall within ten (10) business days restore the amount so applied or retained by causing the Issuing Bank to issue an amendment thereto, or if no Letter of Credit was then outstanding by causing a new Letter of Credit to be issued so that, at all times, the amount of the Letter of Credit which may be drawn upon shall be the Security Deposit Amount [*as may be reduced pursuant to Section 8.4 hereof*]. The provisions of this Article shall not be a limitation on Sublandlord's rights and remedies under this Sublease or at law or in equity and failure of Subtenant to satisfy the obligations of the preceding sentence shall be, for notice purposes, construed as a monetary default. In the event that Subtenant shall fully and faithfully comply with all of the terms, provisions and conditions of this Sublease, the Letter of Credit or cash security, as the case may be, shall be returned to Subtenant ninety (90) days after the later of the Sublease Expiration Date or delivery of possession of the entire Subleased Premises to Sublandlord in accordance with the terms of this Sublease.

8.2.    Subtenant shall deliver to Sublandlord and continuously maintain in full force and effect until ninety (90) days after the Sublease Expiration Date, a clean, irrevocable Letter of Credit issued by any commercial bank acceptable to Sublandlord (hereinafter referred to as the "**Issuing Bank**") (A) (i) with offices for banking purposes in the City of [city name] and offices for presentation of letters of credit in the City of [city name], or (ii) if it is the normal and ordinary practice of such commercial bank, for presentation of letters of credit by a nationally recognized overnight delivery service (e.g. Federal Express) to another office of such commercial bank located within the continental United States, and (iii) which is insured by the Federal Deposit Insurance Corporation, and (B) whose long-term, unsecured and unsubordinated debt obligations which are rated by at least two of Fitch Ratings Ltd. (Fitch), Moody's Investors Service, Inc. (Moody's) and Standard & Poor's Ratings Services (S&P) or their respective successors at least AA by Fitch, Aa by Moody's and AA by S&P, and (C) which has a short term debt rating from at least two of the following: A1+ from Fitch, P-1 from Moody's and A-1+ from S&P (collectively, the "**Issuer Requirements**"), which Letter of Credit shall (i) name Sublandlord as beneficiary thereof, (ii) have a term of not less than one (1) year, (iii) be in the amount of the then applicable Security Deposit Amount, and (iv) otherwise be in form and content satisfactory to Sublandlord, in its sole discretion. Sublandlord agrees that a Letter of Credit in the form of Exhibit C hereto shall be satisfactory and that, as of the date of this Sublease, [bank name]] is approved as the Issuing Bank. The Letter of Credit shall, in any event, provide that:

(a) The Issuing Bank shall pay to Sublandlord an amount up to the face amount of the Letter of Credit upon presentation of only a demand for payment in the amount to be drawn;

(b) The Letter of Credit shall be deemed to be automatically renewed, without amendment, for consecutive periods of one year each and shall have a final expiry date of not earlier than ninety (90) days after the Sublease Expiration Date, unless the Issuing Bank sends written notice (hereinafter called the **"Non-Renewal Notice"**) to Sublandlord both by Federal Express or similar courier acceptable to Sublandlord and by certified or registered mail, return receipt requested, not less than sixty (60) days next preceding the then expiration date of the Letter of Credit, that it elects not to have such Letter of Credit renewed;

(c) Sublandlord, after receipt of the Non-Renewal Notice, or within sixty (60) days prior to the expiration date of any Letter of Credit then held by Sublandlord, shall have the right, exercisable by a demand for payment draft only, to draw upon the Letter of Credit and receive the proceeds thereof (which shall be held by Sublandlord as a cash deposit pursuant to the terms of this Article VIII pending the replacement of such Letter of Credit or applied as permitted by the terms of this Article VIII); and

(d) Upon Sublandlord's assignment or other transfer of its interest in the Sublease, the Letter of Credit shall be transferable by Sublandlord as provided in Section 8.5 below.

