## SPECIAL BENEFIT LICENSE AGREEMENT

**THIS SPECIAL BENEFIT LICENSE AGREEMENT** is made and entered into as of this 18th day of October, 2021, by and between LITCHAIN Corporation, a duly organized Florida Profit Corporation ("LICENSOR"), and ISW Holdings Inc, ("LICENSEE"), a Nevada Corporation, hereinafter, collectively (the "Parties").

### RECITALS

**WHEREAS**, the Licensor is a party to a Special Agreement with Gaffney Board of Public Works, ("BPW") to authorize Licensor to participate in BPW's Economic Development Incentive Rate ("Schedule I") and Credit for New Loads ("Schedule I Economic Development Credits") for electric service as of September 8, 2021, (hereinafter "Special Agreement for Electric Utility Service to LITCHAIN Corporation", and collectively referred to as the "Original Agreement", hereby incorporated by reference);

**WHEREAS**, the Licensor has decided to enter into an agreement with Licensee to pass-along it's benefits of the Special Agreement for Electric Utility Service Agreement to Licensee on a non-exclusive basis and Licensee has agreed to accept the terms of said Agreement as more fully described in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants herein, contained, the parties agree as follows:

1. **RECITALS**. The recitals set forth above are incorporated herein by reference.

2. **GRANT OF SPECIAL BENEFIT LICENSE**. The Licensor does hereby grant to the Licensee, and the Licensee does hereby accept from the Licensor, a revocable license for the use of the benefits of the Original Agreement for a term of 5 year(s) from the date of execution of this Agreement. Licensee acknowledges that, under all applicable South Carolina Law, Licensee acquires no prescriptive rights or other property rights or claims by virtue of license.

This license shall continue for 5 year(s) from the date of execution or until written notification of its revocation by the Licensor is provided to the Licensee at least sixty (60) days prior to such revocation. This license is revocable with or without cause or reasonableness at the will and at the sole discretion of the Licensor. The Licensee understands that the Original Agreement was granted by a public service agency and albeit may have entitled Licensee to certain rights or due process rights, Licensee understands that no procedural due process rights or claims arising from the procedure used or considered to revoke this license and the Licensee specifically waives any claims or rights arising from such termination. The Licensee shall further have no right

EXHIBIT C to Blockquarry Compl.

or claim for damages arising from the termination of this license, regardless of the amount of investment by the Licensee and the duration of use of the benefits from the Original Agreement by the Licensee. No representations or predictions made by the Licensor or any of its officers, employees, charter officials or agents shall give any right of use or any right of damages for losses sustained by the Licensee because of the revocation of this license.

In the event that this license is revoked, the Licensee shall have a period of no more than sixty (60) days from the date of notification of such revocation to immediately cease usage of all benefits from the Original Agreement and agrees that Licensee shall become liable for all outstanding obligations as it relates to utility services owed to the public works service provider.

In the event that the Licensee cease usage of all benefits received from the Original Agreement, Licensee shall be liable for the excess costs of utilities owed and shall immediately upon written demand by Licensor remit payment for all usage that may be incurred by Licensee.

3.     **PAYMENT TO LICENSOR**. At this juncture licensee will not be required to remit payment or services for the usage of this special benefit. When applicable, the payment instructions will be detailed in Schedule A, attached and incorporated in this Agreement.

4.     **CRITERIA COMPLIANCE**. The Licensor has received from the Original Agreement of the authority to quality for specialized electrical service rates from BPW. Licensee agrees to comply with all laws and regulations outlined by BPW to qualify for the Schedule I Economic Develop Credits based upon the following criteria:

   a. The Schedule I Economic Development Credits will commence when the electric load reaches 1,000 kW, on average and has an average monthly load factor of forty-five percent (45%).
   b. The Schedule I Economic Development Credits will become applicable and remain applicable only if monthly peak load is in excess of 1,000 kW on average.
   c. Loads must satisfy the Schedule I criteria by March 01, 2022 or the offer of the BPW Schedule will be withdrawn.

Licensee understands and agrees that the criteria compliance is subject to change and all material changes will be communicated in writing via the Licensor.

5.     **BENEFIT PAYMENT**. Licensee agrees to remit all special benefit payments to the appropriate public service provider accordingly to the invoices and in the event default of payment Licensee's entitlement to the benefit shall be immediately revoked.

EXHIBIT C to Blockquarry Compl.

6. **ADDITIONAL BENEFITS**. As a result of Licensee usage of this special benefit, Licensee hereby grants to Licensor the ability to utilize upwards of 100 % of any land use where the special benefit will be utilized for the duration of the Agreement. Licensor understands that

7. **INDEMINIFCATION**. The Licensee agreements to indemnify and hold harmless, assume legal liability for and defend Licensor, any and all of its officers, employees, agents, servants, and successors and assigns from against any and all actions, claims, liabilities, assertions of liability, losses and cost and expenses in law or equity, including but limited to attorney's fees at trial and appellate levels, reasonable investigative and discovery costs, court costs or claims of every kind and nature whatsoever, which in any manner directly or indirectly may arise or be alleged to have arisen, or resulted or alleged to have resulted from the negligent acts or omissions or other wrongful conduct of the licensee's reliance on the benefits or any other claim which arise out of or relate to any material breach of this Agreement.

