IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Litchain Corp. and Gaffney Board of Public Works, <br><br> Defendants. | C/A No.: 7:23-cv-01427-TMC <br><br> **DECLARATION OF ALONZO PIERCE IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to 28 U.S.C. § 1746, Alonzo Pierce declares as follows:

1. I am President of Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry"). I am over the age of eighteen years and competent to testify in the instant case.

2. Blockquarry is a cryptomining mining company that focuses on identifying, procuring, and developing premises for Bitcoin mining, primarily, for third parties. Blockquarry mines for Bitcoin, but that is not its primary focus.

3. Defendant Litchain Corp. ("Defendant") identified a parcel in Gaffney, Cherokee County, South Carolina suitable for Bitcoin mining and presented the site to Blockquarry for its purposes. The address of the site is 154 Hyatt Street, Gaffney, South Carolina 29341 (the "Premises").

4. The Premises is owned by Defendant Gaffney Board of Public Works (the "Utility"), which is a municipal utility serving the citizens of the City of Gaffney.

5. Blockquarry executed a purported sublease for the Premises with Defendant, along with a purported license agreement with Defendant for electrical service on the Premises. A true

and correct copy of these written agreements are attached to Blockquarry's complaint as *Exhibits B and C,* respectively.

6. Blockquarry later learned Defendant had previously secured a ground lease for the Premises with the Utility and an attractive rate for electrical services for the Premises, by way of an electrical services agreement with the Utility. The purported license agreement gives Blockquarry the beneficial use of a special, attractive electrical rate secured by Defendant.

7. Blockquarry funded and Defendant was paid a $300,000.00 fee for securing the Premises for Blockquarry's use.

8. Blockquarry funded $1,387,895.20 as a deposit on the Premises' utility bill (the "Deposit"). Approximately $1,000,000.00 this amount was paid by Blockquarry, directly, to the Utility. The remainder was paid by Blockquarry's contractor, directly, to the Utility.

9. Defendant did not pay or contribute any money for the Deposit.

10. Blockquarry further paid approximately $6,000,000.00 to upfit the Premises for Bitcoin mining and to purchase, deliver, and install distribution transformers and Bitcoin mining pods on the Premises.

11. Blockquarry paid the Utility, directly, over $2.2 million in fees for utility services, exclusive of the Deposit.

12. Blockquarry also paid the Utility, directly, $3,000 in monthly rent payments under Defendant's ground lease with the Utility.

13. Blockquarry paid the Deposit, the fees for utility services, and monthly rent payments by using the Utility's website and by making check payments that were overnighted to the Utility.

14. Redacted copies of checks demonstrating Blockquarry's payments to the Utility, in the aggregate amount of $2,408,306.18, and proofs of mailing thereof are attached hereto as ***Exhibit E***.[1]

15. Blockquarry has not paid Defendant any money other than funding the initial payment for securing the Premises, which was more than $300,000.00.

16. On information and belief, Defendant has not paid the Utility any money.

17. The Utility, on the other hand, *knew* Blockquarry made payments directly to the Utility for utility services and monthly rent relative to the Premises.

18. I personally spoke to the Utility's clerks several times via telephone to discuss payments.

19. During January 2023, the Utility stopped electrical service to the Premises. On January 9, 2023, the Utility sent a letter to Defendant notifying it of that disconnection and two alleged defaults under the ground lease: (1) termination of electrical service, and (2) that "[the Utility] did not approve of or consent to [] sublease" to Blockquarry. A true and correct copy of that letter is attached hereto as ***Exhibit F***.

20. The Utility sent Defendant a separate letter on March 13, 2023 identifying the same two alleged defaults under the ground lease and describing the sublease to Blockquarry as an "impermissible sublease arrangement." A true and correct copy of the Utility's letter to Defendant is attached hereto as ***Exhibit G***.

21. During the same time period, Defendant Litchain blocked Blockquarry and its management company's access to the Utility's billing portal. Defendant also began sending

---

[1] Exhibits hereto are identified out of sequential sequence so identification of the exhibits herein match the identification in Blockquarry's complaint.

