## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | | |
|---|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., | ) | Civil Action No. 7:23-cv-01427-TMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT/COUNTERCLAIMANT** |
| Litchain Corp. and Gaffney Board of Public Works, | ) | **CROSSCLAIMANT GAFFNEY** |
| | ) | **BOARD OF PUBLIC WORKS'** |
| | ) | **AMENDED ANSWER TO** |
| Defendants. | ) | **PLAINTIFF'S COMPLAINT AND** |
| ——————————————— | ) | **AMENDED COUNTERCLAIM AND** |
| | ) | **AMENDED CROSSCLAIM FOR** |
| Gaffney Board of Public Works, | ) | **INTERPLEADER, DECLARATORY** |
| | ) | **JUDGMENT, AND BREACH OF** |
| Defendant/Counter and | ) | **CONTRACT** |
| Cross Claimant, | ) | |
| v. | ) | |
| | ) | |
| Blockquarry Corp. f/k/a ISW Holdings, Inc., | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| and | ) | |
| | ) | |
| Litchain Corp., | ) | |
| | ) | |
| Crossclaim Defendant. | ) | |
| ——————————————— | ) | |

Comes now the defendant, Gaffney Board of Public Works, South Carolina ("Gaffney BPW"), by and through its undersigned counsel of record, and for its Amended Answer to the Complaint for Declaratory Judgment, Injunction, and Damages filed by Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Gaffney BPW denies the allegations set forth in Paragraph 1, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

2.     Gaffney BPW denies the allegations set forth in Paragraph 2, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

3.     The allegations set forth in Paragraph 3 are generally admitted, but Gaffney BPW clarifies that it is a commission of public works organized and existing under South Carolina law, particularly Title 5, Chapter 31, Article 3 of the Code of Laws of South Carolina 1976, as amended. In such capacity, Gaffney BPW is an agency of the City of Gaffney, South Carolina (the "City"), which is a municipal corporation organized under South Carolina law. Gaffney BPW provides water, sewer, and electric services within the municipal limits of the City and to other areas outside the City by contract.

4.     Paragraph 4 asserts a conclusion of law, so a response is not required.

5.     Paragraph 5 asserts a conclusion of law, so a response is not required. However, clarification is added that Gaffney BPW is a commission of public works under South Carolina law and an agency of the City, which is a municipal corporation under South Carolina law.

6.     Gaffney BPW admits Defendant, Litchain Corp. ("Litchain"), contracted with it for electric utility service. The assertion that this Court has personal jurisdiction over the parties is a conclusion of law, so Gaffney BPW is not required to respond to that statement. All remaining allegations set forth in Paragraph 6 of Blockquarry's Complaint are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about their truth.

7.     Paragraph 7 asserts a conclusion of law, so a response is not required.

## FACTUAL ALLEGATIONS

### A. Bitcoin Mining, Generally

8.      Upon information and belief, Gaffney BPW admits the allegations set forth in Paragraph 8 of Blockquarry's Complaint.

9.     Gaffney BPW denies the allegations set forth in Paragraph 9, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

10.     Gaffney BPW denies the allegations set forth in Paragraph 10, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

11.     Gaffney BPW denies the allegations set forth in Paragraph 11, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

12.     Gaffney BPW denies the allegations set forth in Paragraph 12, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

13.     Gaffney BPW denies the allegations set forth in Paragraph 13, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

14.     Gaffney BPW denies the allegations set forth in Paragraph 14, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

15.     Gaffney BPW denies the allegations set forth in Paragraph 15, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**B. Blockquarry Pays Defendant $300,000 for identifying and delivering premises for cryptocurrency mining operations on the Utility's real property.**

16.     Gaffney BPW denies the allegations set forth in Paragraph 16, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

17.     Gaffney BPW denies the allegations set forth in Paragraph 17, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

18.     Gaffney BPW denies the allegations set forth in Paragraph 18, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

19.     Gaffney BPW denies the allegations set forth in Paragraph 19, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

20.    Gaffney BPW denies the allegations set forth in Paragraph 20, as it lacks sufficient knowledge and information regarding the sublease to form a belief about the truth of the matters asserted. Gaffney BPW additionally denies the property at issue is located at 154 Hyatt Street, Gaffney, Cherokee County, South Carolina and instead clarifies that, upon information and belief, it is located at 150 Hyatt Street, Gaffney, Cherokee County, South Carolina.

21.    Gaffney BPW admits the allegation it owns and operates a distribution-level electrical substation called the "Suez Station" but clarifies that the substation is on or adjacent to real property located at 150 Hyatt Street in Gaffney, Cherokee County, South Carolina. Any allegations to the contrary set forth within Paragraph 21 are denied.

22.    Gaffney BPW denies the allegations set forth in Paragraph 22, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

23.    Gaffney BPW denies Blockquarry did not know about the agreements in Paragraph 23, as it lacks sufficient knowledge and information to form a belief about the truth of the matter.

- Gaffney BPW admits that on or about September 8, 2021, it entered into an electrical service agreement with Litchain. Gaffney BPW denies the remaining allegations set forth in this unnumbered subpart to Paragraph 23.

- Gaffney BPW admits it has also entered into a ground lease with Litchain, but clarifies that the ground lease is dated September 23, 2021. Gaffney BPW denies the remaining allegations set forth in this unnumbered subpart to Paragraph 23.

All remaining allegations set forth in Paragraph 23 of Blockquarry's Complaint are denied.

24.    Gaffney BPW denies the allegations set forth in Paragraph 24, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**C. Blockquarry expends nearly $7.4 million for Bitcoin mining on the Premises.**

25.     Gaffney BPW denies the allegations set forth in Paragraph 25, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

26.     Gaffney BPW admits the allegations set forth in Paragraph 26.

27.     Denied as stated. *See infra* ¶¶ Amended Counterclaim against Blockquarry; Amended Crossclaim against Litchain.

28.     Gaffney BPW denies the allegations set forth in Paragraph 28, including all subparts thereto, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

29.     Gaffney BPW denies the allegations set forth in Paragraph 29, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

30.     Gaffney BPW denies the allegations set forth in Paragraph 30, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**D. Blockquarry mines for Bitcoin on the Premises and pays rent and utility bills directly to the Utility.**

31.     Gaffney BPW denies the allegations set forth in Paragraph 31, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

32.     Gaffney BPW denies the allegations set forth in Paragraph 32, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

33.     Gaffney BPW denies the allegations set forth in Paragraph 33, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

34.     Gaffney BPW denies the allegations set forth in Paragraph 34.

35.     Gaffney BPW denies the allegations set forth in Paragraph 35.

36.     Gaffney BPW denies the allegations set forth in Paragraph 36, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

37.     Admitted, but Gaffney BPW clarifies it knew of utility payments made by ISW Holdings, Inc., Blockquarry, and other payors. It knew of lease payments made by ISW Holdings, Inc. and unknown payors.

