# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Litchain Corp. and Gaffney Board of Public ) <br> Works, ) <br> ) <br>    Defendants. ) <br> _____ ) <br> ) <br> Gaffney Board of Public Works, ) <br> ) <br>    Defendant/Counter and ) <br>    Cross Claimant, ) <br> v. ) <br> ) <br> Blockquarry Corp. f/k/a ISW Holdings, Inc., ) <br> ) <br>    Counterclaim Defendant, ) <br> and ) <br> ) <br> Litchain Corp., ) <br> ) <br>    Crossclaim Defendant. ) <br> _____ ) | Civil Action No. 7:23-cv-01427-TMC <br><br> **RESPONSE OF DEFENDANT/ COUNTERCLAIMANT/ CROSS-CLAIMANT, GAFFNEY BOARD OF PUBLIC WORKS, TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

  Comes now Defendant/Counterclaimant/Crossclaimant, Gaffney Board of Public Works, South Carolina ("Gaffney BPW"), by and through undersigned counsel of record, and for its response to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction[1] ("Plaintiff's Motion for Preliminary Injunction") (ECF No. 7), states as follows:

---

[1] On April 12, 2023, this Court denied Plaintiff's *ex parte* Emergency Motion for Temporary Restraining Order. (ECF N. 9). Only the request for a preliminary injunction remains pending before the Court.

## INTRODUCTION

Plaintiff/Counterclaim Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry") seeks a preliminary injunction requiring the immediate return of the utility deposit allegedly paid by Blockquarry on behalf of Defendant/Crossclaim Defendant Litchain Corp. ("Litchain"), the return of cryptocurrency mining equipment, and an order enjoining Gaffney BPW from returning the requested utility deposit and cryptocurrency mining equipment to Litchain. (ECF No. 7). The request for a preliminary injunction requiring the immediate return of the utility deposit to Blockquarry should be denied because Blockquarry was not a party to the utility agreement pursuant to which the deposit was paid, so it is not likely to succeed on any claims against Gaffney BPW relating to the deposit's return. Moreover, Blockquarry will not suffer irreparable injury if the relief sought in its motion is not granted. Gaffney BPW has filed counter and crossclaims seeking to interplead the remaining utility deposit into the Court. (ECF No. 15, 23). In addition, as indicated in this Court's Text Order dated April 12, 2023 (ECF No. 9), if Blockquarry is successful in litigation, it has an adequate remedy of monetary damages available to it. For these reasons, Blockquarry's request for the immediate return of the utility deposit must be denied.

Blockquarry's request for an order enjoining Gaffney BPW from returning the utility deposit and cryptocurrency mining equipment should also be denied because, as indicated in Defendant/Counterclaimant/Crossclaimant Gaffney Board of Public Works' Amended Answer to Plaintiff's Complaint and Amended Counterclaim and Amended Crossclaim for Interpleader, Declaratory Judgment, and Breach of Contract ("Amended Answer, Amended Counterclaim, and Amended Crossclaim") (ECF No. 23), Gaffney BPW has no intention of returning any money or equipment to Litchain in the absence of a court order directing it to do so. (ECF No. 23).

Finally, Gaffney BPW has received inventory lists from Bitmain and BEEQB LLC,[2] third parties claiming an interest in the cryptocurrency mining servers and other equipment left on property owned by Gaffney BPW located at 150 Hyatt Street,[3] Gaffney, South Carolina (the "Premises"). (Affidavit of Donnie L. Hardin, ¶¶ 24-27). It has also received an inventory from Blockquarry. (Affidavit of Donnie L. Hardin, ¶¶ 28). These inventories are addressed within the Affidavit of Donnie L. Hardin, attached as Exhibit 1, and are exhibits to that affidavit. (Affidavit of Donnie L. Hardin, ¶¶ 24-29).

Gaffney BPW has also requested an equipment inventory from Litchain on multiple occasions. *See, e.g.,* Email Correspondence, dated March 24, 2023, May 18, 2023, and May 23, 2023, attached as Exhibit 2; *see also* Affidavit of Donnie L. Hardin, ¶ 30. In response, Litchain indicated it owns forty-one of the machines locked on the Premises but has not submitted an inventory identifying these machines by type and serial number. (Affidavit of Donnie L. Hardin, ¶ 30). If Litchain provides Gaffney BPW with the requested inventory at a later date, Gaffney BPW will promptly filed it with this Court.

