IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Litchain Corp. and Gaffney Board of Public Works,<br><br>    Defendants.<br><hr>Gaffney Board of Public Works,<br><br>    Counter-/Cross-Claimant,<br><br>v.<br><br>Blockquarry Corp. f/k/a ISW Holdings, Inc., Counterclaim Defendant, and Litchain Corp., Crossclaim Defendant. | C/A No.: 7:23-cv-01427-TMC<br><br><br><br><br><br>**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>*(Hearing Requested)* |

    Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Plaintiff" or "Blockquarry"), by and through its undersigned counsel, hereby replies in support of its Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). (ECF No. 7.)

**BOTTOM LINE UPFRONT**

    The Court should grant the Motion.  Defendant Gaffney Board of Public Works (the "Utility") consents to two of the primary forms of relief sought by Plaintiff: 1) the Deposit should be held by the Court for safekeeping during the duration of this litigation; and 2) the Utility should return Plaintiff's personal property, namely, its Bitcoin mining pods, included servers, and transformers, at 150 Hyatt Street, Gaffney, South Carolina (the "Premises").  Although the Utility is incorrect as a matter of law as to the amount that must be deposited with the Court, as explained

below, the active parties[1] in this litigation align in large part on Plaintiff's Motion, and, thus, it should be granted, at least in part.

## BACKGROUND // POSTURE

A.  **Explanation of Events Spanning January and April 2023**

On April 7, 2023, Blockquarry filed a complaint seeking declaratory relief as to the Utility, relative the Utility's unlawful retention of Blockquarry's personal property and cash and for declaratory relief and damages against Litchain Corp. ("Defendant" or "Litchain"). (ECF No. 1, "Complaint.") At the same time, Blockquarry filed the Motion, seeking to enjoin the Utility from distributing the personal property and cash to anyone other than Blockquarry.

On April 7, 2023, the Court entered a text order denying the Motion, in part, finding, "Plaintiff . . . failed to meet the requisite showing that immediate and irreparable harm will result absent a temporary restraining order being issued without notice to the Defendants." (ECF No. 9.) The ruling was grounded, in part, on a finding of "delay between Plaintiff's notice of the facts that underly Plaintiff's claims and the filing of [the Motion] . . . . " (*Id.*) For the Court's edification and understanding, Blockquarry takes this opportunity to explain its reasoning for not acting until April 7, 2023.

Blockquarry began diligently attempting to resolve this case *without* the need for Court intervention immediately following stoppage of electrical service. (*See, generally,* ECF No. 7-2 at ¶ 32, "Pierce Aff.") Blockquarry retained Fox Rothschild, LLP for representation on or about

---

[1] Neither Plaintiff nor the Utility have been able to perfect service on Litchain, despite their respective reasonably diligent efforts. On information and belief, Litchain's principal, also its registered agent, is actively attempting to evade service, (*see* Status Report, ECF No. 27), despite Plaintiff's and the Utility's counsel's efforts to communicate with him. (*See id.*; ECF No. 24-5.) Plaintiff plans and reserves the right to move shortly for an order under S.C. Code Ann. § 15-9-210(c). *See also* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

January 10, 2023.  On January 16, 2023, the undersigned spoke with Defendant's principal, Tony Tate, directly, regarding the purported sublease and the deposit ("Deposit") and electricity payments made by Blockquarry.  On January 20, 2023, the undersigned spoke with purported counsel for Defendant and followed the call with an email requesting documentation relative to any agreements Defendant maintained with the Utility and further requesting that Litchain permit the Utility to speak to Blockquarry.  At that time, the Utility refused to communicate verbally with Blockquarry and provide Blockquarry documentation, presumably, because of the 'Nondisclosure and Non-Circumvention Agreement' ("NDA") described in paragraph 11 of the Utility's counterclaim and crossclaim.  (ECF No. 23; NDA attached as ECF No. 23-1.)  On February 3, 2023, Blockquarry delivered a settlement offer to Litchain, care of its purported counsel.  No response was ever received from *any* email delivered to Defendant's purported counsel.  On February 9, 2023, Blockquarry delivered the same settlement offer to Defendant, care of Defendant's counsel that filed the Eviction Action described in paragraph 62 of Blockquarry's Complaint.  No response was ever received from *any* communication delivered to Defendant's eviction counsel.

