IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br>    Plaintiff, <br><br> v. <br><br> Litchain Corp. and Gaffney Board of Public Works, <br><br>    Defendants. <br><br> ─────────────────────────── <br><br> Gaffney Board of Public Works, <br><br>    Counter-/Cross-Claimant, <br><br> v. <br><br> Blockquarry Corp. f/k/a ISW Holdings, Inc., Counterclaim Defendant, and Litchain Corp., Crossclaim Defendant. | C/A No.: 7:23-cv-01427-TMC <br><br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO GAFFNEY BOARD OF PUBLIC WORKS' MOTION FOR LEAVE TO DEPOSIT** |

Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Plaintiff" or "Blockquarry") submits this Response in Opposition to the Motion for Leave to Deposit of Defendant/Counterclaimant Gaffney Board of Public Works (the "Utility") (ECF 42, the "Motion"). The Utility's brief in support of its Motion largely rehashes arguments made in response to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 26), which have already been addressed in Plaintiff's reply in support of that motion (ECF No. 28). As there, Plaintiff opposes only in part the Utility's requested relief.

## NATURE OF THE CASE AND FACTUAL BACKGROUND[1]

Plaintiff filed this action seeking declaratory and injunctive relief against the Utility and Defendant Litchain Corp. ("Litchain") in addition to compensatory relief against Litchain, arising from Plaintiff's cryptocurrency mining business conducted at 150 Hyatt Street, Gaffney, South Carolina (the "Premises"). (*See* ECF No. 1, "Compl.") The Utility owns the Premises and agreed to provide electrical service to the Premises for Plaintiff's cryptocurrency mining business. (Compl. ¶¶ 20-21, 23; ECF No. 23 ¶¶ 20-21, 23, p. 4, "Utility's Am. Ans. & Countercl."; *see also* Compl. ¶ 37; Utility's Am. Ans. & Countercl. ¶ 37, p. 6.) This business was conducted using cryptocurrency mining "pods," which are containerized installations that house, power, and cool the data servers that actually "mine" the cryptocurrency and which were serviced by heavy-duty distribution transformers Plaintiff installed on the Premises (together, the "Cryptocurrency Mining Equipment"). (Compl. ¶¶ 15, 28; ECF No. 7, Attach. 2, ¶¶ 10, 25, "Pierce Aff.")

Litchain was integral to the 2021 commencement of Plaintiff and the Utility's business relationship as it relates to the Premises. (*See* Pierce Aff. ¶¶ 3, 5-7.) Litchain identified the Premises for Plaintiff's purposes and purported to sublease the Premises to Plaintiff (under its ground lease with the Utility) and to license to Plaintiff Litchain's right to a special rate for electrical services from the Utility. (*Id.*) Even so, the business relationship was between Plaintiff

---

[1] Per Local Civ. Rule 7.05(A)(2) (D.S.C.), Plaintiff restricts its statement of facts to those strictly pertaining to the Utility's motion. For a more thorough discussion of the factual background of this suit, Plaintiff refers to its Brief in Support of its Memorandum in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 7, Attach. 1, p. 1-7.)

and the Utility. Plaintiff and its associates[2] paid directly to the Utility: rent for the Premises, the utility bill for electrical services to the Premises, and, most importantly here, the deposit the Utility required for electrical service at the Premises in the amount of $1,387,895.20 (the "Deposit"). (*Id.* ¶¶ 8-13; Utility's Am. Ans. & Countercl. ¶ 37, p. 6; *see also* Utility's Am. Ans. & Countercl. ¶¶ 16-17, p. 30 (acknowledging these payments and their source but incorrectly alleging they were "on behalf of Litchain").) Litchain did not pay any relevant amount to the Utility, (Pierce Aff. ¶ 16), and this is not disputed by the Utility (*see, e.g.*, Utility's Am. Ans. & Countercl. ¶ 37, p. 6 and ¶¶ 16-17, p. 30; ECF No. 26, p. 7).

