IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br>    Plaintiff, <br><br> v. <br><br> Litchain Corp. and Gaffney Board of Public Works, <br><br>    Defendants. | C/A No.: 7:23-cv-01427-TMC |
| Gaffney Board of Public Works, <br><br>    Counter-/Cross-Claimant, <br><br> v. <br><br> Blockquarry Corp. f/k/a ISW Holdings, Inc., Counterclaim Defendant, and Litchain Corp., Crossclaim Defendant. | **PLAINTIFF'S MOTION FOR PARTIAL DEFAULT JUDGMENT AGAINST DEFENDANT LITCHAIN CORP.** |

    Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Plaintiff") hereby moves for partial default judgment against Defendant Litchain Corp. ("Litchain") pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

PROCEDURAL & FACTUAL BACKGROUND

    1.    On April 7, 2023, Plaintiff filed this action seeking declaratory and injunctive relief against Defendant Gaffney Board of Public Works (the "Utility") and Litchain, in addition to compensatory relief against Litchain, arising from Plaintiff's cryptocurrency mining business conducted at 150 Hyatt Street, Gaffney, South Carolina (the "Premises"). (*See* ECF No. 1).

2.      In short, Plaintiff funded a $1,387,895.20 deposit, paid to the Utility (the "Deposit") for electric service to the Premises for cryptocurrency mining. Plaintiff conducted its cryptocurrency mining business by using cryptocurrency mining "pods," which are containerized installations that house, power, and cool the data servers that actually "mine" the cryptocurrency and which were serviced by heavy-duty distribution transformers that Plaintiff installed on the Premises, and also with the data servers identified in Exhibit 3 of the inventory provided in ECF No. 26-1 (together, the "Cryptocurrency Mining Equipment").

3.      Litchain's role in this matter was identifying the Premises for Plaintiff's purposes, purportedly subleasing the Premises to Plaintiff, and purportedly licensing Litchain's right to a special rate for electric service provided by the Utility.

4.      Litchain subsequently attempted to extort Plaintiff and caused the Utility to terminate electric service to the Premises. Thereafter, the Utility impounded all personal property on the Premises, including the "Cryptocurrency Mining Equipment" and particularly the servers in the "pods."

5.      On April 10, 2023, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction against Litchain and/or the Utility seeking, *inter alia*, immediate return of the Deposit and the Cryptocurrency Mining Equipment ("Plaintiff's Motion"). (ECF No. 7).

6.      On April 12, 2023, the Court denied in part without prejudice Plaintiff's Motion, leaving pending Plaintiff's request for preliminary injunctive relief. (ECF No. 9).

7.      On May 1, 2023, the Utility answered Plaintiff's Complaint and brought cross- and counterclaims for, *inter alia*, interpleader (and, in the alternative, in the nature of interpleader) for placement of a portion of the Deposit ($440,178.19, hereinafter the "Uncontested Amount of the

Deposit") and the personal property on the Premises in the Court's custody. (ECF No. 15; *see also* ECF No. 23 (amending the Utility's Answer and Cross- and Counterclaims)).

8.  On May 24, 2023, the Utility filed its response to Plaintiff's Motion. The response explained the Utility did not dispute that $440,178.19 of the Deposit—*i.e.*, the Uncontested Amount of the Deposit—belonged to either Plaintiff or Litchain. The response further explained that ownership of the personal property on the Premises—in which the Utility did not claim a property interest—did not appear to be in dispute either (pending Litchain's response). (ECF No. 26, *passim*; *accord* ECF No. 23, pp. 26, 32, 40-41; ECF No. 42, Attach. 1, p. 3). Thus, the Utility consented "to a court order granting Blockquarry's request for a preliminary injunction relating to disbursement of the cryptocurrency mining equipment to the owner listed in the corresponding inventory pending the final resolution of the claims before this Court" and stated, further, it "is ready and willing to return th[e] outstanding deposit balance [of $440,178.19] . . . following the conclusion of this litigation." (ECF No. 26, p. 8; *see also* ECF No. 26, Attach. 1 (appending inventories submitted to the Utility by Plaintiff and its client)). The later claim by the Utility was further averred under oath by affidavit of the Utility's General Manager. (ECF No. 26-1, p. 4).

