IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc.,<br><br>　　　Plaintiff,<br><br>v.<br><br>Litchain Corp. and Gaffney Board of Public Works,<br><br>　　　Defendants.<br>_____<br><br>Gaffney Board of Public Works,<br><br>　　　Counter-/Cross-Claimant,<br><br>v.<br><br>Blockquarry Corp. f/k/a ISW Holdings, Inc., Counterclaim Defendant, and Litchain Corp., Crossclaim Defendant. | C/A No.: 7:23-cv-01427-TMC<br><br><br><br><br><br>**GAFFNEY BOARD OF PUBLIC WORKS' RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL DEFAULT JUDGMENT AGAINST DEFENDANT, LITCHAIN CORP.** |

Comes now Defendant/Counter-/Cross-Claimant, Gaffney Board of Public Works ("Gaffney BPW"), and for its response in partial opposition to Plaintiff, Blockquarry Corp. f/k/a ISW Holdings, Inc.'s ("Blockquarry"), Motion for Partial Default Judgment Against Defendant, Litchain Corp., states as follows:

## INTRODUCTION

In its Motion, Blockquarry seeks the entrance of a partial default judgment against Defendant Litchain Corp. ("Litchain") for 1) a declaration that a) Litchain is the rightful owner of

the Uncontested Amount of the Deposit,[1] b) Blockquarry is the owner of the Cryptocurrency Mining Equipment[2] and bailee for other personal property on the Premises,[3] c) Blockquarry caused and paid for real improvements to be affixed to the Premises, and d) Blockquarry is not indebted to Litchain for any amount of money or other obligation (Count 1 of the Complaint); 2) a declaration that the purported sublease between Litchain and Blockquarry is void, voidable, and further unenforceable (Count 2 of the Complaint); and 3) a declaration that the purported license agreement between Litchain and Blockquarry is void, voidable, and further unenforceable (Count 3 of the Complaint). (ECF No. 63, ¶ 15). Following the entrance of a default judgment on these claims, Blockquarry intends to voluntarily dismiss its claims for wrongful eviction and abuse of process against Litchain without prejudice. (ECF No. 63, ¶ 15n1). Blockquarry inaccurately claims that at that point, the only outstanding matter to be resolved is the return of the remaining deposit amount of $947,717.01 to Blockquarry. (ECF No. 63, ¶ 16).

In response, Gaffney BPW agrees to a partial default judgment against Litchain in favor of Blockquarry as to all declarations sought except the assertion that Blockquarry is the rightful owner of the Uncontested Amount of the Deposit. By agreeing to the entrance of a partial default judgment as to all but the first declaration, Gaffney BPW does not waive its ability to contest the

---

[1] In its Motion, Blockquarry defines "Uncontested Amount of the Deposit" as the portion of the $1,387,895.20 utility deposit paid to Gaffney BPW on behalf of Litchain per the utility agreement between the two parties remaining after the deduction of the outstanding amounts owed by Litchain following the termination of the agreement for nonpayment. This Uncontested Amount of the Deposit totals $440,178.19. (ECF No. 63, ¶ 7).

[2] Blockquarry defines "Cryptocurrency Mining Equipment" as "cryptocurrency mining 'pods,' which are containerized installations that house, power, and cool the data servers that actually 'mine' the cryptocurrency and which are serviced by heavy-duty distribution transformers." (ECF No. 63, ¶ 2).

[3] Blockquarry defines "Premises" as "150 Hyatt Street, Gaffney, South Carolina." (ECF No. 63, ¶ 1).

facts relied on by Blockquarry in support of these claims or the manner in which they have been presented in Blockquarry's motion when defending the remaining claims asserted against it.

## STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure authorizes the entrance of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Unless the claim is for a sum certain, once the clerk has marked default against an unresponsive defendant, the plaintiff must file a motion for default judgment with the court. Fed. R. Civ. P. 55. This motion is not granted as a matter of right because "[a] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2685 (3d ed. 1998) (legal conclusions are not accepted as true because "the moving party is not entitled to a default judgment as a matter of right"). Rather, the court only accepts well-pleaded and uncontested facts as true and determines whether they entitle the plaintiff to the relief sought. *Id.*, *see also Broxton v. Blue Ridge in Fields*, 2019 WL 3315245, at *2 (D.S.C. July 24, 2019) (citing *DIRECTV, Inc. v. Rawlings*, 253 F3d 778, 780 (4th Cir. 2001)). A default judgment is only entered if after considering those uncontested facts, the court finds it to be appropriate given the circumstances of the case. *DIRECTV, Inc. v. Pernites,* 200 Fed. App'x 257, 258 (4th Cir.2006).

It is well-established that when only one defendant to a multi-defendant litigation is in default, the entrance of a default judgment is not appropriate if the possibility of inconsistent judgments following the conclusion of litigation exists. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872); s*ee also*, *MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *8

3

(D.S.C. July 24, 2015) ("[W]hen a default of a defendant in a multi-defendant case can lead to inconsistent rulings by the court, the court should not enter judgment against the defaulting defendant."). Instead, "[t]he defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, [and] he cannot be heard at the final hearing." *Frow*, 82 U.S. at 554.

## LAW AND ARGUMEMT

Upon the filing of an appropriate pleading, federal courts may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C.A. § 2202. Blockquarry seeks declaratory and associated injunctive relief in Counts 1 through 3 of its Complaint relating to the utility deposit paid on behalf of Litchain for the use of the Premises for the operation of a cryptocurrency mining facility, the return of cryptocurrency mining equipment that has been locked onsite since the termination of the ground lease between Litchain and Gaffney BPW, and the illegality of a sublease and license agreement entered into between Litchain and Blockquarry that purportedly allowed Litchain to use the Premises for cryptocurrency mining purposes and receive a reduced electric utility rate given by Gaffney BPW to Litchain as an economic incentive. (ECF No. 1, ¶¶ 97-126). Now that the court clerk has marked Litchain in default of Blockquarry's claims, Blockquarry asks for the entry of a partial default judgment stating:

1. The Court DECLARES that Plaintiff is the rightful owner of the uncontested amount of the deposit ($440,178.19) placed with Defendant Gaffney Board of Public Works;[4]

2. The Court DECLARES that Plaintiff is the rightful owner of all other personal property than that for which it is a bailee at 150 Hyatt Street, Gaffney, South Carolina including

---

[4] This is the only declaration contested by Gaffney BPW. Due to the pending claims and defenses asserted by Gaffney BPW, entering a default declaratory judgment consistent with this statement could lead to inconsistent court orders.

the Bitcoin mining pods, the distribution transformers, and other personal property not affixed to that property, including the data servers identified in Exhibit 3 of the inventory provided in ECF No. 26-1;

3. The Court DECLARES that Plaintiff caused and paid for real improvements to be affixed to the real property at 150 Hyatt Street, Gaffney, South Carolina;

4. The Court DECLARES that Plaintiff is not indebted to Defendant Litchain Corp. for any amount of money or other obligation;

5. The Court DECLARES that the purported sublease between Plaintiff and Defendant Litchain Corp. is void, voidable, and further unenforceable; and

6. The Court DECLARES that the purported license agreement between Plaintiff and Defendant Litchain Corp. is void, voidable, and further unenforceable.

Based on the facts conceded by Litchain through its default, including those set forth in Paragraphs 28, 29, 30, 54, 56, 70, 84, 112, and 118 of the Complaint, Gaffney BPW consents to a partial default judgment against Litchain in favor of Blockquarry as to proposed enumerated declarations two through six. For the sake of clarity, however, Gaffney BPW avers declaration two should be phrased as follows: "The Court DECLARES that Plaintiff is the rightful owner or bailee of all ~~other~~ personal property ~~than that for which it is a bailee at~~locked onsite at 150 Hyatt Street, Gaffney, South Carolina referenced in the Complaint, including the Bitcoin mining pods, the distribution transformers, and other personal property not affixed to that property, including the data servers identified in Exhibit 3 of the inventory provided in ECF No. 26-1."[5] This revision more closely restates the uncontested facts asserted by Blockquarry in its Complaint, including

---

[5] Gaffney BPW has left its red-lined revisions to this requested declaration in its response so the Court can see how its judgment language differs from that submitted by Blockquarry.

