## DECLARATION OF JINWEI ZHANG

1. My name is Jinwei Zhang, I am over the age of eighteen, and am competent to provide the information provided herein.

2. I am a resident of California. I am a dual citizen of Canada and a permeant resident of United States of America.

3. Crypto Infiniti, LLC ("CI") is a Nevada limited liability company.

4. I am a 10% owner of CI.

5. The other 90% owner of CI is a company incorporated in the Cayman Islands and named Dao Block Limited. The owners of Dao Block Limited are not residents or citizens of South Carolina.

6. CI is in the business of management of miners that is mining for bitcoins.

7. CI entered into a contract with a company named Bit5ive LLC ("Bit5ive") to conduct hosting services for CI.

8. Hosting services means that an entity or person locates a suitable location to place a mining operation and operates and maintains bitcoin miners during their operation. The bitcoin miners are essentially small computer hard drives.

9. Hosting services includes maintaining the bitcoin miners, which includes returning the bitcoin miners to the manufacturer for warranty claims; it also includes maintaining the environment where the bitcoin miners are operating at a certain temperature.

10. Bitcoin mining requires a substantial amount of power usage, and the bitcoin miners are often housed in specially repurposed shipping containers known as "pod units." Due to the amount of power and the closed-in space where the bitcoin miners are located, a lot of heat is

generated in the pod units. Accordingly, hosting services also includes maintaining the ventilation in the pod units.

11.     The hosting services company is paid a fee to do this work. The fees are substantial because they also include payment of the power bills, which are substantial.

12.     Pursuant to CI's hosting services contract with Bit5ive, it deployed bitcoin miners to 150 Hyatt Street, Gaffney, South Carolina (the "Gaffney Site").

13.     CI and Bit5ive originally planned for Bit5ive to provide hosting activities in LaFayette, Georgia, but that agreement was later amended to include the Gaffney Site and an unrelated site located in Oklahoma.

14.     At one point during the contract, CI had approximately 1500 bitcoin miners that were hosted at the Gaffney Site.

15.     Due to the Gaffney Site's power limitations, Bit5ive transferred approximately 874 of its bitcoin miners to a different location. This resulted in CI retaining between 560-577 bitcoin miners at the Gaffney Site.

16.     CI purchased and owns two pod units that were located at the Gaffney Site.

17.     As noted above, pod units are shipping containers that have been repurposed to house bitcoin miners.

18.     At the time that the Gaffney Site was padlocked, CI had between 560-577 bitcoin miners and the two pod units located at the Gaffney Site (the "CI Personal Property).

19.     The CI Personal Property located at the Gaffney Site is worth approximately $3,531,200.

20.     CI now understands, upon information and belief, that at the Gaffney Site, Bit5ive subcontracted certain of its hosting obligations to Defendant Litchain Corp ("Litchain").

21. CI did not understand, at the time that the Gaffney Site was active, that Bit5ive had subcontracted with Litchain.

22. CI understands that it was not the only company with bitcoin miners located at the Gaffney Site. Other companies, similarly situated to CI, contracted with Bit5ive to host their bitcoin miners.

23. Plaintiff/Counterclaim Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc ("Blockquarry") is one of the other company's similarly situated to CI.

24. After the lawsuit was initiated, CI and Bit5ive corresponded by email on April 14, 2023, regarding CI's miners located at the Gaffney Site. A copy of the email correspondence between the two companies is attached as *Exhibit A*.

25. Furthermore, the email that is *Exhibit A* states that CI is the owner of two of the pod units located at the Gaffney Site.

26. CI and Bit5ive also corresponded by email on November 14, 2023, to confirm the serial numbers for CI's bitcoin miners located at the Gaffney Site. The individual from CI with whom Bit5ive corresponded is named Keze Li. Ms. Li works for CI. A copy of the email correspondence is attached as *Exhibit B*.

27. The email that is *Exhibit B* contains an excel spreadsheet. The excel spreadsheet lists bitcoin miners owned by CI. This spreadsheet also notes that the bitcoin miners are located in pods 10 and 11.

28. Pods 10 and 11 are the pod units owned by CI.

29. The spreadsheet located at *Exhibit B* is the same spreadsheet from the affidavit of Donnie L. Hardin, which is located at ECF No. 24-4.

30. Specifically, the serial numbers identified on the spreadsheet that Bit5ive provided to CI regarding some of its bitcoin miners located at the Gaffney Site, **Exhibit B**, match the spreadsheet that Mr. Hardin provided in his affidavit located at pages 48-59. ECF No. 24-4, pp. 48-59.

