IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Litchain Corp. and Gaffney Board of Public Works, <br><br> Defendants. | C/A No.: 7:23-cv-01427-TMC |
| Gaffney Board of Public Works, <br><br> Defendant/Counter- and Cross-Claimant, <br><br> v. <br><br> Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br> Counterclaim Defendant, <br><br> and <br><br> Litchain Corp., <br><br> Defendant/Crossclaim-Defendant. | **BLOCKQUARRY'S RESPONSE IN OPPOSITION TO MOTION TO INTERVENE BY CRYPTO INFINITI** |

Plaintiff/Crossclaim-Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry") opposes the motion to intervene filed by proposed intervenor Crypto Infiniti, LLC ("Movant") as follows. (ECF No. 94, "Motion".)

**INTRODUCTION**

According to Movant, it has hidden in the shadow of this case for nearly a year and allowed others to bear the expense of federal litigation. During that time, Blockquarry and

Defendant/Counter- and Cross-Claimant Gaffney Board of Public Works ("Gaffney BPW") achieved a default against the wrongdoer in this case, Defendant/Crossclaim-Defendant Litchain Corp. ("Litchain"), and managed to resolve their respective differences—in part, so the Court can clear this matter from its docket. Now, on the 99th yard line—and with Litchain out of the picture—Movant finally decides to interject itself and interfere with a touchdown. The Court should not permit intervention in this posture, and it should deny the Motion as woefully untimely and otherwise failing to meet the standard under Rule 24.

## BACKGROUND

### A. The Pleading

Blockquarry is a publicly traded Bitcoin mining developer. It is undisputed that the company occupied and maintained a Bitcoin mining operation on real property owned by Gaffney BPW, located in Gaffney, South Carolina at address 150 Hyatt Street ("Premises"), and that Gaffney BPW is a municipal electric utility that served the Premises.

Blockquarry's occupation of the Premises was pursuant to a purported sublease made by Blockquarry and Litchain. Blockquarry filed this action seeking a declaration that: 1) the purported sublease of the Premises was unlawful and unenforceable, 2) Blockquarry is entitled to return of the deposit it paid to Gaffney BPW for electric service on the Premises, 3) Blockquarry was entitled to return of personal property maintained on the Premises for Bitcoin mining, and 4) Litchain's purported claims to the contrary were untruthful and unlawful. (*See, generally*, ECF No. 1, "Compl.")

### B. The Motion

Crypto Infiniti, LLC moved to intervene in the case—by right, under Rule 24(a)(2), Federal Rules of Civil Procedure—for the purpose of answering and defending two counter/crossclaims

asserted by Gaffney BPW. (Mot. 1, 5.) Specifically, Movant wishes to be heard on Counts III and IV for interpleader of certain cryptocurrency mining equipment and for declaratory relief relative to refunding certain electrical deposits and ownership of the same cryptocurrency mining equipment (Count IV). (Mot. *passim*; ECF No. 23 p. 34-38 [Gaffney BPW's amended complaint].) Following the filing of the Motion, Gaffney BPW dismissed its cause of action for interpleader. (ECF No. 95.)

### C.     The Posture

The relative posture of this case, as it relates to the Motion, is discussed in detail below. Blockquarry notes at the outset, however, that all affirmative relief plead in this case will be adjudicated by the Court, upon the Court's issuance of the jointly proposed consent order on the motions for default judgment sought by Blockquarry and Gaffney BPW against Litchain. (ECF No. 91 p. 2.) This proposed consent order was delivered to the Court by email on February 1, 2024 before Movant filed the Motion ("Joint Proposed Consent Order"). All other affirmative relief in the case was disposed of by voluntary dismissal. (ECF No. 73, 95, and 101.)

## ARGUMENT

This Court should deny the Motion because it is woefully untimely and will cause substantial prejudice, and it does not otherwise meet the standard under Rule 24. Further, there is no interpleader action to intervene in because it was dismissed, and there is no active case to intervene in, at all, if the Court issues the Joint Proposed Consent Order.