If the Letter of Credit held by Sublandlord shall for any reason not have been so renewed within sixty (60) days of its then expiration date, Subtenant agrees that (a) it shall no later than sixty (60) days of the then expiration date replace such expiring Letter of Credit with a Letter of Credit as required by the terms of this Article VIII and Sublandlord agrees that, simultaneously with the delivery of such replacement Letter of Credit, it will return to the Issuing Bank the Letter of Credit being replaced and (b) in addition to any other right or remedy of Sublandlord under this Sublease, at any time prior to such replacement of such expiring Letter of Credit, Sublandlord may draw upon the Letter of Credit as provided in Section 8.3 below (and the proceeds thereof shall be held by Sublandlord as a cash deposit pursuant to the terms of this Article VIII pending the replacement of such Letter of Credit or applied as permitted by the terms of this Article VIII).

8.3.    If Sublandlord draws upon the Letter of Credit, it shall deposit the proceeds thereof into a bank (including, without limitation, an account at Sublandlord) or savings and loan association to be selected, from time to time, by Sublandlord in its sole discretion, which account shall separate from Sublandlord's funds. Sublandlord agrees to hold the said security in such an account, subject, however, to the terms of Section 8.1 hereof, with respect to the application of such security in the event of Subtenant's default hereunder and subject to Subtenant's obligation and agreement to replace the Letter of Credit so drawn upon with another Letter of Credit as required by the terms of this Article VIII whereupon Sublandlord shall return such cash security deposit to Subtenant. Sublandlord shall not be required to credit any security with interest, or pay any interest thereon to Subtenant. If interest shall be earned on such security, then to the extent permitted by law, Subtenant agrees that Sublandlord shall be entitled to receive and retain, as an administrative fee, a sum equal to one (1%) percent per annum upon the security, and Sublandlord shall have the right to withdraw such sum from time to time as Sublandlord shall determine, in its sole

discretion. The balance of the interest earned on such security, unless and until such interest shall be paid to Sublandlord as herein provided, shall be held as a part of the security deposited by Subtenant, subject to and in accordance with the terms of <u>Section 8.1</u> hereof. Sublandlord shall not be required to credit any security with interest, or pay any interest thereon to Subtenant, for any period during which Sublandlord does not receive interest thereon.

8.4.    Provided Subtenant is not and has not been in default under the Sublease, as determined by Sublandlord, at any time during the Sublease Term prior to the time of the applicable date on which the security deposit amount is to be reduced as provided herein, the Security Deposit Amount may be reduced on the [second] anniversary of the Sublease Commencement Date to $[dollar amount]. Subtenant may deliver, upon such reduction, a substitute Letter of Credit or amendment to the existing Letter of Credit consented to by Sublandlord in accordance with the requirements of this Article, it being understood that if a substitute Letter of Credit is to be delivered, Sublandlord shall not be obligated to return any Letter of Credit in its possession until Subtenant has delivered the substitute Letter of Credit.

8.5.    In the event of an assignment or other transfer of the Master Lease, or Sublandlord's interest therein, or a leasing of the entire Premises, Sublandlord shall have the right, without cost or expense, to transfer the Letter of Credit or cash security, as the case may be, deposited hereunder to the assignee or lessee, and Sublandlord shall thereupon be released by Subtenant from all liability for the return of such Letter of Credit or cash security. In such event, Subtenant agrees to look solely to the new Sublandlord for the return of said Letter of Credit or cash security. It is agreed that the provisions hereof shall apply to every transfer or assignment made of said Letter of Credit or cash security to a new Sublandlord. Subtenant shall execute such documents as may be necessary to accomplish such transfer or assignment of the Letter of Credit and shall pay any transfer or other fees of the Issuing Bank. Subtenant hereby acknowledges that Sublandlord will not agree to a letter of credit transfer form which requires that Sublandlord's signature be bank authorized or authenticated.

8.6.    Subtenant covenants that it will not assign or encumber, or attempt to assign or encumber, the Letter of Credit or cash deposited as security hereunder or any proceeds thereof, and that neither Sublandlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

8.7.    If Sublandlord determines, in its discretion, that the financial condition of the Issuing Bank has so declined as to cause concern that the Issuing Bank may not honor a draw on its Letter of Credit, or the Issuer Requirements are not met, Subtenant shall promptly obtain a replacement Letter of Credit complying with the terms hereof from another commercial bank acceptable to Sublandlord which then meets the Issuer Requirements. If the replacement Letter of Credit complying with the terms of this Sublease shall not have been received by Sublandlord within five (5) business days of Sublandlord's request therefor, Sublandlord may draw upon the Letter of Credit then held by Sublandlord and the proceeds thereof shall be held by Sublandlord as a cash deposit pursuant to the terms of this Article VIII pending the replacement of such Letter of Credit or applied as permitted by the terms of this Article VIII.