8. **ASSIGNMENT**. Neither this Agreement nor any benefit, duties or obligations under this Agreement may be assigned by Licensee without the prior written consent of Licensor. Any such assignment will be considered null and void.

9. **NOTICES**. Any notices required to be given under this Agreement to either party shall be in writing and shall be transmitted by (i) registered mail; (ii) certified mail, return receipt requested, or (iii) overnight mail addressed to the party to be notified at the following address or to such other address (or person) as such party shall specific by the like notice hereunder:

| LICENSOR: | LITCHAIN CORP |
| | Tony Tate |
| | CEO, President |
| | |
| LICENSEE: | ISW Holdings Inc |
| | Alonzo V. Pierce, President |

10. **ATTORNEY'S FEES**. If either party incurs any legal fees associated with the enforcement of this Agreement or any rights under this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expense from the other party.

11. **ARBITRATION**. Any dispute, controversy or claim arising out of or related in any to this Agreement or any services performed hereunder which cannot be amicably resolved by the Parties shall be solely and finally settled by arbitration administered by the American Arbitration Association in accordance with its commercial arbitration rules. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall take place before a panel of three (3) arbitrators sitting in the State of South Carolina. The language

EXHIBIT C to Blockquarry Compl.

of the arbitration shall be English. The arbitrators will be bound to adjudicate all disputes in accordance with laws of the State of South Carolina. The decision of the arbitrators shall be in writing with written findings of fact and shall be final and binding on the parties. Each party bear in own costs relating to the arbitration proceedings irrespective of its outcome. This section provides the sole recourse for the settlement of any disputes arising out of, in connection with or related to this Agreement.

12.     **GOVERNING LAW**. This Agreement will be governed by and construed in accordance with the laws of the State of South Carolina, without regard to its conflicts of laws principles.

13.     **WAIVER**. The failure of any party to insist in any one or more instances upon performance of any of the terms and conditions of this Agreement shall not be construed as a waiver or relinquishment of any right granted hereunder, or of the future performance of such provision or any other covenant or condition, but the obligations of all parties hereunder with respect hereto shall continue in full force and effect.

14.     **SEVERABILITY**. Should any reason or any part of any section of this Agreement be rendered void, invalid, or unenforceable by any court of law, for any reason, such determination shall not render void, invalid, or unenforceable any other section or any party of any section in this Agreement.

15.     **FORCE MAJEURE**. Neither Party shall be liable hereunder for any failure or delay in performance of its obligations under this Agreement, except for the payment of money, if such failure or delay is on account of causes beyond its control, including but not limited to labor disputes, civil commotion, war, fires, floods, inclement of weather, government regulations or controls, casualty, government authority, strikes, pandemics, epidemics, local disease outbreaks, public health emergencies, or acts of God, in which event the non-performing party shall be excused from its obligations for the period of the delay and for a reasonable time thereafter. Each party shall use reasonable efforts to notify the other party of the occurrence of such an event within three (3) business days of its occurrence.

16.     **ENTIRE AGREEMENT**. This Agreement supersedes any and all agreements, either oral or written, between the Parties with respect to the benefits outlined in this Agreement and contains all of the representations, covenants, and agreements between the Parties with respect to the rendering of these benefits. Each Party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any Party, or anyone acting on behalf of any Party, which are not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding. Any modification of this Agreement will be effective only if it is in a writing signed by an authorized representative of the party to be charged.

EXHIBIT C to Blockquarry Compl.

[SECTION INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first written above.

**LICENSOR,**
LITCHAIN CORP, a Florida Profit Corporation

By: *[signature: Jay Jabs]*
Its: CEO, PRESIDENT


LICENSEE,

By: *Alonzo V. Pierce*
Its: President
Address: 700 Louisiana St. Suite 3950
Houston, Texas
EIN: 20-5673057

EXHIBIT C to Blockquarry Compl.

SCHEDULE "A"

LICENSEE agrees to the following payment terms and breakdown to Licensor for the usage of the special benefits provided in the Special Benefit License Agreement dated Oct 19, 2021.

**PAYMENT SCHEDULE AND INSTRUCTIONS:**

As required by Licensor upon receipt of notice. All payments are within 10 days or receipt per the payment instructions received via the Licensor Payment Instruction Agreement that was provided separately to Licensee.

| | |
|---|---|
| WIRE: | Litchain Corp \| Routing ABA: 021000021 \| ACCT#: 502012252 |
| SWIFT CODE/INTERNATIONAL WIRE: | CHASUS33 ADDRESS: 270 Park Avenue \| New York, New York \| 10017 |
| ACH: | Litchain Corp \| Routing ABA: 267084131 \| ACCT#: 502012252 |

**SERVICES:**

Licensee as a result of a benefactor of the special benefits agreement has agreed to provide the following services for Licensor as outlined below:

None to speak of for this agreement only.

EXHIBIT C to Blockquarry Compl.