Blockquarry erratic, threatening messages demanding payment of large sums of money. True and correct copies of such correspondence are attached hereto as ***Exhibit H.***

22.     On January 19, 2023, Defendant Litchain's representative delivered Blockquarry an email accusing Blockquarry of a material breach; claiming that the "total amount of indebtedness accrued by [Blockquarry] for non-payment and failing to perform as agreed is $1,879,304.61[;]" and demanding a half payment on a total amount of $995,767.20 to avoid eviction. The same email claims $883,537.41 is due and payable to the Utility, despite the fact that Defendant Litchain's representative claimed days earlier that a mere $157,000.00 was past due and owning for utility services. A true and correct copy of the January 19, 2023 email is attached hereto as ***Exhibit I.***

23.     On or about February 3, 2023, Defendant caused an eviction action to be filed against Blockquarry relative to the Premises in the Magistrate Court of Cherokee County, South Carolina (bearing case number 2023CV1110100285) (the "Eviction Action"). A true and correct copy of the rule to vacate filed in the Eviction Action is attached to the complaint as ***Exhibit A.***

24.     Sometime after February 16, 2023, the Utility padlocked the Premises, blocking any physical access to the Premises for Blockquarry.

25.     Blockquarry maintains personal property—that it owns—on the Premises, including: at least five distribution transformers, ten mining pods, and Bitcoin mining servers. Blockquarry's Bitcoin mining servers are kept in a storage facility on the Premises.

26.     Blockquarry also maintains personal property that its clients own on the Premises, including over 5,000 Bitcoin mining servers.

27.     Blockquarry and its clients have no access to this personal property, as it is behind a locked gate on the Premises.

28. The Utility has also refused and continues to refuse to return the Deposit to Blockquarry, despite demand from Blockquarry. A true and correct copy of email correspondence from the Utility dated March 16, 2023 reflecting the same is attached hereto as *Exhibit J.*

29. The Utility informed Blockquarry it will return the Deposit paid by Blockquarry to its customer—*i.e.*, Defendant—not to Blockquarry.

30. The Utility further informed Blockquarry it will return the Deposit paid by Blockquarry to Litchain *before* April 14, 2023.

31. Despite never paying or contributing any money towards the Deposit, on March 14, 2023 Defendant Litchain delivered an email to the Utility's counsel requesting that the Utility send a check for the Deposit to Litchain, and provided the company's address for delivery of the same. In this email, Litchain's representative described the Deposit as "my deposit," and requested either personal delivery or express mailing of a check. *See* ***Ex. J.***

32. Blockquarry's counsel and BPW's counsel have, for months, been discussing that Blockquarry is the *de facto* lessee on the Premises, that Blockquarry paid this money directly to the Utility, and that Blockquarry is the rightful owner of the personal property on the Premises.

33. On February 16, 2023, Blockquarry, its counsel, and contractor had an in-person meeting with the Utility, its counsel, and various representatives, at the Utility's principal place of business in Gaffney, South Carolina. I personally attended this meeting and flew from Houston, Texas to make sure that the meeting resolved these issues. Unfortunately, it did not.

34. Blockquarry has always attempted diligently to resolve these issues with the Utility and Defendant and without resorting to Court intervention, but the Utility simply will not reasonably consider the parties' positions and has made other untenable, disagreeable demands, necessitating the instant litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on __04__, __10__, 2023.

FURTHER AFFIANT SAYETH NOT.

| AFFIRMATION | ALONZO PIERCE |
|---|---|
| Sworn before me on the 10th day of April 2023. | |
| _Gerardo Gomez_ | _[signature]_ |
| Notary Public for _Texas_ | Alonzo Pierce |
| My Commission expires: _August 20, 2025_ | |
| [seal] GERARDO GOMEZ Notary ID #131243689 My Commission Expires August 20, 2025 | |

6