38.     Gaffney BPW denies the allegations set forth in Paragraph 38, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

39.     Gaffney BPW denies the allegations set forth in Paragraph 39.

40.     Gaffney BPW denies the allegations set forth in Paragraph 40, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

41.     Gaffney BPW denies the allegations set forth in Paragraph 41, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**E.  Defendant attempts to extort money from Blockquarry.**

42.     Gaffney BPW denies the allegations set forth in Paragraph 42, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

43.     Gaffney BPW denies the allegations set forth in Paragraph 43, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

44.     Gaffney BPW denies the allegations set forth in Paragraph 44, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

45.     Gaffney BPW denies the allegations set forth in Paragraph 45, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

46.     Gaffney BPW denies the allegations set forth in Paragraph 46, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

47.     Gaffney BPW denies the allegations set forth in Paragraph 47, including all subparts thereto, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

48.     Gaffney BPW denies the allegations set forth in Paragraph 48, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

49.     Gaffney BPW denies the allegations set forth in Paragraph 49, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

50.     Gaffney BPW denies the allegations set forth in Paragraph 50, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

51.     Gaffney BPW denies the allegations set forth in Paragraph 51, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

52.     The allegations set forth in Paragraph 52 are not directed towards Gaffney BPW, so a response is not required. To the extent a response is required, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

53.     The allegations set forth in Paragraph 53 are not directed towards Gaffney BPW, so a response is not required. To the extent a response is required, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

54.     The allegations set forth in Paragraph 54 are not directed towards Gaffney BPW, so a response is not required. To the extent a response is required, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**F. The Utility stops electrical service to the Premises; refuses to return the Deposit to Blockquarry; and locks Blockquarry out of the Premises.**

55.     Gaffney BPW admits that it stopped electrical services to 150 Hyatt Street, Gaffney, Cherokee County, South Carolina during January 2023. Any allegations to the contrary are denied.

56.     Gaffney BPW admits the allegations set forth in Paragraph 56 of Blockquarry's Complaint but clarifies the address of the premises at issue is 150 Hyatt Street, Gaffney, Cherokee County, South Carolina. Gaffney BPW further clarifies that its letter to Litchain dated January 9, 2023, stated that Gaffney BPW "did not approve of or consent to this sublease." The term "not" was not italicized in Gaffney's letter, and the determiner "this" was missing from the excerpt quoted in Paragraph 56 of Blockquarry's Complaint. Any allegations to the contrary are denied.

57.     Gaffney BPW admits it has padlocked the premises located at 150 Hyatt Street, Gaffney, Cherokee County, South Carolina but clarifies this was not done until after the termination of the lease on March 13, 2023. Any allegations to the contrary and the remaining allegations set forth in Paragraph 57 of Blockquarry's Complaint are denied.

58.     The allegations set forth in Paragraph 58 are denied as stated, in part because they are incomplete and in part because they misstate the underlying facts.

59.     Gaffney BPW denies the allegations set forth in Paragraph 59.

60.     Gaffney BPW denies the allegations set forth in Paragraph 60.

61.     Gaffney BPW denies the allegations set forth in Paragraph 61.

**G. Litchain attempts to evict Blockquarry and dupe the Utility into returning the Deposit to Litchain.**

62.     Gaffney BPW denies the allegations set forth in Paragraph 62, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted. As for the

document attached as Exhibit A to Blockquarry's Complaint, Gaffney BPW avers the document speaks for itself.

63.     Gaffney BPW denies the allegations set forth in Paragraph 63, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

64.     Gaffney BPW admits the allegations set forth in Paragraph 64.

65.     Gaffney BPW admits the allegations set forth in Paragraph 65.

66.     The allegations set forth in Paragraph 66 assert a legal conclusion, so a response is not required. To the extent this Court requires a response, the allegations are denied.

**H. Terms of the Purported Sublease between Blockquarry and Defendant**

67.     Gaffney BPW denies the allegations set forth in Paragraph 67, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted. As for the document attached as Exhibit B to Blockquarry's Complaint, Gaffney BPW avers the document speaks for itself.

68.     Gaffney BPW admits the document attached as Exhibit B to Blockquarry's Complaint references a "master lease" between the utility and Litchain dated September 23, 2021. The remaining allegations set forth in Paragraph 68 are denied.

69.     To the extent the allegations set forth in Paragraph 69 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, they are admitted. Any inconsistent allegations are denied.

70.     To the extent Blockquarry has properly quoted the document attached to as Exhibit B to Blockquarry's Complaint, Gaffney BPW admits its terms were "'conditioned upon the consent . . . by [the Utility,] which consent shall be evidenced by [the Utility's] signature appended hereto or a separate consent . . . .'" To the extent consistent with the plain language of the document

attached as Exhibit B to Blockquarry's Complaint, Gaffney BPW further admits that the agreement may be cancelled upon written notice in the event Litchain does not receive Gaffney BPW's consent. All remaining allegations are denied.

71.     To the extent the allegations set forth in Paragraph 71 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, they are admitted. Any inconsistent allegations are denied.

72.     To the extent the allegations set forth in Paragraph 72 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, they are admitted. Any inconsistent allegations are denied.

73.     To the extent the allegations set forth in Paragraph 73 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, Gaffney BPW admits the document requires the payment of rent in the amount of $3,000 per month. All remaining allegations are denied.

74.     To the extent the allegations set forth in Paragraph 74 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, Gaffney BPW admits the document requires Litchain to produce notices received by the utility. All remaining allegations are denied.

75.     To the extent the allegations set forth in Paragraph 75 are consistent with the plain language of the document attached as Exhibit B to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

76.     Gaffney BPW denies the allegations set forth in Paragraph 76, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

77.     To the extent Paragraph 77 asserts conclusions of law, a response is not required. Any additional allegations are denied.

78.     Gaffney BPW denies the allegations set forth in Paragraph 79, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

**I.   Terms of the Purported License Agreement between Blockquarry and Defendant**

79.     Gaffney BPW denies the allegations set forth in Paragraph 79, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted. As for the document attached as Exhibit C to Blockquarry's Complaint, Gaffney BPW avers the document speaks for itself.

80.     Gaffney BPW denies the allegations set forth in Paragraph 80, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

81.     To the extent Blockquarry has properly quoted the document attached as Exhibit C to Blockquarry's Complaint, Gaffney BPW admits the document references a "'special agreement with Gaffney Board of Public Works'" and "'a revocable license.'" To the extent the remaining allegations set forth in Paragraph 81 are consistent with the plain language of Exhibit C to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

82.     To the extent the allegations set forth in Paragraph 82 are consistent with the plain language of Exhibit C to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

83.     Gaffney BPW denies the allegations set forth in Paragraph 83. The document attached as Exhibit C to Blockquarry's Complaint speaks for itself.

84.     Gaffney BPW denies the allegations set forth in Paragraph 84. The document attached as Exhibit C to Blockquarry's Complaint speaks for itself.

85.     Gaffney BPW denies the allegations set forth in Paragraph 85. The document attached as Exhibit C to Blockquarry's Complaint speaks for itself.

86.     Gaffney BPW denies the allegations set forth in Paragraph 86. The document attached as Exhibit C to Blockquarry's Complaint speaks for itself.

87.     To the extent the allegations set forth in Paragraph 87 are consistent with the plain language of the document attached as Exhibit C to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

88.     To the extent the allegations set forth in Paragraph 88 are consistent with the plain language of the document attached as Exhibit C to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

89.     Gaffney BPW denies the allegations set forth in Paragraph 89, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

90.     To the extent Paragraph 90 asserts conclusions of law, a response is not required. Any additional allegations are denied.

**J.  Terms of the Electrical Service Agreement between Defendant and the Utility**

91.     Upon information and belief, Gaffney BPW admits the allegations set forth in Paragraph 91. As for the document attached as Exhibit D to Blockquarry's Complaint, Gaffney BPW avers the document speaks for itself.

92.     Gaffney BPW denies the allegations set forth in Paragraph 92. The document attached as Exhibit D to Blockquarry's Complaint speaks for itself.

93.     To the extent the allegations set forth in Paragraph 93 are consistent with the plain language of the document attached as Exhibit D to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

94.     To the extent the allegations set forth in Paragraph 94 are consistent with the plain language of the document attached as Exhibit D to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

95.     To the extent the allegations set forth in Paragraph 95 are consistent with the plain language of the document attached as Exhibit D to Blockquarry's Complaint, they are admitted. All inconsistent allegations are denied.