Based solely on a review of equipment serial numbers in the provided inventory lists and without any visual inspection of the Premises or the assets located thereon by the claiming parties or Gaffney BPW, the inventories provided by Bitmain, BEEQB LLC, and Blockquarry do not contain any conflicting claims of ownership. Based solely on the number of machines Litchain claims to own in comparison to the volume of equipment claimed by Bitmain, BEEQB LLC, and Blockquarry, Gaffney BPW does not anticipate that Litchain asserts a conflicting claim either. To

---

[2] Based on the representations of counsel for BEEQB LLC, the company is owned by Maxim Eliseev, and their servers were used by Uptime, who is believed to be a customer of Blockquarry.

[3] This address has been misidentified in Blockquarry's Complaint and Motion for Preliminary Injunction as 154 Hyatt Street.

the extent there are no conflicting claims of equipment ownership, Gaffney BPW consents to a court order partially granting Blockquarry's request for a preliminary injunction relating to the disbursement of the cryptocurrency mining equipment to the owner listed in the corresponding inventory pending the final resolution of the claims before this Court.

In addition, counsel for Bitmain has indicated that the inventory submitted on behalf of his client was created during an audit conducted in December 2022. After that time, approximately eighty-seven servers owned by Bitmain were circulated onto the site. The company is not currently in possession of the serial numbers of those servers but could identify them in person. Gaffney BPW, therefore, also consents to an order that allows the parties to go onto the Premises in the presence of counsel for identification of these eighty-seven servers and, to the extent there are no competing claims, directs the distribution of those servers to Bitmain.

Again, based on the quantity of machines sought by Litchain, Gaffney BPW does not anticipate its claim conflicts with those asserted by Bitmain, BEEQB LLC, and Blockquarry. However, without an inventory individually identifying each machine that Litchain claims to own by type and serial number, a final determination cannot be made in that regard. Gaffney BPW will promptly submit any subsequently obtained inventories from Litchain to the Court and, to the extent necessary, supplement this Response. Should Litchain submit this requested itemized inventory and, upon review, the serial numbers do not conflict with the serial numbers of the machines to which Bitmain, BEEQB LLC, and Blockquarry assert ownership, Gaffney BPW consents to an order releasing the forty-one machines claimed by Litchain to it.

If Litchain has not provided the requested inventory by the time this Court rules on Plaintiff's Motion for Preliminary Injunction, Gaffney BPW avers Litchain's demand for the return of the forty-one machines left on the Premises will have been abandoned, so a consent order

releasing the equipment in a manner that complies with the itemized inventories submitted by Bitmain, BEEQB LLC, and Blockquarry and the visual inspection of Bitmain will be appropriate.

In the alternative, Gaffney BPW consents to an order that requires Litchain to go onto the Premises in the presence of counsel at the same time Bitmain identifies the aforementioned eighty-seven servers for the purpose of identifying the forty-one machines over which it claims ownership. To the extent there are no competing claims to these forty-one machines on visual inspection, Gaffney BPW consents to an order directing the distribution of those machines to Litchain. Should Litchain fail to send a representative to the onsite inspection, Gaffney BPW avers it will have abandoned any outstanding claims for the return of cryptocurrency mining equipment locked on the Premises, so the distribution of the equipment in a manner that complies with the inventories provided by Blockquarry, Bitmain, BEEQB LLC and the visual inspection of Bitmain would be appropriate.

Should this Court determine there are competing claims for the ownership of the cryptocurrency mining equipment at issue, Gaffney BPW seeks interpleader via its amended crossclaim and amended counterclaim. (ECF No. 23). Ideally, the cryptocurrency mining equipment to which there are competing claims should be physically deposited into the Court, as it would be too cumbersome for Gaffney BPW to pay a surety bond or other monetary amount equal to the value of the cryptocurrency mining equipment when it does not make an independent claim of entitlement to it. In the event that is not possible due to the size and volume of the equipment, Gaffney BPW alternatively asks this Court to order the parties claiming competing ownership interests to adequately insure the equipment and provide Gaffney BPW with a certificate of insurance that identifies the equipment covered, specifies the associated coverage limits, and names Gaffney BPW as an additional insured. In addition, if the equipment to which

5

there are competing claims needs to be stored at a specific temperature in order for it to remain operable once distributed and put back into use, Gaffney BPW asks that the Court require the parties making competing claims for the return of the equipment to pay for the electricity needed to regulate the temperature of the Premises. These requests are consistent with the relief sought in Gaffney BPW's amended counterclaim and amended crossclaim for interpleader and declaratory judgment and will be additionally addressed in a motion to deposit to be filed by Gaffney BPW at a later date. (ECF No. 23).