Further, Blockquarry's President, Alonzo Pierce, flew to South Carolina from Texas—at Blockquarry's insistence—for a meeting with the Utility in Gaffney, South Carolina that occurred on February 16, 2023.  (Pierce Aff. ¶¶ 1, 33.)  Mr. Pierce, Blockquarry's counsel, and Blockquarry's contractor attended the meeting, along with the Utility's executives, commercial account representatives, and counsel.  (*Id.*)  By agreement of counsel, the meeting was covered by and subject to Rule 408, South Carolina Rules of Evidence and Federal Rules of Evidence [Compromise and Offers to Compromise].

Following the February 16, 2023 meeting, Blockquarry and the Utility's counsel attempted to settle this matter by way of a new transaction. The transaction contemplated Blockquarry would enter into a new lease and electrical service agreement with the Utility, and Blockquarry would enter into an indemnity agreement, indemnifying the Utility from claims arising from the NDA, if any. The proposed indemnity agreement required that Blockquarry file the instant action for declaratory relief and interpleader, to settle the purported uncertain ownership of Blockquarry's Deposit—a position Blockquarry has always disputed.

Between February 7 and April 19, the undersigned delivered more than (30) emails to counsel for the Utility relative to these matters. During the same period, counsel for the Utility delivered (40) emails to the undersigned. Despite this intense effort, the new transaction was not consummated. Blockquarry was caught off guard—to say the least—when, *the Utility* indicated in an email on April 5, 2023 that injunctive relief would be necessary to prevent the Utility's return of the Deposit to Litchain, despite having previously agreed—in principle—to interplead the Deposit. Evidence in the instant case will bear out the Utility is far from the "mere innocent stakeholder" it claims to be in its pleading. (ECF No. 23, ¶ 39 p. 33 and ¶ 50 p. 35.)

**B.     Explanation of Events Following the Court's Text Order**

Plaintiff and the Utility have continued to work towards resolving their dispute, and, notably, the Utility represents that it no longer plans to unilaterally disburse the Deposit to Litchain. (*Compare* Pierce Aff. ¶ 30, *with* ECF No. 26 at 2.) At the Utility's request, Plaintiff submitted an inventory of the personal property held on the premises. So, too, have Plaintiff's clients, whose positions were well-considered in Plaintiff's Motion, (*see* ECF No. 7 at 7), and have since that Motion seen fit to independently petition the Utility, (*see* ECF No. 26, Attach. 1, ¶ 22 "Hardin Aff."). Finally, upon information and belief, Litchain has submitted its own (questionable

4

and, so far, unsupported) claims to servers on the Premises that do not overlap or conflict with any other claimants. (Hardin Aff. ¶¶ 23-30 & Exs. 1-3.)

In sum, the parties have endeavored to a resolution without the Court and to come to a consent where possible. However, several issues detailed below still necessitate the Court's intervention.

**ARGUMENT**

**I.     The Utility's Interpleader Action Supports Grant of Plaintiff's Motion**

As noted, the Utility consents to placing at least a portion of the Deposit Plaintiff made with it in the Court's care and to returning Plaintiff's personal property held at the Premises. (*Compare* ECF No. 7 at 1 (requesting the Court "[o]rder[] . . . the deposit of the [Deposit] with the Court for safeguarding during the pendency of this action" and order "the Utility to immediately return to Blockquarry . . . the personal property on the Premises, including Bitcoin mining pods," accompanying cryptocurrency mining servers, and transformers), *with* ECF No. 26 at 4, 8 (explaining that the Utility is willing to interplead the Deposit "into the Court for safekeeping" and that the Utility "consents to a court order partially granting Blockquarry's request for a preliminary injunction relating to the disbursement of the cryptocurrency mining equipment to the owner listed in the corresponding inventory pending the final resolution of the claims before this Court"), *and* Hardin Aff. ¶¶ 29, 31 (noting the Utility's consent to Plaintiff recovering the ten transformers on the Premises).)