Litchain, also, was the cause of the business relationship's abrupt interruption. In December 2022, Litchain caused Plaintiff and its associate to be unable to access the Utility's billing portal, (Compl. ¶¶ 42-43; Pierce Aff. ¶ 21), as part of other fraudulent and unjustified behavior not strictly pertinent to resolution of this motion. Without knowing the exact amount owing for electrical services (due to Litchain's actions), Plaintiff paid $301,000.00 to the Utility on January 4, 2023. (Utility's Am. Ans. & Countercl. ¶ 18, p. 30; *see also* ECF No. 34 ¶ 18, "Pl.'s Ans.") Five days later, the Utility suspended electrical service to the Premises. (Utility's Am. Ans. & Countercl. ¶ 19, p. 30; Pl.'s Ans. ¶ 19; Pierce Aff. ¶ 19.) Sometime after February 16, 2023, the Utility blocked physical access to the Premises by padlocking it. (Compl. ¶ 57; Pierce Aff. ¶ 24; *see* Utility's Am. Ans. & Countercl. ¶ 57, p. 8.) On or about March 13, 2023, the Utility delivered a letter to Litchain contending that Litchain's ground lease had been terminated. (Compl. ¶ 64; Utility's Am. Ans. & Countercl. ¶ 64, p. 9.)

---

[2] Any amount paid by Plaintiff's associates was paid for and on Plaintiff's behalf. (*See* Pierce Aff. ¶ 7-16, 21.) Only Plaintiff and Litchain have made a claim to the Deposit, notwithstanding it is undisputed that Litchain paid *no* money toward the Deposit.

3

The Utility did not return any of Plaintiff's Cryptocurrency Mining Equipment on the Premises or any personal property for which Plaintiff is the bailee (*i.e.*, the servers owned by Plaintiff's clients) and instead impounded that property. (Pierce Aff. ¶ 25; Compl. ¶¶ 29-30; *see also* Utility's Am. Ans. & Countercl. ¶ 2, p. 26-27 and ¶ 33, p. 32.) It has also not returned any of the $1,387,895.20 Deposit made to it by Plaintiff and its associates. (*See* Utility's Am. Ans. & Countercl. ¶¶ 26-27, p. 31.) Instead, it now seeks, among other alternative forms of relief, to interplead and deposit any cryptocurrency mining equipment on the Premises and $440,178.19 of the Deposit. (*See, e.g.*, *id.* ¶ 37, p. 33 and ¶ 51, p. 35.)

## ARGUMENT

Plaintiff does not object to the deposit of money with the Court during the pendency of this action. That said, Plaintiff does oppose deposit of less than the total amount of the Deposit and relatedly opposes dismissal of claims against the Utility regarding the Deposit. Additionally, the Utility's motion and supporting brief in requesting to deposit with the Court the Cryptocurrency Mining Equipment on the Premises fail to address or even acknowledge the Utility's previous representation that it "consents to a court order partially granting Blockquarry's request for a preliminary injunction relating to the disbursement of the cryptocurrency mining equipment to the owner listed in the corresponding inventory pending the final resolution of the claims before this Court." (ECF No. 26, p. 4). Even if the Court concludes that deposit of the Cryptocurrency Mining Equipment in its care or maintenance of that equipment on the Premises by the Utility is proper, Plaintiff opposes the unjustified conditions that the Utility would have imposed on that deposit or continuing maintenance by the Utility.

**I.     Plaintiff consents to the *entire* Deposit being placed in the Court's registry.**

As reflected in its prior briefing, claim for interpleader, and the instant motion, the Utility purports to disclaim any interest in the Deposit; seeks to place the Deposit in the Court's care; and

4

requests that Plaintiff's claims relative to the Deposit be dismissed.[3] (*See, e.g.*, Utility's Am. Ans. & Countercl. ¶ 39-40, p. 33; ECF No. 26, pp. 2, 8; Utility's Motion, pp. 3-4.) Yet, the Utility seeks to place only a portion ($440,178.19) of the entire Deposit ($1,387,895.20) with the Court, based on its claims to "deduction[s]" from and "offsets" to the Deposit. (ECF No. 42, p. 1; ECF No. 42, Attach. 1, p. 6.) This is improper under the law and belies the Utility's claim it is a "mere innocent stakeholder." (*See, e.g.*, ECF 42-1, p. 7.)