9.  On July 10, 2023, the Utility filed its Motion for Leave to Deposit, stating: "the utility does not make an independent claim to the Deposit Refund or to the Cryptocurrency Mining Equipment." (ECF 42-1, p. 8). Deposit Refund here referred to the Uncontested Amount of the Deposit (*id.* at 1), and the Cryptocurrency Mining Equipment referred to the personal property remaining of on the Premises for cryptocurrency mining (*id.* at 2).

10. On August 11, 2023, Plaintiff, pursuant to the Court's June 22, 2023, order (ECF No. 37), perfected service upon Litchain through publication in South Carolina and Florida, pursuant to Rule 4(e)(1), FRCP, S.C. Code Ann. § 15-9-710, and Fla. Stat. §§ 49.011, 49.021.

11. Thus, Litchain's response to Plaintiff's Complaint was due September 1, 2023. *See, e.g.*, *Nationstar Mortg. LLC v. Gore*, No. 4:19-CV-00230-SAL, 2020 WL 1814036, at *1 (D.S.C. Apr. 8, 2020) ("Because Ms. Gore failed to serve any response to the complaint upon counsel for Nationstar within 21 days after the last publication of the summons and complaint in the Sun News, Ms. Gore defaulted.").

12. To date, Litchain has not responded to Plaintiff's Complaint, entered an appearance, or otherwise made any filings in the underlying case.

13. Upon Plaintiff's request (ECF No. 58), the Clerk of Court entered default as to Litchain on September 6, 2023 (ECF No. 59).

## REQUEST FOR RELIEF

14. Entry of default judgment against Litchain, pursuant to Rule 55(b), is appropriate.

15. Specifically, Plaintiff seeks entry of partial default judgment for 1) a declaration that a) Plaintiff is the rightful owner of the Uncontested Amount of the Deposit, b) Plaintiff is the owner of the Cryptocurrency Mining Equipment and bailee for other personal property on the Premises, c) Plaintiff caused and paid for real improvements to be affixed to the Premises, and d) Plaintiff is not indebted to Litchain for any amount of money or other obligation (Count 1 of the Complaint); 2) a declaration that the purported sublease between Litchain and Plaintiff is void, voidable, and further unenforceable (Count 2 of the Complaint); and 3) a declaration that the purported license agreement between Litchain and Plaintiff is void, voidable, and further unenforceable (Count 3 of the Complaint).[1] *See generally Nat'l Elec. Benefit Fund v. EGF Elec.*

---

[1] If the Court grants the instant motion, in full, Plaintiff plans to file a voluntary dismissal without prejudice as to its remaining claims (*i.e.*, Counts 4 and 5) against Litchain. In this circumstance, dismissal may be preferred to enduring the economic reality of litigation; it does not represent the merit of Counts 4 and 5.

*Inc.*, No. GJH-17-857, 2018 WL 802418, at *1 (D. Md. Feb. 7, 2018) (recognizing the propriety of filing motion for partial default judgment).

16. Grant of this requested relief will largely moot/resolve Plaintiff's pending motion for preliminary injunctive relief (ECF 7 [motion], ECF 9 [ruling]), where the relief sought therein is substantially similar to and in effect and impact the same as the relief sought by this motion.[2] The only remaining matter to be resolved by the pending motion for injunctive relief is return of the *contested* amount of the Deposit to Blockquarry—*i.e.*, the amount that exceeds the Uncontested Amount of the Deposit ($947,717.01).