5

that it owns at least five distribution transformers, ten mining pods, and numerous Bitcoin mining servers that are currently locked on the Premises and serves as the bailee of over 5,000 mining servers owned by its clients that are also locked on the Premises. (ECF No. 1, ¶¶ 29-30). This declaration is additionally consistent with the assertion of Gaffney BPW that it does not and has never made an independent claim to the Cryptocurrency Mining Equipment. (*See*, *e.g.*, ECF No. 23, ¶ 49, stating, "Gaffney BPW does not make an independent claim of entitlement to the Cryptocurrency Mining Equipment and does not wish to keep, use, or otherwise assert control over it. Instead, now that the Ground Lease has been terminated, Gaffney BPW would like the Cryptocurrency Mining Equipment left at 150 Hyatt Street removed from its premises and returned to its rightful owner(s).").

Gaffney BPW disputes Blockquarry is entitled to a partial default judgment consistent with the first enumerated proposed declaration, which states, "[t]he Court DECLARES that Plaintiff is the rightful owner of the uncontested amount of the deposit ($440,178.19) placed with Defendant Gaffney Board of Public Works." The amount of the utility deposit remaining for return following the termination of the utility agreement between Litchain and Gaffney BPW due to nonpayment and termination of the associated ground lease remains contested, as does the entity to whom that remaining sum should be returned. The deposit was required under the electric service agreement between Litchain and Gaffney BPW only. (ECF No. 1, ¶ 26). Blockquarry was not a party to this agreement. (ECF No. 1, ¶ 26).While Blockquarry alleges it funded this $1,387,895.20 deposit for Litchain (ECF No. 1, ¶ 25), Gaffney BPW denies this assertion in its amended answer (ECF No. 23, p, 5, ¶ 25), and in its counter- and crossclaims asserts it was paid on behalf of Litchain by Blockquarry, Alonzo Pierce, Bit5ive, Uptime Armory, and Uptime Hostings (ECF No. 23, p. 30, ¶ 16). As the account holder, the utility agreement requires any deposit remaining after offsetting

the outstanding utility payments and related expenses to be returned to Litchain. (ECF No. 23, p, 32, ¶ 31). Gaffney BPW currently seeks to interplead the deposit into the court pending a determination via declaratory judgment as to the amount, if any, to be returned, and the party entitled to that outstanding amount. (ECF No. 23, p, 33-34, ¶¶ 36-44, p. 38, ¶¶ 65-67). Gaffney BPW requests attorney's fees and costs in connection with these claims and asks that these sums be deducted from the remaining utility deposition prior to its return. (ECF No. 23, p. 46, ¶ 13).

Gaffney BPW additionally asserts two claims of breach of contract against Litchain – one for breach of the utility contract and another for breach of a related ground lease. (ECF No. 23, p, 42-44, ¶¶ 869-102). The amount owned due to Litchain's breach of the utility agreement is the minimum amount to be deducted from the utility deposit prior to its return. (ECF No. 23, p. 44, ¶ 100). Gaffney BPW has also asked for a judgment awarding it the outstanding payments of $12,718.64 due under the ground lease plus interest and associated costs and expenses. (ECF No. 23, p. 43, ¶¶ 90-91). The Court could feasibly order the payment of this judgment by deducting that amount from the utility deposit prior to its return, particularly if it finds that the deposit refund is owned to Litchain per the associated utility agreement.