31. The only difference between these two spreadsheets is that in the one provided in Mr. Hardin's affidavit, there is a notation in the top-right corner that says Blockquarry.

32. It is my understanding that the Blockquarry reference on the Hardin spreadsheet is a reference to Plaintiff/Counterclaim Defendant Bockquarry.

33. Blockquarry does not own the bitcoin miners identified on the above referenced spreadsheets. Those bitcoin miners and the two pod units are owned by CI—that is, they are the CI Personal Property.

34. Further evidence of ownership of some of the CI Personal Property is established by a direct shipment invoice from Bitchain Technologies Limited ("Bitmain") to the Gaffney Site. This invoice is attached as **Exhibit C**.

35. The invoice that is **Exhibit C** provides that 400 bitcoin miners were direct shipped by Bitmain to "154 Hyatt Street, Gaffney South [C]arolina, United States, 29341."

36. On the invoice that is **Exhibit C**, the "BILLING ADDRESS" states "BILL TO: DAO BLOCKCHAIN PTE. LTD."

37. Dao Blockchain PTE LTD. is owned, through an intermediary entity, by Dao Block Limited, the Cayman Island entity noted above that is also the 90% owner of CI.

38. Dao Blockchain PTE LTD. purchased and direct shipped 648 bitcoin miners to the location in LaFayette, Georgia, for the benefit of CI and in furtherance of CI's hosting agreement with Bit5ive. Those invoices are attached as **Exhibit D**.

39. The ***Exhibit D*** invoices note that the "CONSIGNEE" is to an individual named "Andrea Siles." Andrea Siles was the Chief Customer Officer / Director of Operations for Bit5ive, as shown on the emails at ***Exhibits A*** and ***B***.

40. After the lawsuit was initiated, CI remained in contact with Bit5ive regarding the status of the CI Personal Property. Bit5ive assured CI that it (Bit5ive) would stay on top of the CI Personal Property and secure its ultimate return.

41. CI noted the Court's April 7, 2023, Text Order admonishing the litigants that, "any party that engages in spoliation of evidence or waste of the personal property at issue in this action, or otherwise dissipates such personal property, tangible or intangible, pending an order of this court does so at its own peril and the court reserves the right to sanction any such conduct."

42. CI also corresponded by email on May 8, 2023, with Blockquarry regarding CI's Personal Property. A copy of the email correspondence is attached as ***Exhibit E***. The ***Exhibit E*** email correspondence makes clear that CI gave notice to Blockquarry of its ownership of the personal property at the Gaffney Site.

43. CI sent an agent to the Gaffney Site in July of 2023 to physically inspect the status of the site and to confirm that it appeared consistent with the representations made by the litigants on the docket. At that time, the CI agent confirmed that the Gaffney Site was locked.

44. CI continued to keep in contact with Bit5ive, thereafter.

45. Beginning in and around December of 2023, Bit5ive stopped corresponding with CI.

46. On January 12, 2024, in a public filing, Blockquarry stated that, "[i]t is undisputed Blockquarry was permitted to reenter the Premises [that is, the Gaffney Site], and, on or about

November 17, it removed the Bitcoin mining equipment with the authorization of the Utility [that is, Gaffney]." (ECF No. 88, p.5).

47. In the same filing, Blockquarry also suggested that the publicly filed inventories of the property were incorrect. *Id.*

48. The January 12, 2024, statements made by Blockquarry in the public filing were news to CI. The information found in these statements was not known to CI prior to the public filings.

49. Based on the above, CI determined that it had to seek leave of the Court to intervene in order to protect its property interests.

50. Thereafter, CI worked to hire South Carolina counsel.

51. Upon information and belief, Blockquarry has asserted or alleged that it has an ownership or possessory interest in the CI Personal Property. As a result, Blockquarry does not adequately represent CI's interest in the property that is the subject of the action.

52. Indeed, Blockquarry, upon information and belief, is adverse to CI with respect to CI's interest in the property that is the subject of the action.

53. Defendant/Crossclaim Defendant Litchain Corp. has failed to appear in the action to defend and, therefore, it will not adequately represent CI's interest in the property that is the subject of the action.

54. Gaffney Board of Public Works has live claims for interpleader and declaratory judgment as to the ownership of the property that is the subject of the action. Therefore, it will not adequately represent CI's interest in the property that is the subject of the action.

55. Based on the status of the parties and the action, only CI can adequately represent its interest in the property that is the subject of the action by intervening as a Crossclaim Defendant

and answering Gaffney's crossclaim/counterclaim for interpleader and declaratory judgment related to the property that is the subject of the action.

I, **Jinwei Zhang**, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March __5_, 2024.

_____
Jinwei Zhang

March _5__, 2024