> **A.     THE MOTION SHOULD BE DENIED BECAUSE IT IS WOEFULLY UNTIMELY AND PREJUDICIAL AND BECAUSE MOVANT MAY PROTECT ITS PURPORTED INTEREST IN THE ABSENCE OF INTERVENTION.**
>
> *Applicants to intervene as of right <u>must</u> meet all four of the following requirements*: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

*Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (affirming district court's denial of intervention on ground of untimeliness) (emphasis added).

This *Houston*-Rule 24 standard is analyzed below and weighs heavily in favor of denying intervention because the Motion is woefully untimely and prejudicial and because Movant does not require the instant case to litigate its purported claims (given the relief sought). Any one of these findings is dispositive of intervention. *See id.*

Blockquarry elects *not* to address the second and fourth elements of the *Houston*-Rule 24 standard. Movant stated a purported interest in the subject matter of this case,[1] and Blockquarry concedes it does not represent Movant's interests (adequately or otherwise).

---

[1] Blockquarry disputes Movant's claim to ownership of mining *containers* (or "pods"). (*See* ECF No. 94-2 ¶ 28 [declaration in support of Motion, "<u>Decl.</u>"].) The facts continue to develop with respect to Movant's claim to a possessory interest in Bitcoin *miners*. Blockquarry stated in a recent filing that it learned exhibits attached to an affidavit filed in the case by Gaffney BPW (ECF No. 26-1) "contain[] critical inaccuracies that require clarification" (ECF No. 88 p. 2). *Additional* inaccuracies have been identified since the filing of the Motion. Fulsome discovery *may* reveal Blockquarry and/or Movant have a possessory interest in the miners claimed by Movant. Blockquarry notes, however: 1) Movant did *not* allege it had a hosting agreement with Blockquarry—because Movant did not, 2) Movant did *not* attach its purported hosting agreement relative to the Premises, at all (*see* Decl. ¶ 12), and 3) Movant's purported invoices show some of the miners claimed were delivered to a different premises altogether (ECF No. 94-6).

4

    **1.**    **The motion is woefully untimely and prejudicial, and Movant's justification for its delay is counterfactual.**

Timeliness of the motion to intervene is a "cardinal consideration[.]" *Id.* at 838 (citing *Brink v. DaLesio*, 667 F.2d 420 (4th Cir. 1981), *opinion modified and superseded on denial of reh'g*, (4th Cir. Jan. 19, 1982). "If a motion to intervene is untimely, it 'must be denied.'" *Intown Properties Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 169 (4th Cir. 2001). "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (citing *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) and stating the opinion was reversed on other grounds in *Devlin v. Scardelletti*, 536 U.S. 1 (2002)). "As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983).

> In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess *three factors*: *first*, how far the underlying suit has progressed; *second*, the prejudice any resulting delay might cause the other parties; and *third*, why the movant was tardy in filing its motion.

*Alt*, 758 F.3d at 591 (emphasis added). In *Alt*, the Fourth Circuit upheld the district court's denial of a motion to intervene by a nonprofit company in an EPA enforcement proceeding because it was untimely. *Id.* at 589. The Court's logic follows.

- *As to the first element*, the Court found the suit "had already reached a relatively advanced stage" because: 1) "[s]everal months of settlement negotiations had transpired[,]" 2) motions were briefed and ruled upon, 3) the case had been stayed once, and 4) the Court's scheduling order had been extended. *Id.* at 591.

- *As to the second element*, the Court noted intervention would cause delay and gave deference to the district court's finding that the motion was "'too little, and too late.'" *Id.*

- *As to the third element*, the Court noted the movant "candidly acknowledges that it had closely monitored the proceedings" and found "[s]uch deliberate forbearance understandably engenders little sympathy." *Id.* (citing *Moten v. Bricklayers, Masons, & Plasterers, Intern. Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) for the proposition that denying intervention was appropriate where it "was [an] informed and tactical choice").