**8.8.** In the event that Subtenant fails to deliver a replacement Letter of Credit pursuant to Section 8.2 hereof (if the Letter of Credit is not automatically renewed) or pursuant to Section 8.7 hereof, as applicable, such event shall constitute a default by Subtenant hereunder and the provisions applicable to a default set forth in the Master Lease as incorporated herein shall apply to such default.

## ARTICLE IX. ASSIGNMENT AND SUBLET.

**9.1.** Subtenant shall not, whether voluntarily, involuntarily or by operation of law, in any manner or by reason of any act or omission on the part of Subtenant or any party acting by or through Subtenant (w) assign or otherwise transfer this Sublease or the term or estate hereby granted, nor (x) sublet, license or underlet all or any part of the Subleased Premises, nor (y) permit the Subleased Premises or any desk space therein to be occupied by any person(s) (collectively, an "underletting"), nor mortgage, pledge or encumber this Sublease or all or part of the Subleased Premises without first obtaining:

    (a) Master Landlord's consent and all other required consents to such assignment or subletting as set forth in and pursuant to the terms of the Master Lease, after Subtenant shall have complied with the provisions of the Master Lease as if it were an assignment or subletting by Sublandlord thereunder, and

    (b) Sublandlord's consent in accordance with the terms of the Master Lease as incorporated herein.

If Subtenant is a corporation, partnership, or limited liability entity, then the transfer in one or more transactions of 50% or more of the voting stock, membership or equity interest of Subtenant, whether accomplished by merger, operation of law or otherwise, shall constitute an assignment for purposes of this Sublease, requiring that Subtenant obtain the consent of Sublandlord.

**9.2.** All costs and expenses of Sublandlord incurred in connection with any actual or proposed assignment or underletting, including, without limitation, reasonable attorneys' fees and disbursements, allocable administrative costs, and any amounts payable under the Master Lease as a result of such actual or proposed assignment or underletting, shall be paid by Subtenant, as Additional Rent hereunder, within ten (10) days after demand.

**9.3.** Sublandlord shall be entitled to receive from Subtenant (as and when received by Subtenant) as an item of Additional Rent one hundred percent (100%) of all amounts received by Subtenant from any sub-subtenant or assignee in excess of the amounts payable by Subtenant to Sublandlord hereunder (the "**Transfer Premium**"), as and when paid by such assignee or undertenant. The Transfer Premium shall be reduced by the reasonable transaction costs actually paid by Subtenant in order to assign this Sublease or to sub-sublet the Subleased Premises, provided that Subtenant provides Sublandlord with a detailed breakdown of all transaction costs associated with such assignment or subletting at the time Subtenant obtains Sublandlord's consent and Sublandlord consents to such costs, which consent shall not be unreasonably withheld, conditioned or delayed. The following shall constitute transaction costs: work allowances, alteration expenses and other customary expenses reasonably incurred by Subtenant in connection with such assignment or sub-sublease. The Transfer Premium shall include all Fixed Rent, Sublease Escalation Rent, other Additional Rent or other consideration of any type whatsoever payable by the

EXHIBIT B to Blockquarry Compl.

assignee or sub-subtenant in excess of the Fixed Rent, Sublease Escalation Rent and other Additional Rent payable by Subtenant under this Sublease. Transfer Premium shall also include, but not be limited to, key money and bonus money paid by the assignee or sub-subtenant to Subtenant in connection with such assignment or sub-subletting, and any payment in excess of fair market value for services rendered by Subtenant to the assignee or sub-subtenant or for physical assets, fixtures, inventory, equipment, or furniture transferred by Subtenant to the assignee or sub-subtenant in connection with therewith. For purposes of calculating the Transfer Premium, expenses will be amortized on a straight line basis over the then remaining term of this Sublease (in the case of an assignment) or the term of the sub-sublease, as the case may be, and deducted from any assignment proceeds or the sub-sublet rents.