96.     Gaffney BPW denies the allegations set forth in Paragraph 96, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

## <u>COUNT I</u>

**REQUEST FOR DECLARATORY JUDGMENT RELATIVE TO THE DEPOSIT, THE PERSONAL PROPERTY ON THE PREMSISES, AND ALLEGED INDEBTEDNESS TO DEFENDANT AND THE UTILITY**

*<u>(As to Defendant and the Utility)</u>*

97.     Gaffney BPW incorporates its responses to Paragraphs 1 through 96 above by reference as if restated herein verbatim.

98.     Paragraph 98 asserts a legal conclusion, so a response is not required.

99.     Paragraph 99 asserts legal conclusions, so a response is not required. Any and all remaining allegations are denied.

100.     Paragraph 100 asserts legal conclusions, so a response is not required. Any and all remaining allegations are denied.

101.     Paragraph 101 asserts legal conclusions, so a response is not required. Any and all remaining allegations are denied.

102.     Gaffney BPW denies the allegations set forth in Paragraph 102, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

103.    Gaffney BPW denies the allegations set forth in Paragraph 103, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

104.    Gaffney BPW denies the allegations set forth in Paragraph 104, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

105.    Gaffney BPW denies the allegations set forth in Paragraph 105, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

106.    Gaffney BPW denies the allegations set forth in Paragraph 106, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

107.    Gaffney BPW denies Blockquarry is entitled to any relief from it on the premises asserted, including but not limited to the relief sought in the "WHEREFORE" clause, including subparts (A) through (G) thereto, in Count 1 of Blockquarry's Complaint.

## COUNT 2

### DECLARATORY JUDGMENT RELATIVE TO THE PURPORTED SUBLEASE

### *(As to Defendant)*

108.    Gaffney BPW incorporates its responses to Paragraphs 1 through 107 above by reference as if restated herein verbatim.

109.    Paragraph 108 asserts a legal conclusion, so a response is not required.

110.    Paragraph 109 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

111.    Paragraph 110 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney

14

BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

112.    Paragraph 111 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

113.    Paragraph 112 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

114.    The relief sought in the "WHEREFORE" clause, including subparts (1) through (3), in Count 2 of Blockquarry's Complaint is not directed towards Gaffney BPW, so a response is not required. To the extent the Court requires a response, Gaffney BPW denies Blockquarry is entitled to any relief from it on the premises asserted.

## <u>COUNT 3</u>

### DECLARATORY JUDGMENT RELATIVE TO THE PURPORTED LICENSE AGREEMENT

#### *(As to Defendant)*

115.    Gaffney BPW incorporates its responses to Paragraphs 1 through 114 above by reference as if restated herein verbatim.

116.    Paragraph 114 asserts a legal conclusion, so a response is not required.

117.    Paragraph 115 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney

BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

118.    Paragraph 116 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

119.    Paragraph 117 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

120.    Paragraph 118 asserts legal conclusions, and to the extent it does not, it is directed to Litchain, so a response is not required. To the extent this Court requires a response, Gaffney BPW denies the allegations, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

121.    The relief sought in the "WHEREFORE" clause, including subparts (A) through (C), in Count 3 of Blockquarry's Complaint is not directed towards Gaffney BPW, so a response is not required. To the extent the Court requires a response, Gaffney BPW denies Blockquarry is entitled to any relief from it on the premises asserted.

## REQUEST FOR INJUNCTIVE RELIEF

### *(As to Defendant and the Utility)*

122.    Gaffney BPW incorporates its responses set forth in Paragraphs 1 through 121 above by reference as if restated herein verbatim.

123.    Gaffney BPW denies Blockquarry is entitled to the relief sought in Paragraph 120, as it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

124.    Paragraph 121 asserts a legal conclusion, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

125.    Paragraph 122 asserts a legal conclusion, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

126.    Paragraph 123 asserts legal conclusions, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

127.    Paragraph 124 asserts a legal conclusion, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

128.    Paragraph 125 asserts legal conclusions, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

129.    Paragraph 126 asserts a legal conclusion, so a response is not required. To the extent the Court requires a response, the allegations are denied because Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

130.    Gaffney BPW denies Blockquarry is entitled to the relief sought in the "WHEREFORE" clause, including but not limited to subparts (A) through (F), set forth at the end of its request for injunctive relief.

## COUNT 4

## WRONGFUL EVICTION

### *(As to Defendant)*

131.    Gaffney BPW incorporates its responses set forth in Paragraphs 1 through 130 above by reference as if restated herein verbatim.

132.    Gaffney BPW denies the allegations set forth in Paragraph 128, including all subparts thereto, because it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

133.    Gaffney BPW denies the allegations set forth in Paragraph 129 because it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

134.    Gaffney BPW denies the Blockquarry is entitled to the relief sought at the conclusion of Count 4 because it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted. Gaffney BPW further denies that Blockquarry is entitled to any relief against it whatsoever on the premises.

## COUNT 5

## ABUSE OF PROCESS

### *(As to Defendant)*

135.    Gaffney BPW incorporates its responses to Paragraphs 1 through 134 above by reference as if restated herein verbatim.

136.    The allegations set forth in Paragraph 131 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

137.    The allegations set forth in Paragraph 132 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

138.    The allegations set forth in Paragraph 133 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

139.    The allegations set forth in Paragraph 134 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

140.    The allegations set forth in Paragraph 135 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

141.    The allegations set forth in Paragraph 136 are not directed to Gaffney BPW, so a response is not required. To the extent this Court requires a response, the allegations are denied, as

Gaffney BPW lacks sufficient knowledge and information to form a belief about the truth of the matters asserted.

142.   Gaffney BPW denies the Blockquarry is entitled to the relief sought at the conclusion of Count 5 because it lacks sufficient knowledge and information to form a belief about the truth of the matters asserted. Gaffney BPW further denies that Blockquarry is entitled to any relief against it whatsoever on the premises.

143.   Gaffney BPW, likewise, demands a trial by jury on all issues so triable but denies the claims asserted against it by Blockquarry are triable by jury because they are equitable in nature and/or involve pure questions of law. Gaffney BPW does not waive its right to a jury trial on the claims asserted against it should the Court later determine such a right exists and/or circumstances change such that a jury trial is appropriate.

144.   Any allegations not affirmed, denied, or otherwise clarified above are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### *(Failure to State a Claim Upon Which Relief Can be Granted)*

145.   All allegations contained within Gaffney BPW's Amended Answer, Amended Crossclaim, and Amended Counterclaim that are not inconsistent with this defense are incorporated herein by reference.

146.   Blockquarry failed to state a claim against Gaffney BPW upon which relief can be granted, so Blockquarry's Complaint against it must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

147.   Gaffney BPW has filed an amended crossclaim and an amended counterclaim for interpleader, in which it requests to deposit the remaining deposit amount into the Court. Gaffney BPW additionally asks, if possible, to deposit the cryptocurrency mining equipment at issue into

the Court. Once such deposit has been made and/or interpleader accepted, Gaffney BPW must be dismissed from this lawsuit.

**SECOND AFFIRMATIVE DEFENSE**
*(Laches, Waiver, and/or Estoppel)*

148.    All allegations contained within Gaffney BPW's Amended Answer, Amended Crossclaim, and Amended Counterclaim that are not inconsistent with this defense are incorporated herein by reference.

149.    Blockquarry's Complaint is barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

150.    Litchain never requested, and Gaffney BPW never provided, the written consent required by Section 13 of the ground lease for Litchain to sublease 150 Hyatt Street to ISW Holdings, Inc. or Blockquarry.

151.    Blockquarry, therefore, never received the written consent to the sublease required prior to the commencement of the sublease per the terms of Article 1 of it.

152.    Blockquarry knew or reasonably should have known that Gaffney BPW never consented to its purported sublease of 150 Hyatt Street.