## STATEMENT OF FACTS

As set forth within and supported by the exhibits to Gaffney BPW's Amended Answer, Amended Counterclaim, and Amended Crossclaim, on September 23, 2021, Litchain entered into a ground lease with Gaffney BPW for the purpose of operating a cryptocurrency mining operation on the Premises. (ECF No. 23-2). This ground lease included a provision requiring all subleases to be approved by Gaffney BPW. *Id*. Litchain never provided Gaffney BPW with a sublease for approval, and Gaffney BPW never approved a sublease of the Premises, including the purported sublease with Blockquarry. (Affidavit of Donnie L. Hardin, ¶ 9)

Around the same time, Litchain opened an account with Gaffney BPW for the provision of electrical power services to the Premises and entered into a "Special Agreement for Electric Utility Service to Litchain Corporation between Litchain and Gaffney BPW" (the "Utility Agreement"). (*See* Utility Agreement, attached as Exhibit 3). The Utility Agreement required the payment of a deposit equal to Litchain's expected two highest month's utility bill average. *Id*. Blockquarry was not a party to the Utility Agreement, there is no reference to Blockquarry or ISW Holdings, Inc. in the Utility Agreement, and the Utility Agreement was not assignable. (Affidavit of Donnie L. Hardin, ¶ 3).

Ultimately, the deposit paid pursuant to the Utility Agreement totaled $1,387,895.20. (Affidavit of Donnie L. Hardin, ¶ 5). This deposit is believed to have been paid on behalf of Litchain by ISW Holdings, Inc., Alonzo Pierce, Bit5ive, Uptime Armory, and Uptime Hostings over the course of several payments from November 2021 to April 2022. (Affidavit of Donnie L. Hardin, ¶ 6). Gaffney BPW has no knowledge of the terms of an agreement, if any, between these third parties and Litchain, and Gaffney BPW did not and does not have an agreement for utility services or any other agreements with these third parties. (Affidavit of Donnie L. Hardin, ¶ 6).

Litchain ultimately defaulted on its Utility Agreement with Gaffney BPW and breached the terms of its ground lease by failing to maintain electrical service to the Premises and entering into an unapproved sublease of the Premises. (Affidavit of Donnie L. Hardin, ¶ 10). In response, Gaffney BPW suspended electrical services to the Premises and provided written notice of the breach to Litchain. (Affidavit of Donnie L. Hardin, ¶ 11). After Litchain failed to cure its default and reinstate utility services within the requisite period of time, Gaffney BPW terminated the ground lease and closed the utility account. (Affidavit of Donnie L. Hardin, ¶ 12). Following the closure of Litchain's account, the following power bills remained outstanding: January and February bills and fees of $679,097.23; March bill and fees of $77,825.30; and April bill of $73,475.48. (Affidavit of Donnie L. Hardin, ¶ 13).

In addition, in the event of early termination of the Utility Agreement, Litchain was to reimburse Gaffney BPW for the cost of the materials acquired for Litchain to start service, including the cost of regulators, conductor, and metering equipment. (Affidavit of Donnie L. Hardin, ¶ 14). This agreement was confirmed in a letter sent to Litchain on November 1, 2021. (Affidavit of Donnie L. Hardin, ¶ 15; *see also* ECF No. 15-6). Due to the early termination of the Utility Agreement, Litchain owes the utility $117,319.00 for the expenses incurred when preparing

to deliver service to the site, which costs are broken down as follows: $64,296.00 for 400 regulators; $20,638.00 for regulator bypass switches, $6,032.00 for a concrete pad; $22,249.00 for primary meter & .556 wire; and $4,104 for site lighting. (Affidavit of Donnie L. Hardin, ¶ 16). These amounts are also outstanding. *Id*.