Although the Utility incorrectly seeks to interplead[2] and deposit only a portion of the Deposit, the parties' most recently represented positions (since the Court's April 12, 2023 Order)

---

[2] Plaintiff reserves the right and plans to file a motion or responsive pleading to the Utility's counterclaims at the appropriate time. (*See* ECF No. 22.)

make clear the merits of Plaintiff's Motion: a partial grant, at least, is clearly warranted. The Court should preserve the status quo by holding the disputed $1,387,895.20 during the pendency of this action, and it should order return of Plaintiff's personal property, to which none dispute its rights. (ECF No. 26 at 9; Hardin Aff. ¶ 30.)

Turning to the primary point of contention raised by the Utility's Response, submission of the Deposit by the Utility to the Court is proper. However, the law requires the *entirety* of the disputed amount be given into the Court, even on a claim for interpleader. Interpleader does not provide the Utility the ability to unilaterally resolve its own disputed claims to the amount in controversy. Instead, that amount, too, must be placed in the Court's care, and the Utility's claim to such be resolved by the Court.

Rule 22 of the Federal Rules of Civil Procedure (rule interpleader) and 28 U.S.C. § 1335 (statutory interpleader) provide independent but related and similar avenues to bring parties before a federal court to resolve their competing claims to monies or property held by an uninterested stakeholder. *See AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 244 (4th Cir. 2021). Similarly, each type of interpleader allows for claims "in the nature of interpleader, in which the 'plaintiff' claims an interest in all or part of the corpus." *Id.* at 245-46. It is not clear exactly what mechanism the Utility seeks to invoke for its purported strict interpleader claims and claims in the nature of interpleader in relation to the Deposit. (*Compare, e.g.*, ECF No. 23 at 26 (invoking both rule and statutory interpleader equally), *with id.* at 34 (invoking rule interpleader and alternative statutory interpleader)).

Under either method, a stakeholder may not make its own deductions from a disputed amount prior to depositing it with the court. 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1716 (3d ed.) ("The fact that plaintiff asserts a right to

6

part of the fund or property, or desires to advance a setoff, or disputes some elements of one or more of the claims does not vitiate th[e] requirement [to deposit an amount equal to the largest claim] or justify the stakeholder making deductions from the deposit."), Westlaw (database updated Apr. 2023); *see, e.g.*, *Am. Gen. Life Ins. Co. v. Shamberger*, 588 F. Supp. 3d 671, 675 (M.D.N.C. 2022) ("The Fourth Circuit has not considered whether a [stakeholder's] payment of an amount less than that claimed by a defendant is sufficient under § 1335, but other circuits have. 'As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants.'" (quoting *Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961)).[3] Instead, the general rule is that "[t]he stakeholder invoking interpleader must deposit *the largest amount* for which it may be liable in view of the subject matter of the controversy." *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999) (Alito, J.); *accord In re Sinking of M/V Ukola*, 806 F.2d 1, 5 (1st Cir. 1986) ("A court may not assert jurisdiction over an interpleader action where the money, property or bond could not suffice to pay the largest amount in controversy."); *Miller & Miller Auctioneers, Inc. v. G. W. Murphy Indus., Inc.*, 472 F.2d 893, 895 (10th Cir. 1973).

The Utility improperly seeks to deposit only $440,178.19. (ECF No. 23 at 32.) However, per its own admissions, it recognizes that the Deposit paid was $1,387,895.20, (ECF No. 23 at 30;

---

[3] Under § 1335, the deposit of the disputed amount is a prerequisite of invocation of jurisdiction under § 1335. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (explaining that § 1335 "condition[s] jurisdiction in part upon whether 'the plaintiff has deposited such money or property' at issue with the district court" (quoting 28 U.S.C. § 1335(a))). Even though under Rule 22 a deposit is not strictly required, the Utility seeks to deposit the disputed fund into the Court's registry and the common practice is that the entirety of the disputed amount be deposited. *See, e.g.*, *Metro. Life Ins. Co. v. Vines*, No. CIV. WDQ-10-2809, 2011 WL 2133340, at *2 & n.5 (D. Md. May 25, 2011).