Although Rule 22 of the Federal Rules of Civil Procedure[4] does not require a deposit with the Court as a jurisdictional matter, the Utility plainly desires that a deposit be made, and the common and logical practice is that the entire amount in controversy be placed in the Court's care. *See, e.g.*, *Metro. Life Ins. Co. v. Vines*, No. CIV. WDQ-10-2809, 2011 WL 2133340, at *2 & n.5 (D. Md. May 25, 2011); *see generally U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999) (describing the general rule in interpleader that "[t]he stakeholder invoking interpleader must deposit *the largest amount* for which it may be liable in view of the subject

---

[3] The Utility's Motion incorrectly states the Utility "does not make an independent claim to the Deposit Refund," (Utility's Motion, p. 3), and it further does not offer a resolution to its own pending claims for declaratory relief relative to the Deposit, (Utility's Am. Ans. & Countercl. ¶¶ 65-67, p. 38).

[4] The Utility has seemingly abandoned its request for statutory interpleader under 28 U.S.C. § 1335 or use of those processes, (ECF No. 41, p. 1 (failing to invoke § 1335 and relying on Rule 22 interpleader)), though its request for an injunction under 28 U.S.C. § 2361 would require invocation of statutory interpleader. *See* 28 U.S.C. § 2361 ("In any civil action of interpleader or in the nature of interpleader *under section 1335 of this title* . . . ." (emphasis added)); *e.g.*, *N. Am. Co. for Life & Health Ins. v. Jones*, No. CV 0:21-4094-CMC-SVH, 2022 WL 4389288, at *1 (D.S.C. Aug. 24, 2022), *R. & R. adopted*, 2022 WL 4387488 (D.S.C. Sept. 22, 2022); *see also* Fed. R. Civ. P. 22(b) (describing Rule 22 interpleader as an "addition to . . . the remedy provided by 28 U.S.C. § . . . 2361"). In any event, Plaintiff has not and does not plan to prosecute its claims to entitlement to the subject matter of this case in any other court proceeding and therefore the § 2361 request is unjustified and unnecessary.

matter of the controversy"). Thus, "[t]he fact that [interpleader-]plaintiff asserts a right to part of the fund or property, or desires to advance a setoff. . . does not vitiate th[e] requirement [to deposit an amount equal to the largest claim] or justify the stakeholder making deductions from the deposit." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1716 (3d ed.) Westlaw (database updated Apr. 2023). Instead, such a stakeholder must make a claim "in the nature of interpleader, in which the 'plaintiff' claims an interest in all or part of the corpus." *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 245-46 (4th Cir. 2021).

This practice makes sense because interpleader proceeds in two stages: 1) "the Court must determine if interpleader is proper and will direct that funds plus interest be deposited with the Clerk" and 2) "[t]he court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes." *Protective Life Ins. Co. v. LeClaire*, No. 7:17-CV-00628-AMQ, 2018 WL 3222796, at *3 (D.S.C. July 2, 2018) (quotation omitted); *see, generally, AmGuard*, 999 F.3d at 244. The interpleader's claim to a right to part of the fund, a setoff, or a deduction are accordingly subjected to the same review and litigation process as any other claim to all or part of the fund. *See AmGuard*, 999 F.3d at 244 (citing *Lummis v. White*, 629 F.2d 397, 400 (5th Cir. 1980)).