A. **Admitted Allegations**

17. A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

18. Thus, Litchain has admitted:

   a. Plaintiff "funded $1,387,895.20 as a deposit on the Premises' utility bill" (ECF No. 1, ¶ 25);

   b. Plaintiff paid for "purchase, delivery, and installation of distribution transformers required to condition and deliver usable electrical power for Bitcoin mining, and . . . for the purchase, delivery, and installation of mining pods" (*id.* ¶ 28);

   c. Plaintiff "owns personal property kept on the Premises, including at least five distribution transformers, ten mining pods, and Bitcoin mining servers" (*id.* ¶ 29);

---

[2] Blockquarry may require an order on its motion for preliminary injunctive relief requiring the Utility to release the personal property and to remit to Blockquarry the Uncontested Amount of the Deposit, in the unlikely event the Utility refuses to do the same, following the granting of the instant motion.

5

    d. Plaintiff is the "bailee of its clients' personal property kept on the Premises," "including over 5,000 Bitcoin mining servers installed in Blockquarry's mining pods" (*id.* ¶ 30);

    e. Plaintiff "*has* not paid [Litchain] any money under the purported sublease or purported license agreement" (*id.* ¶ 38);

    f. Litchain "has not paid the Utility any money relative to the Premises" (*id.* ¶ 39);

    g. Plaintiff "is not indebted to [Litchain] and owes no duty of performance to [Litchain]" (*id.* ¶ 54);

    h. The Utility did not approve of or consent to Litchain's purported sublease of the Premises to Plaintiff (*id.* ¶ 56);

    i. The purported sublease's validity and effectiveness was "conditioned upon the consent . . . by [the Utility]" (*id.* ¶ 70);

    j. "The [license] agreement does not require or otherwise demand the exchange of any payment" (*id.* ¶ 84);

    k. "The Deposit belongs to [Plaintiff]" (*id.* ¶ 102);

    l. "[Litchain] cancelled, terminated, and revoked the purported sublease; [Litchain] never had the Utility's consent for the purported sublease, despite [Litchain]'s representations otherwise; and the Utility cancelled, terminated, and revoked the master lease with [Litchain]" (*id.* ¶ 112); and

    m. "The purported license is void, voidable, and further unenforceable because, among other reasons, it is not supported by consideration and the purported license agreement precludes a claim for damages. Moreover, [Litchain] cancelled, terminated, and revoked the purported license agreement; [Litchain] never had the Utility's consent for the purported license agreement; and the Utility cancelled, terminated, and revoked the electrical service agreement between the Utility and [Litchain]" (*id.* ¶ 118).

    **B.**    <u>**Cryptocurrency Mining Equipment**</u>

    19.    The Utility represented to the Court that: "[t]o the extent there are no conflicting claims of equipment ownership, Gaffney BPW consents to a court order partially granting Blockquarry's request for a preliminary injunction relating to the disbursement of the cryptocurrency mining equipment to the owner listed in the corresponding inventor[ies]." (ECF No. 26, p. 4; *id.*, p. 7; *see also id.*, p. 4 (explaining that if Litchain failed to timely respond, the

Utility would find a "consent order releasing the equipment in a manner that complies with the itemized inventories submitted by" Plaintiff and its clients to be "appropriate")).

20. By its default, Litchain has admitted Plaintiff's allegation that there are no legitimate conflicting claims of ownership for personal property on the premises, including Plaintiff's Cryptocurrency Mining Equipment and the property for which Plaintiff serves as bailee.[3]

21. By its prior representations to the Court, the Utility has evidenced its consent to the relief sought by this motion and its lack of legal rights to or interest in the Cryptocurrency Mining Equipment and the property for which Plaintiff serves as bailee.

22. Thus, Plaintiff's well-pleaded allegations and the record before the Court support the relief of declaring Blockquarry is the rightful owner of all other personal property than that for which it is a bailee on the Premises, including the Bitcoin mining pods, the distribution transformers, and other personal property not affixed to the Premises.