Importantly, Blockquarry has requested, and Gaffney BPW has consented to, partial default judgments declaring the purported sublease and license agreement between Blockquarry and Litchain to be void, voidable, and further unenforceable. (ECF No. 63, p. 11, ¶¶ 5-6). Further, when answering Blockquarry's Complaint, Gaffney BPW raised numerous affirmative defenses, including laches, waiver, and/or estoppel; fraud and/or misrepresentation; unclean hands; consent; and illegality. (ECF No. 23, ¶¶ 148-173). These defenses are premised on the fact Blockquarry knew or reasonably should have known the purported sublease and license agreement were invalid, yet it illegally stored its own equipment and the equipment of others on the Premises, illegally

used the Premises for the purpose of operating a cryptocurrency mining operation, illegally took advantage of the economic incentive rate given to Litchain by using large amounts of the electricity provided at that rate for the purpose of running its cryptocurrency operation, and profited from its illegal use of the Premises. *Id*.

While Blockquarry was actively profiting from its use of the Premises, it did not complain about the illegality of these agreements or attempt to cure the known illegalities by ensuring Gaffney BPW had approved the sublease in writing and entering into its own utility agreement with Gaffney BPW. Instead, it waited until Litchain attempted to extort Blockquarry, prevented Blockquarry from making payments on its behalf, and defaulted on its agreements with Gaffney BPW, resulting in the sudden demise of Blockquarry's unlawful cryptocurrency mining operation and all profits to cease, that Blockquarry began to contest the validity of its agreements with Litchain. (ECF No. 1, ¶¶ 42-56). By Blockquarry's own admission, now that Litchain has absconded, it is unlikely to collect on any monetary judgment entered against it. (*See* ECF No. 63, ¶ 15n1). Blockquarry knowingly entered into a bad business deal and now seeks to recoup its losses at the expense of Gaffney BPW, an innocent third-party that continues to incur attorney's fees and other costs as a result.

It is inequitable for Blockquarry to recover money paid pursuant to its illegal agreements with Litchain from third-party Gaffney BPW. (*See*, *e.g.*, ECF No. 63, 165). Nothing about Litchain's default precludes Gaffney BPW from continuing to rely on the affirmative defenses asserted in its Amended Answer. If anything, the associated declarations that the sublease and license agreement are invalid strengthen Gaffney BPW's assertion that Blockquarry is not entitled to receive any portion of the utility deposit paid on behalf of Litchain pursuant to the only valid agreement requiring the deposit – the utility agreement between Litchain and Gaffney BPW only.

Litchain's default does not create uncontested facts sufficient to support the requested declaration relating to the return of the utility deposit. Moreover, due to the claims and defenses asserted by Gaffney BPW, Blockquarry and Gaffney BPW will continue to litigate the amount of the utility deposit remaining and the party entitled to recover that deposit even if the partial default judgment declaring Blockquarry to be the rightful owner of the Uncontested Amount of the Deposit is entered, leading to the very real possibility that there will be inconsistent court orders upon the final conclusion of this litigation. Therefore, Blockquarry's request for a partial default judgment declaring it to be the rightful owner of the Uncontested Amount of the Deposit must be denied. Due to its default, Litchain will instead have no ability to participate in the defense of Blockquarry's suit as it relates to the utility deposit.

## **CONCLUSION**

In light of the foregoing, Gaffney BPW asks this Court for an order granting in part, and denying in part, Blockquarry's Motion for Partial Default Judgment Against Defendant Litchain Corp. This Court must deny Blockquarry's motion to the extent it seeks a declaration that Blockquarry is the rightful owner of the Uncontested Amount of the Deposit. Blockquarry's request for a partial default judgment as to the remaining declarations should be granted. Gaffney BPW will submit a proposed order consistent with this response to the Court and opposing counsel.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POPE FLYNN, LLC |
| October 11, 2023 | By:  /s/ Virginia P. Bozeman <br> Virginia P. Bozeman (Fed. Bar No. 13476) <br> Lawrence E. Flynn III (Fed. Bar No. 14000) <br> 1411 Gervais Street, Suite 300 <br> Columbia, SC 29201 <br> Phone: (803) 354-4900 <br> Fax: (803) 354-4899 <br> gbozeman@popeflynn.com <br> lflynn@popeflynn.com |
|  | **ATTORNEYS FOR GAFFNEY BPW** |