As applied, here, the *Alt* factors support denying the Motion. Each factor is discussed below.

### a)     The case is in a highly advanced stage.

Movant seeks to intervene nearly one year following Blockquarry filing its initial pleading (334 days), and the Court's only scheduling order is so far beyond its prime that the Court could have already called this case for trial. (*See* ECF No. 31.)

Moreover, just as in the *Alt* opinion, here, Blockquarry and Gaffney BPW:

- engaged in several month of settlement negotiations (*see* ECF No. 69 [Blockquarry and Gaffney BPW's joint motion to stay pending settlement]);

- extensively opposed and briefed motions (*see* ECF No. 7 [Blockquarry's motion for temporary restraining order and preliminary injunction], ECF No. 36 [Blockquarry's motion for service by publication], ECF No. 42 [Gaffney BPW's motion for interpleader], ECF No. 51 [Gaffney BPW's motion for service by publication], ECF No. 63 [Blockquarry's motion for default judgment], ECF No. 84 [Gaffney BPW's motion for partial default judgment]); and

- requested and were granted a stay pending settlement negotiations (*see* ECF No. 69 [Blockquarry and Gaffney BPW's joint motion to stay pending negotiations] and ECF No. 71 [granting the same]).

6

The Motion utterly fails to atone for Blockquarry and Gaffney BPW's exhaustive effort in this case. Movant's proffer on this point is, merely, that "who is the rightful owner of the property" has yet to be determined. (Mot. 6.) This pithy statement does *not* address "how far the underlying suit has progressed." *See Alt,* 758 F.3d at 591. That is because the suit has progressed to a highly advanced stage that should preclude intervention. In fact, all that remains to terminate all affirmative relief in the case, is for the Court to enter the Joint Proposed Consent Order (that Blockquarry and Gaffney BPW jointly submitted on February 1, 2024). (*See,* ECF No. 95 [Gaffney BPW's notice of dismissal] and ECF No. 101 [Blockquarry's notice of dismissal], both stating the same.) These voluntary dismissals of Blockquarry and Gaffney BPW's respective claims were *not* aberrations made-for opposing Movant's intervention. They were always contemplated by the parties—and as early as September 27, 2023. (*See, e.g.*, ECF No. 63 fn. 1 [Blockquarry's motion for default judgment], stating, "If the Court grants the instant motion, in full, [Blockquarry] plans to file a voluntary dismissal without prejudice as to its remaining claims (*i.e.*, Counts 4 and 5) against Litchain.")

Moreover, it would be highly inequitable for Movant—now, after sitting on its rights—to avail itself of all this work by Blockquarry and Gaffney BPW to, among other things, achieve a default against Litchain. (*See supra* and ECF No. 59 and 76 [granting Clerk's defaults against Litchain]). Had Blockquarry and Gaffney BPW not being diligent*, Litchain would still have a competing claim for the real property that Movant seeks here*. One of the primary litigation goals of Blockquarry was to extinguish Litchain's purported interest in the very same property. (*Compare* ECF No. 15 p. 32 ¶ 33 [Gaffney BPW's counterclaim], stating, "Litchain . . . demanded the return of the Cryptocurrency Mining Equipment" *with* ECF No. 63 p. 4 [Blockquarry's motion for default judgment], requesting declaratory relief extinguishing Litchain's purported interest.)

7

b)     Intervention will cause considerable delay and prejudice.

*The property that Movant claims an interest in is no longer on the Premises nor in the control of Gaffney BPW*. (*See* ECF No. 88 p. 6, ECF No. 88-1 p. 1.) And Blockquarry and Gaffney BPW dismissed their respective claims against each other. (ECF No. 73.) By seeking interpleader of the property, the Motion seeks to undue the past—nothing could possibly be more prejudicial to Blockquarry and Gaffney BPW than that. Had Movant timely participated in this proceeding, perhaps it could have influenced past events. The Court should not permit Movant to do so now. It is simply "too little, too late"—as criticized by *Alt*. *See infra* p. 6.