**9.4.**  If the Subleased Premises are sub-sublet (whether or not Sublandlord or Master Landlord shall have consented thereto), Sublandlord, after default by Subtenant in its obligations hereunder, may, without notice to Subtenant, collect rent from the sub-subtenant and Subtenant hereby authorizes Subtenant's sub-subtenant to make such payments of rent directly to Sublandlord and Sublandlord shall apply the net amount collected to the Sublease Rents herein reserved, but no such sub-subletting or collection of rent shall be deemed a waiver of the covenant set forth in this Article, or the acceptance of the sub-subtenant as a Subtenant. No such sub-subletting or any assignment of this Sublease (whether or not Sublandlord or Master Landlord shall have consented thereto) shall release Subtenant from the performance and observance by Subtenant of the covenants, obligations and agreements on the part of Subtenant to be performed or observed herein and in the case of an assignment, Subtenant and the assignee shall be jointly and severally liable for all obligations to be performed thereafter under this Sublease. The consent by Sublandlord or Master Landlord to an assignment, sale, pledge, transfer, mortgage or sub-subletting shall not in any way be construed to relieve Subtenant from obtaining the express consent in writing, to the extent required by this Sublease, to any further assignment, sale, pledge, transfer, mortgage or sub-subletting.

## ARTICLE X. LATE CHARGE.

To cover the additional expense incurred by Sublandlord in the handling of delinquent payment of Fixed Rent, Sublease Escalation Rent, other Additional Rent and other charges payable to Sublandlord by Subtenant pursuant hereto, Subtenant will pay on demand if and to the extent permitted by applicable law, (i) a "late charge" in an amount equal to the greater of any corresponding late charge under the Master Lease or four (4%) percent of such delinquent payment, to cover the administrative expenses of handling such late payment, and (ii) for each dollar of such Fixed Rent, Sublease Escalation Rent, other Additional Rent and other charges if any such amount is received after its due date, interest at the lesser of (A) an annual rate equal to the floating prime rate of Bank of America plus four (4%) percent or (B) the maximum rate permitted by law, and to accrue from the date such amounts of Fixed Rent, Sublease Escalation Rent, other Additional Rent and other charges first became due hereunder.

## ARTICLE XI. QUIET ENJOYMENT.

So long as Subtenant pays all of the Sublease Rents due under this Sublease and performs all of Subtenant's other obligations hereunder, Subtenant shall peacefully and quietly have, hold and

enjoy the Subleased Premises during the term of this Sublease, without hindrance by Sublandlord or by anyone claiming by or through Sublandlord, subject, however, to the terms, provisions and obligations of this Sublease and the Master Lease.

## ARTICLE XII. INDEMNITY AND INSURANCE.

12.1.   Subtenant hereby indemnifies and agrees to hold Sublandlord harmless from and against any and all claims (including, without limitation, claims of Master Landlord against Sublandlord), losses or damages, including, without limitation, attorneys' fees and disbursements, resulting from or arising out of (a) Subtenant's failure to perform any of the terms, covenants, conditions or agreements contained in or incorporated into this Sublease (or any consents hereto) which, by the terms of this Sublease (or such consents), Subtenant is obligated to perform, and (b) any other acts or omissions of Subtenant or Subtenant's employees, invitees, agents or other representatives, and (c) any occurrence in or about the Premises, unless due to the gross negligence or willful misconduct of Sublandlord, its employees, agents, contractors or invitees; and all amounts payable by Subtenant to Sublandlord on account of such indemnity shall be deemed to be Additional Rent hereunder and shall be payable upon demand.

12.2.   Subtenant shall, at its sole cost and expense, comply with all of the insurance provisions of the Master Lease which are binding on Sublandlord (provided that the commercial liability and property damage insurance coverage limits in Section [section' of the Master Lease shall be not less than $[3,000,000] per occurrence for purposes of this Sublease notwithstanding anything to the contrary contained in Article II hereof), and Subtenant shall name Sublandlord including its subsidiaries, [and] affiliates [and its *parent*, [parent name], ] as additional insured as well as each of those parties set forth in the Master Lease as required to be named as additional insured.  Prior to, or simultaneously with, execution and delivery of this Sublease by Sublandlord, Subtenant shall deliver an insurance certificate evidencing the foregoing, along with evidence that the insurance policy is endorsed indicating that the rights of the additional insured are conferred and rights of subrogation are waived, if an endorsement is so required to confer such rights or to waive subrogation, as required by this Article XII.   Upon request, Subtenant shall furnish Sublandlord with all certificates required to be delivered to Master Landlord pursuant to the Master Lease.