153.    Blockquarry knew or reasonably should have known that it did not apply for or enter into an agreement with Gaffney BPW for the provision of electric utility services and/or for the receipt of a special rate and that the Special Benefit License Agreement referenced in Blockquarry's Complaint (and attached thereto as Exhibit C) was invalid.

154.    Despite knowledge that the sublease and Special Benefit License Agreement were invalid, Blockquarry made utility and lease payments on behalf of Litchain, apparently used 150 Hyatt Street for the purpose of operating a cryptocurrency mining operation, and allowed

cryptocurrency mining equipment to which it and third parties had claims to be used and stored on the premises for over a year.

155.     Blockquarry has, therefore, waived any and all claims set forth in its Complaint against Gaffney BPW, including but not limited to any assertions that it is entitled to the return of any money paid to Gaffney BPW under these circumstances.

156.     In addition, the equitable doctrines of latches and estoppel prevent Blockquarry from asserting the claims set forth in its Complaint, including but not limited to its assertions that it is entitled to the return of any money paid to Gaffney BPW under these circumstances.

### THIRD AFFIRMATIVE DEFENSE
*(Fraud and/or Misrepresentation)*

157.     All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

158.     By entering into the sublease, which included the following statement, "[a] true copy of the Master Lease has been delivered to Subtenant," Blockquarry represented that Gaffney BPW had provided and that it had received the requisite written approval of the sublease. This statement was false, and Blockquarry knew it was false.

159.     Despite knowledge of this misrepresentation, Blockquarry made utility and lease payments on behalf of Litchain, apparently used 150 Hyatt Street for the purpose of operating a cryptocurrency mining operation, and allowed cryptocurrency mining equipment to which it and third parties had claims to be used and stored on the premises for over a year.

160.     This fraud and misrepresentation prevent Blockquarry from asserting the claims set forth in its Complaint, including but not limited to its assertions that it is entitled to the return of any money paid to Gaffney BPW under these circumstances.

## FOURTH AFFIRMATIVE DEFENSE
### *(Unclean Hands)*

161.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

162.    Blockquarry engaged in inequitable conduct that directly relates to the subject matter of this litigation and has prejudiced Gaffney BPW. Accordingly, Blockquarry's claims are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE
### *(Consent)*

163.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

164.    Blockquarry's claims are barred because it consented to the sublease and Special Benefit License Agreement that it now contends are invalid and that it alleges formed, at least in part, the basis for its payment of the electric utility deposit.

165.    With knowledge that these agreements were invalid and unenforceable and that, instead, the valid and enforceable ground lease and electric utility agreement were between Gaffney BPW and Litchain only, Blockquarry cannot now demand the return of any portion of the electric utility deposit or cryptocurrency mining equipment left at 150 Hyatt Street to it. Instead, once Gaffney BPW has returned the electric utility deposit and cryptocurrency mining equipment to its customer, Litchain, pursuant to the terms of the ground lease and electric utility agreement with it, Blockquarry can pursue whatever action it deems necessary to recover the money and other personal property from Litchain.

## SIXTH AFFIRMATIVE DEFENSE
### *(Sovereign Immunity)*

166.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

167.    Gaffney BPW asserts it is entitled to all immunities available to it under the United States Constitution and the Constitution of the State of South Carolina as a political subdivision of this State, including but not limited to sovereign immunity.

## SEVENTH AFFIRMATIVE DEFENSE
### *(Accord and Satisfaction)*

168.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

169.    To the extent Blockquarry's claims against Gaffney BPW are barred by accord and satisfaction, Gaffney BPW relies on it as an affirmative defense.

## EIGHTH AFFIRMATIVE DEFENSE
### *(Release)*

170.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

171.    Blockquarry's claims are barred to the extent such claims have been released.

## NINTH AFFIRMATIVE DEFENSE
### *(Illegality)*

172.    All allegations contained within Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim that are not inconsistent with this defense are incorporated herein by reference.

173.    Blockquarry's claims are barred to the extent it seeks the recovery of money and other personal property paid pursuant to illegal, invalid, and unenforceable contracts with Litchain.

## TENTH AFFIRMATIVE DEFENSE

174.    To the extent applicable, Gaffney BPW's hereby incorporates and asserts all defenses, crossclaims, counterclaims, set offs, and credits plead by other parties in this action, to include any pleadings filed after this Amended Answer.

## ELEVENTH AFFIRMATIVE DEFENSE
### *(Reservation of Rights)*

175.    Gaffney BPW submits it has not had an opportunity to conduct a sufficient investigation or to engage in adequate discovery regarding the circumstances of Blockquarry's allegations. Gaffney BPW intends to act as best it can to inform itself of the pertinent facts and prevailing circumstances surrounding any reported damage or other claim as alleged in Blockquarry's Complaint and gives notice of its intent to assert any further defenses that its information gathering process may indicate are supported by fact and law. These defenses may include, but are not limited to, a defense that the action is barred in whole or in part by any applicable statute, contract, and/or covenant. Gaffney BPW thus reserves the right to further amend this Answer to assert additional defenses.

WHEREFORE, having fully answered Blockquarry's Complaint, Gaffney BPW prays to this honorable Court for the following:

A.  that the Complaint be dismissed with prejudice;

B.  that Blockquarry have and recover nothing from Gaffney BPW;

C.  that the costs of this action be taxed against some person or entity other than Gaffney
    BPW; and

D.  for such other and further relief as the Court deems just and proper.

## AMENDED COUNTERCLAIM AND AMENDED CROSSCLAIM

In addition to the foregoing, the defendant, Gaffney BPW, hereby alleges and states the following Amended Counterclaim against Blockquarry and Amended Crossclaim against Litchain:

## INTRODUCTION

1.      Pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335, Gaffney BPW seeks to interplead an outstanding electric utility deposit paid by Litchain, totaling approximately $440,178.19 ("Deposit Refund") and, to the extent the total amount of the deposit remaining for distribution is disputed, asserts a claim in the nature of interpleader. Upon information and belief, both Litchain and Blockquarry claim an interest in this Deposit Refund, so Gaffney BPW seeks guidance and a declaration from this Court as to the proper manner in which to dispose of it.

2.      In addition, following Gaffney BPW's termination of its ground lease with Litchain due to breach via letter dated March 13, 2023, as referenced in Paragraph 64 of Blockquarry's Complaint and admitted to herein, Litchain left equipment and other personal property used for the operation of a cryptocurrency mining site ("Cryptocurrency Mining Equipment") on property owned by Gaffney BPW located at 150 Hyatt Street, Gaffney, South Carolina ("150 Hyatt Street"). Following the abandonment of this Cryptocurrency Mining Equipment, multiple parties have claimed entitlement to it, namely Blockquarry and Litchain, who are both parties to this lawsuit,

and Bitmain and BEEQB LLC, who are third parties that, upon information and belief, leased equipment to Blockquarry, Blockquarry's clients, and/or Blockquarry's vendors. Pursuant to Rule 22 of the Federal Rules of Civil Procedure and, alternatively, 28 U.S.C. § 1335, Gaffney BPW seeks to interplead the Cryptocurrency Mining Equipment and requests guidance and a declaration from this Court as to the proper manner in which to disburse it. In the meantime, Gaffney BPW has securely locked the premises and intends to keep the premises locked until receiving the requested disbursement instructions from this Court.

3.     Gaffney BPW seeks a declaration from this Court that the Non-Disclosure Confidentiality and Non-Circumvention Agreement ("Nondisclosure and Non-Circumvention Agreement") signed by employees of Gaffney BPW on or about August 25, 2021, is ultra vires, invalid, void, and/or unenforceable.