A deposit balance of $440,178.19 remains after all outstanding obligations relating to the provisions of electric utility services have been paid, including the material costs described in the foregoing paragraph. (Affidavit of Donnie L. Hardin, ¶ 17). Gaffney BPW is ready and willing to return this outstanding deposit balance, and any other amounts awarded by this Court, following the conclusion of this litigation. In the meantime, it has sought to interplead the outstanding deposit balance of $440,178.19 into the Court for safekeeping.

In addition to the amounts owed under the Utility Agreement, Gaffney BPW currently owes unpaid rent to Gaffney BPW in the amount of $12,718.64. (Affidavit of Donnie L. Hardin, ¶ 19). This amount will not be withheld from the remaining utility deposit to be paid into the Court via interpleader. However, Gaffney BPW has sought the recovery of this amount in its Amended Answer, Amended Counterclaim, and Amended Crossclaim and asks that it be withheld from the deposit refund and repaid to Gaffney BPW at the time of disbursement. (ECF No. 23).

Following the termination of the ground lease, Gaffney BPW padlocked the Premises to keep it secure. (Affidavit of Donnie Hardin, ¶ 21). It has since received demands for the return of the equipment left onsite from Litchain, Blockquarry, Bitmain, and BEEQB LLC. (Affidavit of Donnie L. Hardin, ¶ 22). Due to the potentially competing demands for the return of the equipment, Gaffney BPW asserted amended counter and crossclaims for declaratory judgment and interpleader that seek relief consistent with the relief sought herein. (ECF No. 23). These amended counter and crossclaims remain outstanding. *Id*.

The Declaration of Alonzo Peirce, filed by Blockquarry in support of its Motion for Temporary Restraining Order and Preliminary Injunction, asserts over 5,000 Bitcoin mining servers owned by clients of Blockquarry are locked on the Premises. (ECF No. 7-2, ¶¶ 25-26). This appears to be consistent with the inventory listings submitted by third parties Bitmain and BEEQB LLC, which show Bitmain owns approximately 4,513 servers that remain onsite, and BEEQB LLC owns approximately 448. (Affidavit of Donnie L. Hardin, ¶¶ 25, 27). Blockquarry has additionally asserted it owns 560 servers, twenty server pods, and ten transformers, all padlocked on the Premises. (Affidavit of Donnie L. Hardin, ¶¶ 28, 29). Litchain claims to own forty-one machines that it believes to be onsite. (Affidavit of Donnie L. Hardin, ¶ 30). To date, none of the equipment serial numbers provided have overlapped, but Bitmain and Litchain are both currently seeking the return of equipment for which serial numbers have not been provided.

Again, to the extent the equipment claims addressed in the Affidavit of Donnie L. Hardin are consistent with one another and no outstanding competing are timely asserted, Gaffney BPW consents to an order partially granting Plaintiff's Motion for Preliminary Injunction that directs the return of this equipment in a manner that is consistent with these inventories. To the extent there are no competing claims for them, Gaffney BPW additionally consents to the release of the unidentified servers belonging to Bitmain following a supervised, visual inspection to occur at a mutually convenient time on the Premises. The same is true for the vaguely identified machines over which Litchain asserts ownership. Should Litchain submit an inventory identifying these machines by serial number or, per order of this Court, identify these machines during the supervised, visual inspection requested by Bitmain, to the extent there are no competing claims to these machines, Gaffney BPW consents to their release to Litchain. Any conflicting claims for the return of the equipment and other personal property currently locked on the Premises should then

9

be interplead in a manner that complies with the pertinent law, the amended counterclaim and amended crossclaim, the requests asserted in this response, and the motion to deposit interpleader to be field by Gaffney BPW at a later date.

## **LAW AND ARGUMENT**

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)) (internal quotation marks omitted). The decision to grant a motion for preliminary injunction is within the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007). Courts may only grant a preliminary injunction if the following four elements are established: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in the plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court may only consider whether the balance of equities tip in the plaintiff's favor if the plaintiff has made a clear showing of the first two elements. *Id.* at 20-23. Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Id.* at 24.