ECF No. 26 at 7 (citing Hardin Aff. ¶ 5)), and that Plaintiff and Litchain each have made claims relating to the entire $1,387,895.20. (ECF No. 23 at 32, 34; Pierce Aff. ¶ 31 & Ex. E (demonstrating Litchain's belief as to its ostensible claim to the Deposit); *see also* ECF No. 1 ¶¶ 25, 59, 102.) *See, generally*, *AmGuard*, 999 F.3d at 245 ("Both rule interpleader and statutory interpleader . . . may be invoked not only when claimants have already made a claim to the stakeholder's property but also when the claimants *may make* such a claim in the future."). The Utility arrives at the $440,178.19 figure by unilaterally claiming deductions from the Deposit pursuant to its claims against that amount as "obligations relating to the provisions of electric utility services[.]" (ECF No. 23 at 32.) Yet, the law explicitly rejects this practice. 7 Wright, Miller & Kane, *supra*, § 1716; *see also Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 194 (4th Cir. 2015) ("It is not for the district court, in determining whether interpleader is proper, to consider whether the competing claims are meritorious").

If the Utility wishes to rely on the benefits of interpleader, it should be required to place *the entirety* of the amount of the disputed Deposit with the Court and have its claims, which in reality are in the nature of interpleader rather than strict interpleader,[4] adjudicated in the second stage of this litigation like all other claimants to the Deposit, *see Protective Life Ins. Co. v. LeClaire*, No. 7:17-CV-00628-AMQ, 2018 WL 3222796, at *3 (D.S.C. July 2, 2018) (explaining that interpleader litigation proceeds in two stages: 1) "the Court must determine if interpleader is proper and will direct that funds plus interest be deposited with the Clerk" and 2) "[t]he court determines the respective rights of the claimants to the fund or property at stake via normal

---

[4] Implicitly, the Utility seems to recognize this possibility, given its claim "in the nature of interpleader (Deposit Refund)" premised on "Blockquarry and/or Litchain contest[ing] the amounts withheld from the $1,387,895.20," though its Response to the instant Motion only discusses a deposit into the Court's registry in the lesser amount of $440,178.19. (*See, e.g.*, ECF No. 26 at 8.)

8

litigation processes" (quotation omitted)); *Sims v. Sims*, No. 4:15-CV-01649-RBH, 2019 WL 5719436, at *2 (D.S.C. Nov. 5, 2019) (same).

As to Plaintiff's requested relief that its personal property be returned to it, its understanding that the Utility consents to such is reflected accurately in the Utility's Response. However, Plaintiff would request that, to the extent the Court does not order return of the identified servers, (*see* Hardin Aff. Ex. 3; Pierce Aff. ¶ 26), and transformers on the premises, (*see* Hardin Aff. ¶¶ 29, 31 (noting the Utility's consent to Plaintiff recovering this personal property as well)), the Utility be required to post an appropriate bond, as required under § 1335's explicit language and as permitted by Rule 67(a), guided by the Court's discretion, *see e.g.*, *N. Am. Co. for Life & Health Ins. v. Jones*, No. 0:21-CV-4094-CMC-SVH, 2022 WL 4389288, at *2 (D.S.C. Aug. 24, 2022), *report and recommendation adopted*, 2022 WL 4387488 (D.S.C. Sept. 22, 2022).

Further, Plaintiff opposes the Utility's request that the Court order the parties *and nonparties* to obtain insurance for the personal property on the premises and/or the Court order that the claimants provide certificates of insurance naming the Utility as an additional insured. (*See* ECF No. 26 at 5, 12.) By unilaterally impounding the personal property on the Premises, (*see, e.g.*, Pierce Aff. ¶ 24), the Utility has unequivocally assumed the risk of loss associated with that property. And there is no indication in the record that the Utility ever required Litchain to certify the Premises was insured, pursuant to its ground lease, belying the Utility's demand of such now by nonparties to that contract. (*See* ECF No. 23-2 at 1). The Utility fails to identify any legal basis for such a grant of alternative relief, and, for that reason and the others noted, it should be denied.