The Utility acknowledges that the Deposit was $1,387,895.20. (ECF No. 42, Attach. 1, p. 2.) Plaintiff's complaint and request for injunctive relief lay claim to the Deposit in its entirety and without setoff. (*See, e.g.*, Compl. ¶ 102 and p. 15; ECF No. 7, p. 5). And Litchain has, outside of these proceedings, laid claim to the Deposit, which the Utility has recognized as a possibility. (Pierce Aff. ¶ 31 & Ex. J; ECF No. 23 at 32, 34); *see also AmGuard*, 999 F.3d at 245 ("[R]ule interpleader . . . may be invoked not only when claimants have already made a claim to the

6

stakeholder's property but also when the claimants *may make* such a claim in the future."); *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 194 (4th Cir. 2015) ("It is not for the district court, in determining whether interpleader is proper, to consider whether the competing claims are meritorious."). Yet, the Utility seeks to retain $947,717.01 of the Deposit based on its own claims to that amount, unilaterally adjudicated outside the very interpleader process it seeks to initiate.

The Utility calculates its claims as follows: $679,097.23 for utility bills and fees for January and February 2023 (the Utility, for unknown reasons, lumps the bills for these two months together), $77,825.30 for utility bills and fees for March 2023, $73,475.48 for utility bills and fees for April 2023, $64,296.00 for 400 regulators, $20,638.00 for regulator bypass switches, $6,032.00 for a concrete pad, $22,249.00 for primary meter & .556 wire, and $4,104 for site lighting. (ECF No. 26, Attach. 1, ¶¶ 13, 16 ("Hardin Aff."); Utility's Am. Ans. & Countercl. ¶¶ 27, 29, pp. 31-32.)

But the Utility's right to those amounts is neither justified nor evident from the record. On the Utility's own pleadings and submitted affidavit, electrical services to the Premises were terminated in early January 2023. No itemization of the Utility's bills has been presented to the Court (or to Plaintiff, which had its access to the billing portal unilaterally cut-off by Litchain). No substantiation of those amounts is provided beyond the naked claims to those amounts in the affidavit of Donnie L. Hardin, who has not been subjected to cross-examination and whose employer (the Utility) has not been required to participate in any discovery process.[5]

---

[5] During April 2023, Plaintiff's counsel requested limited and informal discovery from the Utility. The Utility did not respond.

7

Moreover, the purported agreement of Litchain that the Utility relies on to make $117,319.00 of its unilateral deduction has not been offered to the Court. Rather, the Utility points to a letter it sent to Litchain, which is not signed by Litchain (or Plaintiff) and does not substantiate the claimed agreement, the values for those materials, or even the ultimate amount Utility claims the letter supports. (*See* ECF No. 23, Attach. 6, pp. 1-2.)

In sum, the Utility should be required to place in the Court's care the entirety of the Deposit, if it wishes to rely on the benefits of interpleader. The Utility does not cite any authority indicating otherwise. Its reliance on Rule 67, which is a "procedural device . . . only intended to provide a place of safekeeping for disputed funds pending resolution of a legal dispute and not to provide a means of altering the . . . legal duties of each party," *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986), does not answer what amount should be deposited. Rather, Rule 67 is applied in, inter alia, interpleader actions, *see, e.g.*, *N. Am. Co.*, 2022 WL 4389288, at *1; *accord Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1474 (5th Cir. 1987); 12 Wright, Miller & Kane, *supra*, § 2991 n.4, in which the general practice, as already noted, is that the holder of the disputed sum is not allowed to make its own deductions, without its claims being subjected to the litigation and discovery process, before depositing that sum.

In its motion and in its pleadings, the Utility implicitly acknowledges that submission of the entire Deposit is a possible (and Plaintiff contends correct) result. (Utility's Am. Ans. & Countercl. ¶¶ 43-44, p. 34; ECF No. 42, p. 2 (alternatively consenting to "deposit [of] such other sum . . . that the Court deems to be sufficient and most appropriate").) The Utility fails to explain why it would be "punitive," (ECF No. 42, Attach. 1, p. 7), for it to have to litigate its claim to the Deposit like any other claimant.

8

Plaintiff requests that the Utility's motion to deposit money with the Court be granted, in part, given that all of the disputed Deposit should be placed in the Court's registry. Relatedly and for the same reasons, Plaintiff requests that its claims against the Utility relative to the Deposit not be dismissed. (*See, e.g.*, Compl. ¶¶ 97-106, 119-26).