C. **The Deposit**

23. The Utility also represented to the Court that: it is "ready and willing to return th[e] outstanding deposit balance" of $440,178.19 (ECF No. 26, p. 8) and that the only two claimants to the Deposit, inclusive of that amount, are "Litchain and Blockquarry" (ECF No. 23, pp. 26, 32, 40-41; *see also* ECF No. 42, Attach. 1, p. 3).

24. By its default, Litchain admitted Plaintiff's allegations that Plaintiff and its representatives alone funded the Deposit, that Litchain did not, and that the Deposit belongs to Plaintiff.

---

[3] As alleged and is undisputed by the Utility, some of the personal property belongs to a third-party, which is Blockquarry's client. (ECF No. 1, ¶ 30; ECF No. 23, p. 33). Blockquarry and the third-party will coordinate return of this property to the third-party.

7

25. By its prior representations to the Court, the Utility has evidenced, in effect, its consent to the relief sought by this motion given that the Uncontested Amount of the Deposit "is ready to be paid to the rightful recipient" (ECF No. 23, p. 33), the only claimants to that amount are "Litchain and Blockquarry" (*id.* at 26, 32, 40-41), and, as just noted, Litchain, by its default, concedes it is not the rightful recipient of the Uncontested Amount of the Deposit.

26. Thus, Plaintiff's well-pleaded allegations and the record before the Court support the relief of declaring Blockquarry is the rightful owner of Uncontested Amount of the Deposit.

### D. Purported Agreements

27. By its default, Litchain has admitted Plaintiff's allegations that the Utility never consented to the sublease of Premises, that the sublease, by its terms, was conditioned on the Utility's consent, and that Plaintiff cancelled, terminated, and revoked the sublease.

28. Thus, Plaintiff's well-pleaded allegations and the record before the Court support the relief of "declaring [the] purported sublease is void, voidable, and further unenforceable." (ECF No. 1, p. 17).

29. By its default, Litchain admitted Plaintiff's allegations that the purported license agreement did not require or otherwise demand the exchange of any payment, that the Plaintiff and Litchain, in fact, did not exchange any payment thereunder, that the license agreement nominally precluded any claim for damages, that Litchain cancelled, terminated, and revoked the purported license agreement to which it never had the Utility's consent, and that the Utility cancelled, terminated, and revoked the electrical service agreement between the Utility and Litchain.

30. Thus, Plaintiff's well-pleaded allegations and the record before the Court support the relief of "declaring [the] purported license agreement is void, voidable, and further unenforceable." (ECF No. 1, p. 18). *See generally Hendricks v. Clemson Univ.*, 353 S.C. 449, 459,

578 S.E.2d 711, 716 (2003) ("A contract is formed between two people when one gives *the other sufficient consideration either to perform or refrain from performing a particular act.*" (emphasis added)); *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 31-32, 644 S.E.2d 663, 672 (2007) (describing instances in which a contract may be unconscionable and therefore unenforceable if it completely deprives one contractual party of a remedy altogether).

31. By its default, Litchain admitted Plaintiff's allegations that Plaintiff did not pay Litchain any money under the purported sublease or license agreement, that Litchain did not pay the Utility any money relative to the Premises, that, for the reasons detailed above, both the purported sublease and license agreement are void, voidable, and unenforceable, and that Plaintiff is not indebted to Litchain and owes it no duty of performance.

32. Thus, Plaintiff's well-pleaded allegations and the record before the Court support the relief of "declaring Blockquarry is not indebted to Litchain for any amount of money or other obligation." (ECF No. 1, p. 15).

E. **Entry of Default**

33. In sum, the Complaint's allegations, deemed as admitted by Litchain, establish Plaintiff's entitlement to the requested declarations. Accordingly, pursuant to Rule 55(b), Plaintiff requests entry of partial default judgment against Litchain containing the requested declarations. *See, e.g.*, *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments . . . .").