Moreover, Blockquarry and Movant appear headed toward litigation independent of Movant's attempt to intervene. Blockquarry intends to assert claims against Movant.[2] While additional litigation appears inevitable, it should happen elsewhere, for reasons including that Blockquarry will require considerable discovery and potentially a trial. *See, Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (affirming the district court's denial of intervention, in part, because "The intervention motion, if granted, would likely have required substantial additional litigation."). The Court's scheduling order adds additional complexity to the impending Blockquarry-Movant fight, as every deadline in the schedule expired, including the deadline for amended pleadings and additional discovery. (ECF No. 31.) If the Court elects not amend its

---

[2] Movant admits it maintained and operated Bitcoin miners on the Premises, and that the hosting company is paid a fee for its services in such circumstances. (Decl. ¶¶ 11-15.) Blockquarry received no such fee from Movant *despite paying Gaffney BPW for electricity and rent on the Premises*, and Movant does *not* allege the same (because it cannot). (*See* ECF No. 7-2 ¶¶ 8-11 [declaration in support of preliminary injunction], stating: 1) Blockquarry funded a $1.3 million deposit for the Premises, 2) Blockquarry paid over $2.2 million in fees for electricity, and 3) Blockquarry paid for rent on the Premises.) Movant also does *not* allege it paid Gaffney BPW for electricity or rent (because it cannot).

8

scheduling order, Blockquarry will not be able to assert its claims in this case. That is, indeed, deep prejudice.

    c)    <u>Movant's justification for its woefully untimeliness is insufficient and counterfactual.</u>

Inexplicably, Movant admits it "monitored the litigation since its inception." (Mot. 3.) The Court may conclude this fact, alone, is dispositive of timeliness. *See* Alt, 758 F.3d at 591. In *Alt*, the Court stated:

> [The moving party] candidly acknowledges that it had closely monitored the proceedings in [the] lawsuit and made a strategic decision not to devote its "limited resources" to the matter at an earlier stage, believing the court would [dismiss the case]. Stated plainly, [the moving party] admits that it gambled and lost in the execution of its litigation strategy.

*Id.* This is exactly the case presented here. It appears Movant intended to have Blockquarry and Gaffney BPW litigate its case for it, at great expense, and then to take its cut when the goose was cooked. The Court should hold this a losing strategy and deny the Motion.

If the Court wishes to examine Movant's explicit justification, it should reach the same result. Movant's sole reason for its decision to "intervene at this time" is: 1) because "it is concerned that not doing so will result in a loss of its ownership in the subject property[,]" and 2) because it learned, "for the first time"—by way of a January 12, 2024 filing in the docket (ECF No. 88)—that a) inventories of the property were incorrect and b) the related property was removed from the Premises. The following facts show Movant should have been "concerned" and should have protected its interest *long before* the January 12, 2024 filing by Blockquarry and *long before* the March 6, 2024 motion to intervene.

- Movant knew or should have known Blockquarry claimed some interest[3] in the property by way of Blockquarry's complaint and emergency motion for temporary restraining order and preliminary injunction filed on April 7 and 10, 2023, respectively. (*See* Compl., requesting a declaration that Blockquarry "is the rightful owner of its personal property on the Premises.")

- Movant states, on May 8, 2023, it received: 1) an email from Blockquarry, stating, "We have never been able to get proper accounting for those Pods you were being hosted in[]" and 2) another email from Blockquarry demanding "paid receipts for invoices for the months power was provided." (Decl. ¶ 42.)[4] Movant knew or should have known its rights were implicated or challenged by these emails.

- Movant knew or should have known others claimed an interest in the property by way of Gaffney BPW's crossclaims against Litchain, filed on May 1, 2023. (*See* ECF No. 15 p. 32 ¶ 33 [Gaffney BPW's counterclaim], stating, "Litchain . . . demanded the return of the Cryptocurrency Mining Equipment.")