12.3.   Notwithstanding anything to the contrary contained in this Sublease, Subtenant, on behalf of itself and on behalf of anyone claiming under or through it by way of subrogation or otherwise, waives all rights and causes of action against Sublandlord and Master Landlord, and the respective directors, shareholders, officers, employees, members, agents and invitees of Sublandlord and Master Landlord, for any liability arising out of any loss or damage in or to the Subleased Premises, its contents and other property located thereon and caused by any peril normally covered under all-risk policies issued in the geographic area in which the Subleased Premises is located (whether or not such party actually carries such insurance policies).  The release and waiver shall be complete and total even if such loss or damage may have been caused by the negligence of Sublandlord or Master Landlord or their respective officers, directors, shareholders, employees, members, agents or

invitees, and shall not be affected or limited by the amount of insurance proceeds available to Subtenant, regardless of the reason for such deficiency in proceeds. Subtenant covenants that from and after the date possession of the Subleased Premises is delivered to Subtenant, its casualty insurance policies will contain waiver of subrogation endorsements, and that if such endorsements, for any reason whatsoever, are about to become unavailable, it will give Sublandlord not less than thirty (30) days prior written notice of such impending unavailability.

## ARTICLE XIII. CONFIDENTIAL INFORMATION.

13.1.  Subtenant understands that it and its officers and employees, agents or representatives in the course of entering into and performing this Sublease, may have access to and come into contact with information of Sublandlord and Sublandlord's clients including but not limited to, the Master Lease, this Sublease, Master Landlord's consent to this Sublease, materials, information, computer software systems and programs, data, operational techniques and methodology, ideas, concepts and documents (hereinafter referred to collectively as **"Corporate Property"**). All Corporate Property, unless otherwise specifically declared to Subtenant by Sublandlord, is deemed to have pecuniary value to Sublandlord and to be confidential in nature.

13.2.  Subtenant agrees to protect and treat as confidential the Corporate Property, to not disclose any Corporate Property to third parties and to not use such Corporate Property for any purposes whatsoever other than in connection with entering into or performing its obligations under this Sublease. Subtenant will advise each of its employees, agents and representatives who have access to same, of their obligation to keep the Corporate Property confidential and will not cause or permit other persons or entities to have access to the Corporate Property without Sublandlord's prior written consent.

13.3.  Subtenant understands that Sublandlord, in many instances, uses proprietary information of others under contractual license, and Subtenant shall treat such licensed proprietary information in the same manner as if they are the Corporate Property and further, shall do nothing which would cause Sublandlord to breach the terms of its license agreements.

13.4.  It is agreed and understood that in the event of a breach of this Section, damages may not be an adequate remedy and Sublandlord shall be entitled to injunctive relief to restrain any such breach, threatened or actual.

13.5.  Subtenant's restrictions under this Section shall not apply to information which (i) is received by Subtenant from any source, other than Sublandlord, that is authorized to disclose it; (ii) is or becomes generally known to the public by publication or some means other than a breach of duty of this Sublease; (iii) is required by law, regulation or court order to be disclosed, provided that the request for such disclosure is proper and the disclosure does not exceed that which is required. In the event of disclosure under clause (iii) above, Subtenant shall furnish a copy of this Section to anyone to whom it is required to make such disclosure and (a) shall promptly advise Sublandlord in writing of each such disclosure, or (b) provide Sublandlord with evidence that such information was rightfully in Subtenant's possession prior to disclosure by Sublandlord.

EXHIBIT B to Blockquarry Compl.