4.     Finally, Gaffney BPW asserts breach of contract claims against Litchain for the recovery of all outstanding utility payments and ground lease payments in the amounts set forth herein.

## PARTIES, JURISDICTION, AND VENUE

5.     Gaffney BPW is a commission of public works under South Carolina law, particularly Title 5, Chapter 31, Article 3 of the Code of Laws of South Carolina 1976, as amended, and an agency of the City. Gaffney BPW provides electric power, water, and wastewater services within the municipal limits of the City and other areas of Cherokee County, South Carolina by contract.

6.     Blockquarry is a cryptocurrency mining company that is incorporated in the State of Nevada and has its principal place of business in Houston, Texas.

7.     Litchain is a cryptocurrency mining company that is incorporated in the State of Florida, has its principal place of business in Lake Mary, Florida, is authorized to conduct business in the State of South Carolina, and, upon information and belief, has an office in this State.

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00. Venue is proper under 28 U.S.C. § 1391 because the property that is the subject of the action is situated in Gaffney, Cherokee County, South Carolina and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Gaffney, Cherokee County, South Carolina.

9.     Alternatively, this Court has subject matter jurisdiction over the claims for interpleader under 28 U.S.C. § 1335 because there are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the Deposit Refund and the Cryptocurrency Mining Equipment left at 150 Hyatt Street in the City of Gaffney, which premises is owned by Gaffney BPW. Further, the amount of the Deposit Refund and value of the equipment at issue exceed $500.00. Venue is proper under 28 U.S.C. § 1397 because at least one of the claimants has an office in this district.

## **FACTUAL BACKGROUND**

10.     The summer of 2021, Litchain entered into negotiations with Gaffney BPW relating to the possibility of operating a cryptocurrency mining business within its service area.

11.     In connection with these negotiations, Litchain provided Gaffney BPW with a Nondisclosure and Non-Circumvention Agreement dated July 21, 2021. On or about August 25, 2021, employees of Gaffney BPW signed this agreement without the knowledge or approval of the Gaffney BPW Board of Directors. A true and correct copy of this Nondisclosure and Non-Circumvention Agreement is attached hereto as Exhibit 1.

28

12.     On or around September 23, 2021, Litchain entered into a ground lease with Gaffney BPW ("Ground Lease") for the purpose of operating a cryptocurrency mining or similar operation on 150 Hyatt Street. This Ground Lease included a provision requiring all subleases to be approved by Gaffney BPW. A true and correct copy of the Ground Lease is attached hereto as Exhibit 2.

13.     In September 2021, Litchain opened an account with Gaffney BPW for the provision of electrical power services to 150 Hyatt Street and entered into a Special Agreement for Electric Utility Service to Litchain Corporation between Litchain and Gaffney BPW dated September 8, 2021 (the "Utility Agreement"). At that time, it applied for and received an economic development rider with credits for new loads, which is a special billing credit provided by Piedmont Municipal Power Agency, Gaffney BPW's wholesale electric power provider. The Utility Agreement required the payment of a deposit equal to Litchain's expected two highest month's utility bill average. This electric deposit guaranteed the payment of all associated electrical bills and included a ratchet component that locked in costs and required payments over a specified time period or until a specified electrical demand had been met. True and correct copies of Litchain's PMPA Economic Development Rider Application and the Utility Agreement are collectively attached as Exhibit 3.

14.     The customer name referenced on the PMPA Economic Development Rider Application was "Litchain Corporation." There was no reference to ISW Holdings, Inc. or to Blockquarry.

15.     The Utility Agreement for the provision of electric utility services to 150 Hyatt Street was between Gaffney BPW and Litchain only. There was no reference to ISW Holdings, Inc. or to Blockquarry. The Utility Agreement was not assignable.

16.     The electric utility deposit totaled $1,387,895.20 and, upon information and belief, was paid on behalf of Litchain by ISW Holdings, Inc., Alonzo Pierce, Bit5ive, Uptime Armory, and Uptime Hostings over the course of several payments from November 2021 to April 2022.

17.     Electric utility payments were also made on behalf of Litchain by ISW Holdings, Inc., Alonzo Pierce, Bit5ive, Uptime Hosting, and Blockquarry through January 5, 2023.

18.     On January 5, 2023, Alonzo Pierce made a partial payment of $301,000.00 toward the December bill for electric utility services provided from November 1, 2022, through December 1, 2022. Such partial payment was not sufficient to bring the account current, as a balance of $84,527.11 remained outstanding.

19.     Gaffney BPW suspended electrical service to 150 Hyatt Street on January 9, 2023, due to nonpayment of the account. The same date, Gaffney BPW sent Litchain a letter notifying it that for electrical service to be restored, it would need to pay its outstanding balance, all accrued penalties, and an additional customer deposit of $435,882.00 ("Notice of Breach Letter). A true and correct copy of the Notice of Breach Letter is attached hereto as Exhibit 4.

20.     In the Notice of Breach Letter dated January 9, 2023, Gaffney BPW additionally notified Litchain that it was in default of the Ground Lease. The Ground Lease indicated the property would be used to run a cryptocurrency mining or similar operation, which given the suspension of electrical service to the site, was no longer in operation. Failure to run and maintain a cryptomining operation on 150 Hyatt Street was an express default under the Ground Lease. Further, the lease required that Gaffney BPW approve all subleases and assignments, and Litchain, subject to the purported sublease with ISW Holdings, Inc., had assigned the lease to ISW Holdings, Inc. without the approval or consent of Gaffney BPW in violation of this provision.

21.     Per the terms of the Notice of Breach Letter, Gaffney BPW required all deficiencies to be cured within sixty days, otherwise it would terminate the Ground Lease and immediately re-enter and repossess the facility.

22.     Litchain failed to take any action in response to the notice of default and ceased making payments under the Ground Lease.

23.     Accordingly, on March 13, 2023, Gaffney BPW sent Litchain a letter terminating the Ground Lease ("Ground Lease Termination Letter"). A true and correct copy of the Ground Lease Termination Letter is attached hereto as Exhibit 5.

24.     Since the termination of the Ground Lease, Litchain made a single payment of $8,588.64 on March 10, 2023, that was returned due to insufficient funds. The same date, Litchain paid $413.15 to its utility account, an amount that matched the water and sewer portion of the utility bill, that was also returned due to insufficient funds.

25.     At this time, Litchain owes Gaffney BPW $12,718.64 under the Ground Lease, which includes outstanding lease payments for November 2022, December 2022, January 2023, February 2023, and March 2023 (pro-rated), less certain credits.

26.     Now that the lease has been terminated and Litchain has taken no further action to restore power to the site or reinstate the lease, Gaffney BPW has closed Litchain's electric utility account, which will require the return of any portion of the utility deposit remaining after the satisfaction of Litchain's outstanding obligations to Gaffney BPW.

27.     Before returning the utility deposit, Gaffney BPW must use the customer deposit to satisfy the following outstanding power bills: January and February bills and fees of $679,097.23; March bill and fees of $77,825.30; and April bill of $73,475.48.

28.     In addition, in the event of early termination of the Utility Agreement, Litchain was to reimburse Gaffney BPW for the cost of the materials acquired for Litchain to start service, including the cost of regulators, conductor, and metering equipment. This agreement was confirmed in a letter sent to Litchain on November 1, 2021 ("Deposit Payment Schedule Letter"). A true and correct copy of the Deposit Payment Schedule Letter is attached hereto as Exhibit 6.

29.     Due to the early termination of Litchain's utility agreement with Gaffney BPW, Litchain owes the utility $117,319.00 for the expenses incurred when preparing to deliver service to the site, broken down as follows: $64,296.00 for 400 regulators; $20,638.00 for regulator bypass switches, $6,032.00 for a concrete pad; $22,249.00 for primary meter & .556 wire; and $4,104 for site lighting. These amounts also remain outstanding.