Here, Blockquarry seeks a declaratory judgment against Gaffney BPW affirming the utility deposit and cryptocurrency mining equipment left on the Premises belong to Blockquarry and injunctive relief directing the return of the deposit and enjoining Gaffney BPW from returning the deposit to Litchain. (ECF No. 1, Count 1). The Utility Agreement pursuant to which the deposit was paid was between Gaffney BPW and Litchain only. Blockquarry was not a party to the Utility

Agreement, the Utility Agreement was not assignable, and Blockquarry did not have a separate agreement with Gaffney BPW under which it would be entitled to the return of the utility deposit. Moreover, Gaffney BPW has made it clear that it has no intention of returning the deposit to Litchain absent an order of this Court directing such disbursement and has asked to deposit the remaining deposit amount into the Court pending the resolution of this litigation. As such, Blockquarry has not and cannot make a clear showing that it is likely to prevail on its claim against Gaffney BPW relating to the return of the utility deposit.

Likewise, the ground lease was between Gaffney BPW and Litchain only. Any and all subleases had to be approved in writing by Gaffney BPW. Litchain never submitted a sublease to Gaffney BPW for approval, and Gaffney BPW never approved a sublease, including the purported sublease between Litchain and Blockquarry. Because Gaffney BPW's ground tenant was Litchain, not Blockquarry, Blockquarry also has not and cannot make a clear showing that it is likely to prevail on its claim against Gaffney BPW relating to the return of the equipment.

In the event Blockquarry does prevail on its claims against Gaffney BPW, an award of monetary damages against the utility is sufficient to make Blockquarry whole. *See Hughes Network Systems, Inc. v. InterDigital Communications Corp*., 17 F.3d 691 (4th Cir. 1994) (noting that injunctive relief is not appropriate where the award of monetary damages at judgment will remedy the harm suffered). In addition, Gaffney BPW has sought to interplead the outstanding utility deposit into the Court, consented to an order partially granting Blockquarry's Motion for Preliminary Injunction that directs the return of the cryptocurrency mining equipment to the extent there are no competing claims, and asked to interplead the cryptocurrency mining equipment to which there are competing claims. Blockquarry, therefore, has not and cannot clearly show it is likely to suffer irreparable harm in the absence of preliminary relief. Without a clear showing of

the first two elements of the four-part test required to prevail on a claim for preliminary injunction, there is no need to address the final two elements.

## CONCLUSION

For the reasons set forth above, Gaffney BPW asks this Court to deny Blockquarry's Motion for Preliminary Injunction as it relates to the return of the utility deposit and consents to an order partially granting Plaintiff's Motion for Preliminary Injunction that directs the distribution of the equipment to the owners that have asserted noncompeting claims. To the extent there are competing claims for the same equipment, Gaffney BPW asks that Plaintiff's Motion for Preliminary Injunction be denied and that the Court instead grant Gaffney BPW's request for interpleader and either accept the deposit of the cryptocurrency mining equipment to which there are competing claims into the Court or require the parties asserting competing claims to adequately insure the equipment for the duration of this litigation and, if necessary, pay for the electricity needed to keep the Premises at a temperature that is appropriate for the storage of the cryptocurrency mining equipment for the duration of this litigation.

Respectfully submitted,

POPE FLYNN, LLC

May 24, 2023     By:    s/ Virginia P. Bozeman
                        Virginia P. Bozeman (Fed. Bar No. 13476)
                        Lawrence E. Flynn III (Fed. Bar No. 14000)
                        1411 Gervais Street, Suite 300
                        Columbia, SC 29201
                        Phone: (803) 354-4900
                        Fax: (803) 354-4899
                        gbozeman@popeflynn.com
                        lflynn@popeflynn.com

                        **ATTORNEYS FOR GAFFNEY BPW**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies this Response was served on Plaintiff, Blockquarry Corp. f/k/a ISW Holdings, Inc., on May 24, 2023, via the Court's electronic filing system and on Defendant, Litchain Corp., electronically to litchaincorp@gmail.com and via U.S. Mail, postage prepaid, the same date, at the below last known address:

>Litchain Corp.
>Attn: Tony Tate
>118 1/2 Willis Plaza
>Gaffney, SC 29340

/s/ Virginia P. Bozeman