## II.     The *Winter* Elements Support Grant of Plaintiff's Motion

Moreover, Plaintiff has demonstrated the four elements necessary for the Court to grant its motion for preliminary injunction.[5] The Court's April 12, 2023, Order does not merit a different conclusion where it 1) held only that Plaintiff had not demonstrated "immediate and irreparable harm will result *absent a temporary restraining order being issued without notice to the Defendants, pending a hearing on the motion for preliminary injunction*," (ECF No. 9 (emphasis added)), and 2) the Court's conclusions on any *Winter* element are not set in stone as proceeding progress. *Cf. Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *e.g.*, *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, No. 92 CIV. 3194 (RLC), 1993 WL 212675, at *4 n.7 (S.D.N.Y. June 14, 1993). Thus, even to the extent the Utility does not consent to Plaintiff's Motion, it should be granted.

### A.     Plaintiff Is Likely to Succeed on At Least One Claim

The Utility is simply incorrect in its assertion that Plaintiff cannot demonstrate its likelihood of success on the merits of its claims dependent on its right to the Deposit. The Deposit was not made "on behalf of Litchain" and contained no indication of such. This was later confirmed by the repeated payments for utility services and rent *accepted by the Utility* that made no reference to Litchain. (*See e.g.*, Pierce Aff. ¶ 17 & Ex. E. (showing checks from Mr. Pierce, ISW Holdings, and Blockquarry to the Utility without any reference to Litchain).) Any feasibly remaining ambiguity was eliminated by the Utility's multiple conversations with Plaintiff's president, Mr. Pierce. (*See, e.g.*, Pierce Aff. ¶ 18 ("I personally spoke to the Utility's clerks several times via telephone to discuss payments.").)

---

[5] Given that Litchain has not yet responded to Plaintiff's Motion, Plaintiff reserves the right to reply in support of its Motion's prayers for relief relating to Plaintiff's claims against Litchain. Accordingly, any discussion of those claims is omitted here, and it is reserved.

The Utility repeatedly and affirmatively acted in such a way that Plaintiff reasonably believed that the Utility understood that the Deposit had been made on Plaintiff's behalf.  The Utility knew and understood that the pertinent stakeholder in the cryptomining operation on the Premises was Plaintiff, and any claim otherwise is post-hoc attempt to pave an easy exit from this litigation.  The Utility is and should be estopped from assertions contrary to the fact that Plaintiff was its de facto customer for utilities provided to the Premises.  *Campbell, Inc. v. N. Ins. Co. of New York*, 337 F. Supp. 2d 764, 770 (D.S.C. 2004) ("The essential elements of . . . equitable estoppel . . . are: (1) conduct . . . at the least, which is calculated to convey the impression that the facts are other than, and inconsistent with, those that the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts." (quoting *S. Dev. Land & Golf Co., Ltd. v. S.C. Pub. Serv. Author.*, 311 S.C. 29, 33, 426 S.E.2d 748, 751 (1993))); *accord Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 375 (4th Cir. 2005).

Finally, the Utility has *not* here or to Plaintiff *ever* cited any law, regulation, practice, policy, tariff, or other legal authority supporting its position that the Deposit must be given to Litchain, which the Utility admits *never* paid any sum to the Utility until after the Utility had already terminated Litchain's ground lease and ended utility services to the Premises.  (*See* ECF No. 23 ¶ 24 p.31.)  In contrast, as already noted, the Utility received multiple payments by Plaintiff.  (*See, e.g.*, Pierce Aff., Ex. E.)