**II.     The Utility fails to explain the reversal of its previous representations about the Cryptocurrency Mining Equipment or to justify the related conditions it requests.**

Although the Utility now seeks without caveat to deposit all of the cryptocurrency mining equipment on the Premises with the Court, it previously represented to the Court and to Plaintiff that it desired to turn over the equipment it had impounded to the undisputed owners of that equipment pursuant to the inventories it solicited from Plaintiff and its clients. (*See, e.g.*, Utility's Am. Ans. & Countercl. ¶ 51; ECF No. 26, p. 9; Hardin Aff. ¶ 31.) In fact, it represented that it did "not anticipate that Litchain asserts a conflicting claim" to the Plaintiff's Cryptocurrency Mining Equipment and that none of the inventories included conflicting claims for equipment on the Premises. (ECF No. 26, p. 3.)  The Utility provides no reason or explanation why its position or the rationale supporting that position changed, and thus to the extent the current motion contradicts that position, the motion to deposit Cryptocurrency Mining Equipment with the Court should be denied.

Further, as Plaintiff already stated (ECF No. 28, p. 9), to the extent the Utility does not return or the Court does not direct the Utility to return Plaintiff's Cryptocurrency Mining Equipment, Plaintiff contends that a bond representative, or at least cognizant, of the value of that equipment (undisputedly more than $10 million) should be posted by the Utility in the Court's discretion. *See, e.g.*, *Wilmington Tr. Co. v. Gillespie*, 397 F. Supp. 1337, 1340 (D. Del. 1975) (explaining that while "[i]t is not required, in an action brought under Rule 22, that . . . a bond

9

therefor be deposited with the Court . . . , it is within the Court's discretion to order such . . . bond, and this is commonly done").

Plaintiff also opposes the Utility's request that the Court order the parties to obtain insurance for personal property on the Premises, that the claimants provide certificates of insurance naming the Utility as an additional insured, that Plaintiff and the as-of-yet absent Litchain indemnify the Utility, and that they pay certain utility costs incurred at the Premises. By unilaterally impounding the personal property on the Premises, (*see, e.g.*, Pierce Aff. ¶ 24), the Utility has unequivocally assumed the risk of loss associated with that property, inclusive of any cooling requirements for the property it has impounded. And there is no indication in the record that the Utility ever required Litchain to certify the Premises was insured, pursuant to its ground lease, belying the Utility's demand of such now. (*See* ECF No. 23, Attach. 2, p. 1). The Utility identifies no legal basis for such extraordinary relief, and, for that reason, it should be denied. Similarly, any of Plaintiff's claims against the Utility regarding the Cryptocurrency Mining Equipment, (*see, e.g.*, Compl. ¶¶ 97-106, 119-26), should not be dismissed until that equipment has been returned to Plaintiff's possession.

## CONCLUSION

Plaintiff does not oppose deposit with the Court of the disputed funds at issue in this case but requests that the entire disputed amount be placed in the Court's registry ($1,387,895.20). Plaintiff opposes the request that Cryptocurrency Mining Equipment be deposited with the Court given the Utility's prior representations, and Plaintiff opposes the conditions under which the Utility alternatively offers to continue to impound Plaintiff and others' property. Plaintiff therefore respectfully asks the Court to grant in part and deny in part the Utility's Motion for Leave to Deposit, in accordance with the foregoing.

Respectfully submitted,

| | |
|---|---|
| July 24, 2023 | FOX ROTHSCHILD LLP |
| | 2 W. Washington Street<br>Suite 1100<br>Greenville, SC 29601<br>Tel:   864.751.7600 |
| Greenville, South Carolina | */s/ R. Taylor Speer*<br>R. Taylor Speer<br>Federal ID# 12267<br>tspeer@foxrothschild.com |
| | William A. Neinast<br>Federal ID# 13172<br>wneinast@foxrothschild.com |
| 147611567 | *Attorneys for Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc.* |

11