34. Moreover, the Utility's presence as a co-defendant does not impair the Court's ability to enter a default judgment on Plaintiff's claims against Litchain, in the narrow form requested, because such judgment will not risk inconsistent rulings against the defendants. *See, e.g.*, *MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *8 (D.S.C. July 24, 2015) ("*[W]hen a default of a defendant in a multi-defendant case can lead to inconsistent rulings*

*by the court*, the court should not enter judgment against the defaulting defendant." (emphasis added) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872))). This is especially true where the Utility, the only other defendant, has indicated its consent, through prior filings, to the relief requested herein.

35. The Court may and should leave ruling on Plaintiff and the Utility's respective competing claims to the disputed portion of the Deposit for another day. However, the requested declaration as to Plaintiff's rights to the Uncontested Amount of the Deposit is proper and ripe where all parties agree—Plaintiff by its allegations, Litchain by its default, and the Utility by its consent evidenced in prior representations—that Plaintiff is due the Uncontested Amount of the Deposit.

36. Entry of the requested default judgment is proper under Rule 54(c) because it does not differ in kind form what is demanded in Plaintiff's pleadings. (ECF No. 1, p. 15 (enumerating each type of relief requested herein); *see also id.* (requesting award of any other relief the Court deems appropriate)).

37. Moreover, there is no reason to delay entry of the requested default judgment against Litchain. *See* Fed. R. Civ. P. 54(b). There is an ongoing risk to the Cryptocurrency Mining Equipment on the Premises. (*See* ECF No. 1, pp. 3 (mentioning the cooling requirements for the servers); ECF No. 7, pp. 1, 3 (explaining that the equipment consists "primarily of sensitive electronics which are subject to irreparable damage if not properly maintained")). This risk is undisputed. (*See* ECF No. 26, p. 6 (recognizing that the servers may "need[] to be stored at a specific temperature in order for it to remain operable once distributed and put back into use")). And the Utility desires to return as soon as possible the Undisputed Amount of the Deposit, to which Litchain has admitted it has no claim.

## COMPLIANCE

38. Plaintiff's understanding is that no hearing is required on this motion. Local Civ. Rule 7.08 (D.S.C.); *see also* Fed. R. Civ. P. 55(b)(2) (explaining inapposite instances in which a hearing could be necessary).

39. Pursuant to Local Civil Rule 7.02, the undersigned affirms and certifies that prior to the filing of this motion, he conferred with the Utility's counsel as to its consent to the matter contained herein but an agreement was not reached.

## CONCLUSION

Plaintiff respectfully requests entry of partial default judgment against Defendant Litchain Corp., which is proper based on well-pleaded facts in the Complaint, the record before the Court, and Defendant Gaffney Board of Public Works' consent evidenced in the record. Specifically, Plaintiff requests the default judgment declare:

1. Plaintiff is the rightful owner of the Uncontested Amount of the Deposit;
2. Plaintiff is the owner of Cryptocurrency Mining Equipment and the bailee for the remaining personal property on the Premises;
3. Plaintiff caused and paid for real improvements to be affixed to the Premises;
4. Plaintiff is not indebted to Litchain for any amount of money or other obligation;
5. The purported sublease between Litchain and Plaintiff is void, voidable, and further unenforceable; and
6. The purported license agreement between Litchain and Plaintiff is void, voidable, and further unenforceable.

Plaintiff further requests that the Court rule on the contested amount of the Deposit later and to reserve jurisdiction to enter orders as required, consistent with its declaration herein.

                      Respectfully submitted,

| | |
|---|---|
| September 27, 2023 | FOX ROTHSCHILD LLP |
| | 2 W. Washington Street<br>Suite 1100<br>Greenville, SC 29601<br>Tel:   864.751.7600 |
| Greenville, South Carolina | */s/ R. Taylor Speer* |
| | R. Taylor Speer<br>Federal ID# 12267<br>tspeer@foxrothschild.com |
| 149614338 | *Attorneys for Blockquarry Corp. f/k/a ISW Holdings, Inc.* |