- Movant admits it knew Blockquarry[5] and other third parties claimed an interest in Bitcoin miners on the Premises no later than May 24, 2023, when Gaffney BPW filed an affidavit averring to certain ownership of personal property on the Premises, ECF No. 24-4. (Mot. 7.)

Movant does not and cannot explain why it was not "concerned" at these points in time, and that is fatal to intervention. *See, e.g., S. Bend Cmty. Sch. Corp.*, 710 F.2d at 39 (requiring intervention at the time the movant knows or has reason to know his interests might be adversely affected). Here, as in *Alt*, Movants "deliberate forbearance . . . engenders little sympathy." *Alt*, 758 F.3d at 591.

---

[3] Blockquarry's interest was developing at the time, and it continues to develop. Any references to Blockquarry's interest in the property at issue is subject to and incorporates the content of *infra* fn. 1.

[4] The emails are attached to the Declaration. (ECF No. 94-7).

[5] *See infra* fn. 3.

In sum, the Motion is woefully untimely and prejudicial, and Movant's poor justification falls way short of saving it.  This case is at its conclusion, and Movant should not be permitted to intervene when all that remains is the Court's issuance of the Joint Proposed Consent Order.  *See Alt*, 758 F.3d at 591 (4th Cir. 2014) ("The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.").

    **2.**    **Movant may protect its claimed interest in the absence of intervention.**

Movant offers two reasons to suggest denial of the Motion will impair its ability to protect its claimed interest: *first*, because the claim could be precluded by res judicata, and *second*, because of the Court's text order denying Blockquarry's motion for temporary restraining order and preliminary injunction.  (Mot. 8.)  Neither reason holds water.

Movant argues future litigation over its claimed interests will be barred by res judicata because the United States Supreme Court has recognized an exception to the rule of nonparty preclusion based on a "'substantive legal relationship[s]' between the person to be bound and a party to the judgment."  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Even if such relationship exists here and the exception applies, the Court need not reach this argument.  The Joint Proposed Consent Order seeks *only* a declaration that *Litchain* is *not* the owner of personal property on the Premises.  (ECF No. 91 p. 2.)  It does not resolve the claimed interests of others like Blockquarry or Movant.  Curiously, Movant acknowledges this in its Motion.  (Mot. 5-6.)

The second reason, if cognizable at all, can be disposed of even more easily.  The Court's text order addresses "litigants" and "parties."  Movant is neither.  Therefore, the text order does not apply to Movant.  The remainder of the Motion on this score complains Movant may have to hire experts and spend money.  (Mot. 9.)  These are inherent litigation risks, not the basis to grant intervention.

**B.     THE MOTION SHOULD BE DENIED BECAUSE THERE IS NO ACTIVE CASE TO INTERVENE IN.**

"It is well-settled law that 'intervention presupposes pendency of an action in a court of competent jurisdiction.'" *Moore*, 193 F.3d at 840 (4th Cir. 1999) (affirming a district court's denial of intervention, in part, because the motion was filed after the time for appeal ran on a judgment in the case).

Applied here, there is no action for Movant to intervene in after the Court enters the Joint Proposed Consent Order. Moreover, there is no interpleader action to intervene in at all. It was dismissed by Gaffney BPW. (ECF No. 95.)

## **CONCLUSION**

This Court should deny Movant intervention, consistent with this response.

Respectfully submitted,

| | |
|---|---|
| March 20, 2024 | FOX ROTHSCHILD LLP |
| | 2 W. Washington Street<br>Suite 1100<br>Greenville, SC 29601<br>Tel:   864.751.7600 |
| Greenville, South Carolina | */s/R. Taylor Speer*<br>R. Taylor Speer<br>Federal ID# 12267<br>tspeer@foxrothschild.com |
| 156492047 | *Attorneys for Plaintiff Blockquarry Corp. f/k/a ISW Holdings, Inc.* |