## ARTICLE XIV. SIGNAGE.

Subtenant may have the rights to property directory signage and suite entry signage to the extent that Sublandlord has the rights to such signage pursuant to the Master Lease, if applicable or available within the property, included but not limited to the company's logo and likeness of the parent company or any of its subsidiaries. Subtenant shall be responsible for all costs associated with signage for the Subleased Premises, which shall be included in Additional Rent hereunder.

## ARTICLE XV. MISCELLANEOUS.

**15.1.** This Sublease may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**15.2.** This Sublease shall not be binding upon Sublandlord unless and until it is signed by Sublandlord and delivered to Subtenant. This Section 15.2 shall not be deemed to modify the provisions of Section 1.4 hereof.

**15.3.** This Sublease constitutes the entire agreement between the parties and all representations and understandings have been merged herein.

**15.4.** This Sublease is binding upon and shall inure to the benefit of all of the parties hereto, their successors and (subject to the provisions hereof) their assigns.

**15.5.** Neither this Sublease nor a memorandum thereof may be recorded by Subtenant.

**15.6.** Subtenant represents that it has had no discussions with Master Landlord with respect to the leasing of space within the Property.

**15.7.** This Sublease shall be governed by, and construed in accordance with the laws of the State of South Carolina applicable to agreements to its type, nature and kind made and to be performed wholly within said State and without giving effect to the conflict of laws principals.

**15.8.** Subtenant hereby represents and warrants to Sublandlord that it has the full right, power and authority to enter into the transactions provided for herein.

**15.9.** This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute on and the same instrument. Signatures provided by facsimile or electronic transmission shall have the same force and effect as original signatures and shall be binding upon the parties.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

SUBLANDLORD:                                SUBTENANT:

By: _Tony Tate_                             By: _Alonzo V. Pierce_
Name: Tony Tate                             Name: Alonzo V. Pierce
Title: CEO, President                       Title: President / Chairman

EXHIBIT B to Blockquarry Compl.

**EXHIBIT A. SUBLEASED PREMISES.**

154 HYATT STREET – GAFFNEY SC 29340

EXHIBIT B to Blockquarry Compl.

**EXHIBIT B. ANNUAL RENT (ANNUAL AMOUNTS).**

| YEAR | RENT AMOUNT (ANNUALLY) | EXPIRATION DATE |
|---|---|---|
| YEAR 1 | $36000 | First anniversary of the last day of the month preceding the month in which the Rent Commencement Date occurs |
| YEAR 2 | $36000 | |
| YEAR 3 | $36000 | |
| YEAR 4 | $36000 | |
| YEAR 5 | $36000 | |

EXHIBIT B to Blockquarry Compl.

**EXHIBIT C. LETTER OF CREDIT**

# Litchian Corp Gaffney BPW Sub-Lease Agreement

Final Audit Report                                                          2021-10-20

| | |
|---|---|
| Created: | 2021-10-18 |
| By: | Tony Tate (Secretary@LitchainCorp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAwy1PTK53uAtq2aBKzEQR_IVYDK-IdUsS |

## "Litchian Corp Gaffney BPW Sub-Lease Agreement" History

Document created by Tony Tate (Secretary@LitchainCorp.com)
2021-10-18 - 6:53:03 PM GMT- IP address: 184.90.183.182

Document emailed to Alonzo v. Pierce (ap@iswholdings.com) for signature
2021-10-18 - 6:55:12 PM GMT

Email viewed by Alonzo v. Pierce (ap@iswholdings.com)
2021-10-18 - 6:55:52 PM GMT- IP address: 172.58.101.35

Document e-signed by Alonzo v. Pierce (ap@iswholdings.com)
Signature Date: 2021-10-18 - 9:26:46 PM GMT - Time Source: server- IP address: 73.32.122.30

Document emailed to Tony Tate (ttate@litchaincorp.com) for signature
2021-10-18 - 9:26:48 PM GMT

Email viewed by Tony Tate (ttate@litchaincorp.com)
2021-10-18 - 9:40:10 PM GMT- IP address: 104.28.94.188

Document e-signed by Tony Tate (ttate@litchaincorp.com)
Signature Date: 2021-10-20 - 8:09:17 PM GMT - Time Source: server- IP address: 184.90.183.182

Agreement completed.
2021-10-20 - 8:09:17 PM GMT

**Adobe Sign**