30.     A deposit balance of $440,178.19 remains after all outstanding obligations relating to the provisions of electric utility services have been paid.

31.     The electric utility account was opened by Litchain only, and the PMPA rate was provided to Litchain only. As the account holder, Gaffney BPW intended to return the Deposit Refund to Litchain after finalizing the closure of its account.

32.     Instead, once electrical services had been suspended, the Ground Lease was terminated, and the electric utility account was closed, Gaffney BPW received demands for the return of the Deposit Refund from both Litchain and Blockquarry. As such, the Utility Refund has not been returned to anyone and remains in the possession of Gaffney BPW.

33.     In addition, all Cryptocurrency Mining Equipment remains onsite at 150 Hyatt Street. Following the termination of the Ground Lease, Litchain did not take prompt action to remove the equipment, so Gaffney BPW padlocked the premises. Since that time, Litchain and Blockquarry have demanded the return of the Cryptocurrency Mining Equipment.

34. Gaffney BPW has also received inquiries from attorneys representing third parties Bitmain and BEEQB LLC that claim to have loaned and/or leased the Cryptocurrency Mining Equipment left onsite at 150 Hyatt Street to Blockquarry, Blockquarry's clients, and/or Blockquarry's venders regarding the status of the equipment's return.

35. Due to the competing claims for equipment return, 150 Hyatt Street remains securely padlocked so that the Cryptocurrency Mining Equipment cannot be accessed or removed. This site will remain locked, with the equipment securely in place, until Gaffney BPW receives direction from the Court as to the proper manner in which to distribute it.

### COUNT I
### INTERPLEADER OF UTILITY DEPOSIT

36. Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those included in its Amended Answer, by reference as if fully realleged.

37. All conditions precedent, if any, to this suit have occurred or have been performed, tendered, and/or waived.

38. After closing Litchain's electrical utility account and deducting the outstanding utility balance outlined above, the amount remaining totals approximately $440,178.19. This Deposit Refund is ready to be paid to the rightful recipient.

39. Gaffney BPW is a mere innocent stakeholder with respect to the Deposit Refund.

40. Gaffney BPW is ready and willing to pay the Deposit Refund into the court registry or to the person(s) legally entitled to receive them.

41. Based on the foregoing, there is an actual, justiciable controversy among the parties as to their respective potential rights to the Deposit Refund.

42.     By reason of these claims and the controversy amount, pursuant to Rule 22 of the Federal Rules of Civil Procedure and, alternatively, 28 U.S.C. § 1335, Gaffney BPW is entitled to interplead the Deposit Refund pending future order or judgment of the Court with respect to the subject matter and controversies herein and to thereupon be discharged from any and all liability in connection with such controversies.

**COUNT II**
**IN THE NATURE OF INTERPLEADER (DEPOSIT REFUND)**

43.     Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those included in its Amended Answer, by reference as if fully realleged.

44.     Should Blockquarry and/or Litchain contest the amounts being withheld from the $1,387,895.20 electric utility deposit paid to Gaffney BPW, it additionally requests a determination of its rights in the nature of interpleader as to all issues, controversies, and sums that are the subject of this action by way of future order or judgment of the Court with respect to the subject matter or controversies herein.

**COUNT III**
**INTERPLEADER OF THE CRYPTOCURRENCY MINING EQUIPMENT**

45.     Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those set forth in its Amended Answer, by reference as if fully realleged.

46.     All conditions precedent, if any, to this suit have occurred or have been performed, tendered, and/or waived.

47.     Following Gaffney BPW's termination of the Ground Lease, the Cryptocurrency Mining Equipment was left onsite at 150 Hyatt Street.

48.     Gaffney BPW does not know the value of the Cryptocurrency Mining Equipment left on the premises but believes it could be worth in excess of ten million dollars.

49.     Gaffney BPW does not make an independent claim of entitlement to the Cryptocurrency Mining Equipment and does not wish to keep, use, or otherwise assert control over it. Instead, now that the Ground Lease has been terminated, Gaffney BPW would like the Cryptocurrency Mining Equipment left at 150 Hyatt Street removed from its premises and returned to its rightful owner(s).

50.     Gaffney BPW is a mere innocent stakeholder with respect to the Cryptocurrency Mining Equipment left at 150 Hyatt Street.

51.     Gaffney BPW is ready and willing to return the Cryptocurrency Mining Equipment left at 150 Hyatt Street to the person(s) legally entitled to receive it. Gaffney BPW has securely locked 150 Hyatt Street, and the premises will remain securely locked until this Court has determined the proper manner in which to distribute said property.

52.     Only upon the receipt of a court order directing distribution will Gaffney BPW release the Cryptocurrency Mining Equipment to which Blockquarry, Litchain, and third parties assert claims, and when it does, said distribution will occur in strict compliance with that order.

53.     Based on the foregoing, there is an actual, justiciable controversy among the parties as to their respective potential rights to the Cryptocurrency Mining Equipment locked on the premises of 150 Hyatt Street.

54.     By reason of these claims and the value of the Cryptocurrency Mining Equipment left on the site, Gaffney BPW is entitled to interplead the Cryptocurrency Mining Equipment pending future order or judgment of the Court with respect to the subject matter and controversies

herein and to thereupon be discharged from any and all liability in connection with such controversies.

55.     If possible, Gaffney BPW seeks to physically deposit the Cryptocurrency Mining Equipment into the Court pending the outcome of this litigation, thereby relieving it of the burden of housing it.

56.     Rule 22 of the Federal Rules of Civil Procedure, however, does not require Gaffney BPW to deposit the Cryptocurrency Mining Equipment left at 150 Hyatt Street into the Court in order for the Court to exercise jurisdiction over this request for interpleader.

57.     Moreover, due to the size and quantity of the Cryptocurrency Mining Equipment left at 150 Hyatt Street, physical deposit may be impossible.

58.     Due to the high value of the Cryptocurrency Mining Equipment, it is impractical and unduly burdensome for Gaffney BPW to deposit an amount equal to the value of the equipment or post a bond in an amount sufficient to cover the value of the equipment, particularly when Gaffney BPW does not make an independent claim of entitlement to the Cryptocurrency Mining Equipment.

59.     Further, Gaffney BPW has come to this Court in good faith, asking it to determine the rightful owner(s) of the Cryptocurrency Mining Equipment, which is currently being held, in part, due to the order of this Court dated April 12, 2023, admonishing the parties from dissipating the money, equipment, and other real property at issue in this lawsuit. (ECF No. 9)

60.     Requiring Gaffney BPW to deposit an amount into the Court equal to the value of the Cryptocurrency Mining Equipment or to post a bond sufficient to secure the cost of such expensive equipment would have an unnecessary and unfair punitive effect on Gaffney BPW.

61.     Due to these circumstances, if it is not possible to physically deposit the Cryptocurrency Mining Equipment into the Court, Gaffney BPW alternatively asks this Court to grant its request for Rule 22 interpleader without requiring deposit of any kind, including the payment of the value of the Cryptocurrency Mining Equipment into the Court or the posting of a bond sufficient to secure the value of the Cryptocurrency Mining Equipment.

62.     If this Court finds physical deposit of the Cryptocurrency Mining Equipment into the Court is not possible, Gaffney BPW additionally asks this Court to order the parties claiming an interest in the Cryptocurrency Mining Equipment, including Blockquarry and Litchain, to adequately insure the equipment to which it claims it is entitled and provide Gaffney BPW with a certificate of insurance that identifies the equipment and/or other personal property covered, identifies the associated coverage limits, and names Gaffney BPW as an additional insured.