In sum, Plaintiff is likely to succeed on the merits of, at least, its declaratory judgment claim with regard to the Deposit funds and personal property against the Utility because the Utility cannot show any valid legal right to those funds in full or that property (and, in fact, disclaims a right to the entirety of either).  *See also Roe v. Dep't of Def.*, 947 F.3d 207, 224 (4th Cir. 2020)

(explaining that a preliminary injunction may be granted "where the plaintiffs [a]re likely to succeed on one claim" (citing *League of Women Voters v. North Carolina*, 769 F.3d 224, 237-38 (4th Cir. 2014))). On the other hand, equity demands recognition of Plaintiff's legal right to the Deposit funds: Plaintiff and its associates funded the Deposit, which allowed utility services to be provided for Plaintiff's benefit, on property for which Plaintiff was paying rent.

### B.     Failure to Grant Plaintiff's Motion Will Result in Irreparable Harm

Plaintiff need only demonstrate that irreparable harm "is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis added). Irreparable harm may arise where money damages will become practically "unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). Additionally, loss of customer goodwill and damage to a movant's reputation with its clients may constitute irreparable and incalculable harm. *Cf. Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir. 1981) ("[T]he continuation of [movant's] present predicament endangers its relations with customers and investors, the good will built up by a heretofore successful enterprise; such damage is incalculable not incalculably great or small, just incalculable." (quotation omitted)); *accord Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008).

Accepting the Court's initial, nonbinding determination regarding whether Plaintiff had preliminarily shown the likelihood of irreparable harm, the record before the Court demonstrates the likelihood of irreparable harm now if the Deposit and Plaintiff's personal property, which does not include or impact Defendant Litchain's ambiguously claimed servers, are not returned to it or held under the Court's supervision during the pendency of this litigation. Plaintiff has a reasonable

basis to believe money damages will likely be unavailable from Litchain, which has previously engaged in fraudulent and self-serving conduct and is financially fraught. (*See, e.g.*, Pierce Aff. ¶¶ 21-22 (describing Litchain and its principal's deceptive conduct); ECF No. 23, ¶ 24 p. 31 (describing the Utility's experience with Litchain's attempted payment of a mere $413.15 being returned for insufficient funds); Status Report, filed contemporaneously (describing Litchain's attempts to avoid service); *see also* Hardin Aff. ¶ 10 (describing the Utility's alleged experience with deceitful conduct by Litchain).) Moreover, denial of return of Plaintiff's and its clients' personal property will devastate Plaintiff's goodwill and reputation with its client base, even if impounded temporarily under the Court's supervision. (*See* Pierce Aff. ¶¶ 25-26.) Finally, as acknowledged by the Utility, the personal property on the Premises is sensitive and fragile, requiring close observation and regular maintenance, which the Utility is not able or willing to provide, as necessitates immediate return of that property. (*See* ECF No. 26 at 12.)

The presence of likely irreparable harm absent a preliminary injunction ordering return of the personal property on the Premises and return of the Deposit to Plaintiff, or at least its maintenance by the Court, merits entry of said preliminary injunction.

    **C.**    **The Final Two *Winter* Elements Are Met**

As already evidenced above, the equities favor grant of Plaintiff's Motion: 1) the Utility has no right to the entirety of the Deposit, and it was well aware of its origin and purpose; 2) it would be inequitable for the Utility to extrajudicially adjudicate its own claims to the Deposit; and 3) the Utility disclaims any right to the personal property at issue, which may be irreversibly damaged if maintained in the Utility's possession. Finally, no interest of the public will be negatively impacted by grant of Plaintiff's Motion.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court grant its Emergency Motion for Temporary Restraining Order and Preliminary Injunction, based, in part, on the Utility's consent.

Respectfully submitted,

| | |
|---|---|
| May 31, 2023 | FOX ROTHSCHILD LLP |
| | 2 W. Washington Street<br>Suite 1100<br>Greenville, SC 29601<br>Tel:   864.751.7600 |
| Greenville, South Carolina | */s/R. Taylor Speer* |
| | R. Taylor Speer<br>Federal ID# 12267<br>tspeer@foxrothschild.com |
| | William A. Neinast<br>Federal ID# 13172<br>wneinast@foxrothschild.com |
| 146217293 | *Attorneys for Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc.* |