63.     Gaffney BPW is not familiar with the manner in which computer equipment used for the operation of a cryptocurrency mining site must be stored in order for it to remain operational when put back into use. If the Cryptocurrency Mining Equipment must be stored at a specific temperature, Gaffney BPW asks this Court to order the parties claiming competing interests in the Cryptocurrency Mining Equipment, including Blockquarry and Litchain, to pay for the electricity needed to keep 150 Hyatt Street cooled to the requisite temperature.

64.     If, in the alternative, if the Court considers Gaffney BPW's request to interplead the Cryptocurrency Mining Equipment left at 150 Hyatt Street under 28 U.S.C. § 1335, and finds that physical deposit of the equipment is not possible, then given the circumstances set forth herein, including without limitation that Gaffney BPW has securely padlocked the premises, Gaffney BPW does not assert an independent claim to the Cryptocurrency Mining Equipment, Gaffney BPW comes to this Court in good faith, and Gaffney BPW has asked the Court to order the parties

claiming competing interests in the Cryptocurrency Mining Equipment to take steps to adequately insure the property and pay for any necessary cooling of the property, Gaffney BPW asks this Court to deem an additional bond or surety improper, as the steps taken by Gaffney BPW sufficiently ensure the safekeeping of the Cryptocurrency Mining Equipment pending compliance with the future order or judgment of the Court relating to the distribution of the Cryptocurrency Mining Equipment.

## COUNT III
## DECLARATORY JUDGMENT

### *(Relating to Return of Deposit Refund and Cryptocurrency Mining Equipment)*

65.     Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those set forth in its Amended Answer, by reference as if fully realleged.

66.     Actual justiciable controversies have arisen and exist between and among the parties to these proceedings within the meaning of 28 U.S.C. §§ 2201 and 2202.

67.     Gaffney BPW is entitled to a declaration of the rights, duties, and obligations of the parties as to the issues, controversies, and sums that are the subject of this Amended Counterclaim and Amended Crossclaim, including declarations as to the manner in which the Deposit Refund and Cryptocurrency Mining Equipment left onsite at 150 Hyatt Street should be distributed.

## COUNT IV
## DECLARATORY JUDGMENT

### *(Declaring the Nondisclosure and Non-Circumvention Agreement ultra vires, invalid, void, and/or unenforceable)*

68.     Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those set forth in its Amended Answer, by reference as if fully realleged.

69.     Actual justiciable controversies have arisen and exist between and among the parties to these proceedings within the meaning of 28 U.S.C. §§ 2201 and 2202.

70.     On or about August 25, 2021, employees of Gaffney BPW signed the Nondisclosure and Non-Circumvention Agreement. Litchain has since threatened to enforce this agreement despite Gaffney BPW's assertion that it is ultra vires, invalid, void, and unenforceable.

71.     This Nondisclosure and Non-Circumvention Agreement contained choice of law and venue provisions that are invalid and unenforceable. As a public works commission and agent of a municipality and political subdivision of the State of South Carolina, Gaffney BPW can only agree to be bound by the laws of the State of South Carolina and to be subject to suit in courts that are located in this State. As such, the agreement is subject to interpretation under South Carolina law, and this Court has the authority to interpret it and resolve disputes arising under it.

72.     The employees that executed the Nondisclosure and Non-Circumvention Agreement did not have the approval of the Gaffney BPW Board of Directors or City Council. Because these employees lacked the authority and capacity to contractually bind the utility, the Nondisclosure and Non-Circumvention Agreement is ultra vires, invalid, void, and wholly unenforceable.

73.     The terms of the Nondisclosure and Non-Circumvention Agreement signed by these employees violate public policy and the laws of the State of South Carolina.

74.     Public bodies, like Gaffney BPW, cannot be bound by the terms of a nondisclosure agreement. Instead, public bodies must conduct official business in public and make independent decisions about the withholding of public information in a manner that complies with the South Carolina Freedom of Information Act ("FOIA"), codified by Sections 30-4-10, *et seq*. of the South

Carolina Code of Laws 1976, as amended. For this reason, the Nondisclosure and Non-circumvention Agreement is ultra vires, invalid, void, and unenforceable.

75.    In addition, public bodies must be free to discharge their governmental duties in the manner they deem to be the most appropriate and beneficial to the public they serve. Therefore, public bodies cannot enter into contracts involving governmental functions, legislative functions, or matters of discretion that bind successor boards or councils.

76.    The terms of the Nondisclosure and Non-Circumvention Agreement interfere with the ability of future boards of Gaffney BPW to make independent decisions regarding the disclosure of public information within the confines of FOIA, so it is ultra vires, invalid, void, and unenforceable.

77.    The terms of the Nondisclosure and Non-Circumvention Agreement additionally interfere with the ability of future boards to make decisions that directly impact the provision of electric utility services to future customers and the best manner in which to utilize and grow public funds, so it is ultra vires, invalid, void, and unenforceable.

78.    Business decisions made by public bodies should be fair, reasonable, necessary, and advantageous to it. Therefore, bad decisions made by the governing board of a public body cannot bind future boards. The allowance of this would violate public policy and the law of this State.

79.    To the extent the employees that signed the Nondisclosure and Non-Circumvention Agreement had the authority to bind Gaffney BPW, which Gaffney BPW disputes, their decision to restrict the disclosure of public information in a manner that conflicts with FOIA and to indefinitely prohibit the utility from providing utility services to and entering into other contractual relationships with Litchain's affiliates and other similar companies indefinitely was not fair,

reasonable, necessary, or advantageous to Gaffney BPW. As such, the contract is ultra vires, invalid, void, and wholly unenforceable.

80.     It is well-established that noncompete agreements must contain reasonable durational and geographic limits.

81.     The Nondisclosure and Non-Circumvention Agreement provides an indefinite and overly broad prohibition on Gaffney BPW's statutory duty to provide service to entities within its service territory and enter into other business relationships with them, so it is ultra vires, invalid, void, and unenforceable.

82.     Because it was not within the power of Gaffney BPW or the employees that signed the agreement to enter into the Nondisclosure and Non-Circumvention Agreement under any circumstances or for any purpose, it is ultra vires, invalid, void, and wholly unenforceable.

83.     The Nondisclosure and Non-Circumvention Agreement contains a clause allowing Litchain to recover attorney's fees in the event it is successful in the enforcement of a dispute arising under the agreement. For the reasons stated herein, the entire Nondisclosure and Non-Circumvention Agreement, including this clause, is ultra vires, invalid, void, and wholly unenforceable.

84.     The clause allowing Litchain to recover attorney's fees from Gaffney BPW, a governmental entity, is additionally ultra vires, invalid, void, and unenforceable because the clause violates public policy and the laws of the State of South Carolina.

85.     Gaffney BPW is entitled to a declaration of the rights, duties, and obligations of the parties as to the issues, controversies, and sums that are the subject of this Amended Counterclaim and Amended Crossclaim, including declarations relating to the Nondisclosure and Non-Circumvention Agreement that are consistent with the allegations set forth in this Count.

## COUNT V
## BREACH OF CONTRACT (GROUND LEASE)

### *(Litchain only)*

86.    Gaffney BPW restates each allegation set forth herein that is not inconsistent with this Count, including but not limited to those set forth in its Amended Answer, by reference as if fully realleged.

87.    Gaffney BPW and Litchain entered into a valid and binding Ground Lease dated September 23, 2021, that required Litchain to pay Gaffney BPW $3,000.00 per month for a period of five years, ending September 30, 2026, for the use of the premises located at 150 Hyatt Street for cryptocurrency mining.

88.    Gaffney BPW terminated this Ground Lease effective March 13, 2023, as a result of Litchain's failure to cure a two explicit breaches, the restoration of utility services to the premises so that cryptocurrency mining could continue and the provision of information relating to ISW Holdings Inc., which was necessary in order for Gaffney BPW to evaluate the purported sublease between Litchain and ISW Holdings, Inc (d/b/a Blockquarry) so that the required approval of the sublease could be given if appropriate.

89.    At the time Gaffney BPW terminated the ground lease, Litchain owed $12,718.64 in outstanding lease payments, less certain credits. These amounts are broken down as follows:

**Outstanding Months:**

| | | |
|---|---|---|
| Nov. 2022 | $3,000.00 | |
| Dec. 2022 | $3,000.00 | |
| Jan. 2023 | $3,000.00 | |
| Feb. 2023 | $3,000.00 | |
| Mar. 2023 | $1,100.00 | *pro-rated* |

**Fees:**

| | |
|---|---|
| NSF 3/20/23 | $30.00 |

| | |
|---|---|
| **Subtotal** | $13,130.00 |
| **Credits:** | |
| Transferred deposit (from separately leased office space) | $285.36 |
| Overpayment | $126.00 |
| **Total Due:** | $12,718.64 |

90.    Pursuant to the terms of the Ground Lease, Litchain owes Gaffney BPW the full amount of this unpaid balance. To date, the $12,718.64 balance remains unpaid, so Litchain is in continued breach of its lease agreement with Gaffney BPW.

91.    As a result of Litchain's continued breach of contract, Gaffney BPW is entitled to damages for said breach, including but not limited to the full unpaid balance plus interest and associated costs and expenses, and such other damages as this Court finds just.

92.    Gaffney BPW requests a jury trial as to the breach of contract claim in this action.

<u>**COUNT VI**</u>
<u>**BREACH OF CONTRACT (UTILITY AGREEMENT)**</u>

<u>*(Litchain only)*</u>

93.    Gaffney BPW restates each allegation set forth herein, including but not limited to those set forth in its Amended Answer, by reference as if fully realleged.

94.    Gaffney BPW and Litchain entered into a valid and binding Utility Agreement dated September 8, 2021.

95.    Litchain quit making monthly utility payments on or about January 5, 2023. At that time, Litchain owed a balance of $84,527.11, so Gaffney BPW suspended electrical service to 150 Hyatt Street on January 9, 2023.

96.     On January 9, 2023, Gaffney BPW sent Litchain a Notice of Breach Letter indicating that for electrical service to be restored, it would need to pay its outstanding balance, all accrued penalties, and an additional customer deposit of $435,882.00 within sixty days.

97.     Litchain failed to comply with the terms of the Notice of Breach Letter, so after the passage of sixty days, Litchain closed Gaffney BPW's electrical utility account.

98.     Pursuant to the terms of the Utility Agreement, which included a ratchet component that locked in costs and required payments over a specified time period or until a specified demand had been met, at the time Gaffney BPW closed Litchain's utility account, the following power bills remained outstanding: January and February bills and fees of $679,097.23; March bill and fees of $77,825.30; and April bill of $73,475.48.

99.     These amounts remain outstanding, so Litchain remains in breach of its Utility Agreement with Gaffney BPW.

100.     Per the terms of the Utility Agreement, these outstanding amounts must be deducted from the utility deposit paid by or on behalf of Litchain prior to the return of any outstanding amounts, as should any related fees and costs awarded as a result of Litchain's breach of the Utility Agreement.

101.     As a result of Litchain's continued breach of contract, Gaffney BPW is entitled to damages for said breach, including but not limited to the full unpaid balance plus interest and associated costs and expenses, and such other damages as this Court finds just.

102.     Gaffney BPW requests a jury trial as to the breach of contract claim in this action.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing Amended Counterclaim and Amended Crossclaim, in addition to the relief sought at the conclusion of its Amended Answer, Gaffney BPW respectfully demands the following relief:

1.      To the extent necessary, the issuance of process pursuant to 28 U.S.C. § 2361;

2.      An order pursuant to 28 U.S.C. § 2361 restraining Blockquarry and Litchain from instituting or prosecuting any proceeding in any State or United States court affecting the Deposit Refund and Cryptocurrency Mining Equipment, obligations, and/or issues involved in this interpleader action until further order of the Court;

3.      An order directing Blockquarry and Litchain to assert and litigate any claims to the Deposit Refund and Cryptocurrency Mining Equipment at issue in this action;

4.      An order that Gaffney BPW deposit the Deposit Refund into the registry of the Court;

5.      An order granting Gaffney BPW's request to interplead the Cryptocurrency Mining Equipment by physically depositing it into the Court, if possible;

6.      In the alternative, an order granting Gaffney BPW's request to interplead the Cryptocurrency Mining Equipment without making physical deposit, without paying an amount equal to the value of the equipment into the Court, and without posting a bond in an amount equal to the value of the Cryptocurrency Mining Equipment;

7.      An order requiring all parties claiming an interest in the Cryptocurrency Mining Equipment, including Blockquarry and Litchain, to obtain general liability insurance policies, or other applicable insurance, in an amount sufficient to cover the entire value of the property and to name Gaffney BPW as an additional insured under the policy;

8.    An order requiring all parties claiming an interest in the Cryptocurrency Mining Equipment, including Blockquarry and Litchain, to pay the costs of providing any electrical services needed to keep 150 Hyatt Street cooled to the temperature necessary to safely store the Cryptocurrency Mining Equipment pending final order or judgment regarding the equipment's distribution;

9.    An order determining the interests, claims, and/or demands of the Parties as to the sums, issues, and/or controversies presented by this Amended Crossclaim and Amended Counterclaim, including but not limited to the manner in which the Deposit Refund should be returned and the Cryptocurrency Mining Equipment should be distributed;

10.   An order declaring the rights and legal relations of the parties to these proceedings, including but not limited to those relating to the return of the Deposit Refund and distribution of the Cryptocurrency Mining Equipment;

11.   Following the interpleader and depositing of the Deposit Refund and Cryptocurrency Mining Equipment, to the extent possible, an order releasing and discharging Gaffney BPW from any and all liability to Blockquarry and Litchain pursuant to 28 U.S.C. § 1335, the Rules of Federal Procedure, and related laws;

12.   An order declaring the Nondisclosure and Non-Circumvention Agreement ultra vires, invalid, void, and wholly unenforceable;

13.   An order awarding Gaffney BPW reasonable attorney fees and costs to be paid from the Deposit Refund or, if insufficient, from the sale of the Cryptocurrency Mining Equipment;

14.   A jury trial as to the breach of contract claims against Litchain;

15.   An award of damages against Litchain as a result of its breach of the Ground Lease and Utility Agreement;

16. To the extent available, an order awarding reasonable costs and expenses in connection with the breach of contract claims;

17. Such further relief requested in this Amended Counterclaim and Amended Crossclaim; and

18. Such further relief as the Court deems equitable and just.


Respectfully submitted,

POPE FLYNN, LLC

May 23, 2023                    By:     s/ Virginia P. Bozeman
                                        Virginia P. Bozeman (Fed. Bar No. 13476)
                                        1411 Gervais Street
                                        Suite 300
                                        Columbia, SC 29201
                                        Phone: (803) 354-4947
                                        Fax: (803) 354-4899
                                        gbozeman@popeflynn.com

                                        **ATTORNEYS FOR GAFFNEY BPW**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies this Motion was served on Plaintiff, Blockquarry Corp. f/k/a ISW Holdings, Inc., on May 23, 2023, via the Court's electronic filing system and on Defendant, Litchain Corp., via U.S. Mail, postage prepaid, on May 24, 2023, at the below last known address:

Litchain Corp.
Attn: Tony Tate
118 1/2 Willis Plaza
Gaffney, SC 29340

/s/ Virginia P. Bozeman

48