AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

| | |
|---|---|
| Bitmain Technologies Georgia Limited, | ) |
| | ) |
| | ) |
| (Intervenor-Plaintiff) | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Blockquarry Corp. f/k/a ISW Holdings, Inc. | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.  7:23-cv-01427-TMC

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  R. Taylor Speer
Fox Rothschild LLP
2 West Washington Street
Greenville, SC  29601

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Paul T. Collins
Nelson Mullins Riley & Scarborough LLP
P. O. Box 11070
Columbia, SC  29211

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  7:23-cv-01427-TMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| Bitmain Technologies Georgia Limited,    ) | Civil Action No. 7:23-cv-01427-TMC |
|               ) | |
|     Intervenor-Plaintiff   ) | |
|               ) | |
| vs.              ) | **COMPLAINT** |
|               ) | |
| Blockquarry Corp. f/k/a ISW Holdings, Inc.,   ) | |
|               ) | |
|     Defendant        ) | |
|               ) | |
|               ) | |

Intervenor-Plaintiff Bitmain Technologies Georgia Limited, ("Bitmain"), by its undersigned attorneys, would respectfully show unto this Court as follows:

**PARTIES AND JURISDICTION**

1.     Bitmain is a corporation incorporated under the laws of the State of Georgia.

2.     Defendant Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry") is, upon information and belief, a corporation organized and existing pursuant to the laws of Nevada that is authorized to transact business in the state of South Carolina and maintains a principal place of business in Texas.

3.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

4.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Gaffney, Cherokee County, South Carolina.

## **FACTUAL BACKGROUND**

### **Bitcoin Mining**

5.      Bitcoin is a crypto-asset that uses cryptographic principles to allow owners of bitcoin to securely transact with each other and to prove ownership of bitcoin via the bitcoin blockchain, a decentralized public ledger.

6.      No single organization controls bitcoin.  Rather, the bitcoin crypto-protocol maintains the bitcoin blockchain and provides for new bitcoins to enter the economy through a mechanism known as "mining."  Individuals "mine" bitcoin by using sophisticated computer programs to perform complex, resource-intensive computations which validate past bitcoin transactions.  Once the transactions are validated, they are added to the bitcoin blockchain.

7.      The mining process is competitive.  The first miner to validate a block of transactions is rewarded with an amount of bitcoin, while other miners get nothing for that block.  Blocks are mined on average once every ten minutes.  The current reward for validating a block of transactions is 6.25 bitcoin.  Bitcoin miners can either sell the bitcoin for a fiat current, such as U.S. dollars, or hold the bitcoin as an investment.  At the current price of bitcoin, the reward for mining a single block of bitcoin is worth approximately $400,000.

8.      Because the computations required to mine bitcoin are highly complex, miners typically use machines equipped with application-specific integrated circuit ("ASIC") chips to stay competitive.  These machines are custom-built to efficiently mine bitcoin and can cost thousands of dollars.  To increase their profitability, miners often operate hundreds or even thousands of ASIC miners at a time.

9.      Bitcoin mining, especially at a commercial scale, consumes significant amounts of electric power.  Without a reliable source of electric power, ASIC miners cannot be put to a productive use.

10.      ASIC miners are sophisticated electronic devices.  As such, they are vulnerable to damage from a variety of sources, such as water and moisture, heat, dust and debris, static electricity, and physical injury.  To mitigate the risk of damage, ASIC miners are typically stored in secured, climate-controlled data centers.

### The Service Framework Agreement Between Bitmain and Blockquarry

11.      Bitmain Technologies Ltd, an affiliate of Bitmain, is an industry-leading developer and manufacturer of high-quality ASIC miners.  Although Bitmain's affiliates frequently sell ASIC miners to individuals and organizations seeking to mine bitcoin, Bitmain also uses its own ASIC miners to mine bitcoin.

12.      On June 21, 2021, Bitmain and Blockquarry entered into a Service Framework Agreement (the "First SFA").  Under the First SFA, Blockquarry was required to provision and operate a data center facility, at which Bitmain would use 4,513 ASIC servers (the "Mining Servers") to mine bitcoin.

13.      Under the First SFA, Blockquarry was required to provide Hosting Services to Bitmain at the Data Center Facility.

14.      The First SFA did not transfer ownership of the Mining Servers to Blockquarry.

15.      Because Blockquarry did not itself own a facility that satisfied the requirements of the SFA, Blockquarry subleased a data center at 154 Hyatt Street, Gaffney, SC 29341 (the "Gaffney Data Center Facility") from Litchain Corp. ("Litchain").  Upon information and belief, Litchain leased the Gaffney Data Center Facility from its owner, the Gaffney Board of Public Works ("Gaffney BPW").

16.     All of Bitmain's dealings regarding the hosting of the Mining Servers were with Blockquarry.  Bitmain did not contract directly with Litchain or Gaffney BPW.

17.     Bitmain delivered the Mining Servers to the Gaffney Data Center Facility between February 7, 2022 and April 11, 2022.  When Blockquarry took custody of the Mining Servers, Blockquarry did not contest Bitmain's ownership of the Mining Servers.

18.     On September 1, 2022, Bitmain and Blockquarry terminated the First SFA and entered into a new agreement with substantially similar terms, the Second Service Framework Agreement ("Second SFA").

19.     The Second SFA contains a dispute resolution clause requiring "[a]ll disputes arising under this Agreement shall be submitted to arbitration in Houston, Texas before a single arbitrator of the American Arbitration Association ("AAA").

20.     Blockquarry operated the Gaffney Data Center facility through January 2023.

21.     In January 2023, Gaffney BPW stopped providing electricity to the Gaffney Data Center Facility due to a dispute between Gaffney BPW and Litchain, which Bitmain understands related to allegedly unpaid rent and electric bills.

22.     The Mining Servers were still fully functional and undamaged when Gaffney BPW shut off electric power to the Data Center Facility in January 2023.

23.     As a result of this dispute, Gaffney BPW padlocked and blocked physical access to the Gaffney Data Center Facility on February 16, 2023, preventing Bitmain from removing its Mining Servers, which were then non-functional due to the cessation in power services to the facility.

24.     Upon information and belief, at the time Gaffney BPW blocked physical access to the Gaffney Data Center Facility, the Mining Servers were undamaged and able to be powered on.

**Blockquarry Moves the Mining Servers to Missouri Over Bitmain's Objection**

25.     On April 7, 2023, Blockquarry brought this litigation against Gaffney BPW and Litchain seeking monetary damages, injunctive relief, and declaratory judgment.

26.     On April 10, 2023, Blockquarry moved for a temporary restraining order and preliminary injunction seeking the immediate return of a deposit Blockquarry paid to Gaffney BPW and the return of property at the Gaffney Data Center Facility.

27.     On April 12, 2023, the Court denied Blockquarry's request for a temporary restraining order.  In its April 12, 2023 Order, the Court "admonishe[d] all litigants that any party that engages in spoliation of evidence or waste of the personal property at issue in this action, or otherwise dissipates such personal property, tangible or intangible, pending an order of this court does so at its own peril and the court reserves the right to sanction any such conduct."

28.     Throughout this litigation, Blockquarry has represented to the Court that Blockquarry does not itself own the majority of the bitcoin mining servers at the Gaffney Data Center Facility.  Blockquarry's Complaint identified "over 5,000 Bitcoin mining servers" at the facility, of which Blockquarry admitted it was the bailee, a claim Blockquarry repeated in its Motion for a Temporary Restraining Order and Preliminary Injunction, and its Motion for Partial Default Judgment as to Litchain.

29.     Upon information and belief, Blockquarry and Gaffney BPW engaged in settlement negotiations in October 2023.  On October 18, 2023, Taylor Speer, counsel for Blockquarry, informed Bitmain via email that as part of these settlement negotiations Gaffney BPW had agreed to allow Bitmain into the Data Center Facility "for an inspection and to determine the equipment needed to vacate."  Mr. Speer committed to "provid[ing] a plan for distribution [of the Mining Servers] to Bitmain."

5

30.     Blockquarry and Gaffney BPW then signed a secret settlement agreement and stipulated to the dismissal of their claims against each other on November 2, 2023.  (ECF No. 73.) Upon information and belief, the settlement agreement addressed the return of Bitmain's Mining Servers, but the parties did not seek Bitmain's input and have refused to share the agreement with Bitmain.  However, Gaffney BPW's counsel represented to Bitmain that under the terms of this settlement, "the equipment [i.e., the Mining Servers] will be disbursed by Blockquarry to Bitmain by December 19."  (G. Bozeman email of November 20, 2023, attached hereto as Exhibit B.)

31.     Instead of returning the Mining Servers by December 19, 2023, Blockquarry unilaterally decided to remove Bitmain's Mining Servers from the Gaffney Data Center Facility and transport them out of South Carolina.

32.     On November 3, 2023, Mr. Speer informed Bitmain's counsel via phone call that Blockquarry intended to move Bitmain's Mining Servers from the Data Center Facility to a facility in Jackson County, Missouri.

33.     On November 6, 2023, Bitmain's counsel informed Mr. Speer that "Bitmain does not want its machines to be transported to Jackson County, Missouri and demands that it be able to off rack and pack the machines from the Gaffney BPW site.  At minimum Blockquarry must take responsibility for the safety and security of Bitmain's machines if Blockquarry were to transport them."

34.     Despite Bitmain's objections, Mr. Speer informed Bitmain's counsel on November 7, 2023 that Blockquarry had already removed all of Bitmain's Mining Servers from the Gaffney Data Center Facility and was in the process of moving the Mining Servers to an undisclosed location in Jackson County, Missouri.

35.    The same day, Bitmain's counsel emailed Mr. Speer requesting videos and photos of the packing and condition of the machines, the address of the Jackson County facility, the date when the machines will arrive at the Jackson County facility, and Blockquarry's availability for a business meeting.

36.    After removing Bitmain's Mining Servers from the Gaffney Data Center Facility over Bitmain's objections, Blockquarry and its counsel strung Bitmain along for three months, continually promising to return Bitmain's Mining Servers—or at minimum to provide Bitmain with information about the servers—and then reneging on its promises.

37.    On November 9, 2023, Mr. Speer emailed Bitmain's counsel stating that when "the personal property arrives at its intended location, Blockquarry will inventory and test it" and represented that "[w]hen Blockquarry's inspection is complete, I will advise you and your colleagues of the same, and our clients can either agree on a purchase and sale *or Bitmain will be invited to retrieve its property*." (T. Speer email of November 9, 2023, attached hereto as Exhibit D.) (emphasis added)

38.    On November 17, 2023, Mr. Speer emailed Bitmain's counsel stating that the Mining Servers "continue[] in transport" and that the "inventory and testing…will begin early next week." Speer states that he "expect[s] to have something substantive to you by end of next week and potentially early the following week (i.e., week beginning Dec. 4)." Bitmain's counsel again reiterated that Bitmain "does not consent to Blockquarry moving the machines."

39.    Despite repeated promises to inform Bitmain of the location of its Mining Servers, Blockquarry did not disclose the location of the facility to which it had transported Bitmain's Mining Servers until December 19, 2023.

40.     Even though Blockquarry had justified the significant delay in making the Mining Servers available to Bitmain for inspection by saying that it needed to test the Mining Servers, on December 21, 2023 Mr. Speer represented that "Blockquarry has not tested or used Bitmain's servers, and the Premises [at which the Mining Servers were then stored] do not have electric power."

### Bitmain's Mining Servers Have Been Damaged While in Blockquarry's Custody

41.     After concealing the location of Bitmain's Mining Servers for nearly two months, on December 28, 2023, Blockquarry finally allowed Bitmain access to its facility at 29590 Highway U, Crocker, Missouri to inspect the Mining Servers.  Bitmain's inspection revealed missing and damaged Mining Servers.

42.     Although Blockquarry represented that Bitmain's Mining Servers were stored in 16 containers, Bitmain could only inspect 12 of the 16 containers, because four of the containers were locked and unable to be opened by Blockquarry personnel.  Bitmain calculated a total of 3,021 Mining Servers, leaving 1,492 Mining Servers missing or locked in the four containers to which Blockquarry did not have access.

43.     Bitmain identified water leakage in the containers, which, upon information and belief, caused water damage to Mining Servers that were off-racked and placed on the floor of the containers.

44.     Bitmain identified Mining Servers with rusted fans and, upon disassembling three Mining Servers for a more thorough inspections, Bitmain identified internal rust, including rust on the hashrate board, a critical component of a Mining Server.

45.     Bitmain's discussions with a potential purchaser of the Mining Servers also revealed that serial numbers have been removed from approximately 3,000 of the Mining Servers.

8

## Blockquarry Contests Bitmain's Ownership of the Miners

46.     Instead of allowing Bitmain to retrieve its personal property, as it has repeatedly agreed to do, in December 2023 Blockquarry proposed purchasing the Mining Servers from Bitmain. During negotiations regarding the potential purchase of the Mining Servers, Blockquarry for the first time raised doubts that Bitmain owns the Mining Servers.

47.     Contrary to Gaffney BPW's representation that Blockquarry would disburse the Mining Servers to Bitmain by December 19, Blockquarry now refuses to return the Mining Servers to Bitmain "until Bitmain proves ownership."  Blockquarry has refused to accept as proof of ownership an inventory Bitmain provided to Gaffney BPW in May 2023, which Blockquarry has known about since it was provided to Gaffney BPW but only challenges now—and has ignored a purchase order Bitmain provided to Blockquarry demonstrating its ownership of the Mining Servers. Blockquarry has also challenged the inclusion of an inventory of Bitmain's Mining Servers in any order the Court might issue in this litigation.

48.     Even a cursory examination of the chain of custody of the Mining Servers shows the absurdity of Blockquarry's question regarding ownership of the Mining Servers.  Blockquarry took possession of the Mining Servers at the Gaffney Data Center as Bitmain's bailee.  The Mining Servers were operated at the Gaffney Data Center for a time before Gaffney BPW disconnected electrical power and locked the facility.  Once Gaffney BPW unlocked the facility, Blockquarry removed the Mining Servers and transported them to its facility in Missouri.  At all times Blockquarry was either responsible for the Mining Servers as bailee or in direct possession of the Mining Servers.  It strains credulity to suggest that unbeknownst to any of the parties another entity entered the Gaffney Data Center or Blockquarry's Missouri facility and replaced Bitmain's Mining

Servers with its own.  And in the unlikely event that did happen, Blockquarry, as bailee of Bitmain's Mining Servers, would be responsible for the loss.

### Bitmain Initiates Arbitration Against Blockquarry

49.    On March 25, 2024, Bitmain commenced an arbitration against Blockquarry for breach of contract, conversion, trespass to chattels, negligence, and gross negligence.  Bitmain seeks damages in the amount of the net BTC losses due to Blockquarry's breach of the Second FSA and the value of the Mining Servers.  Bitmain also seeks an order requiring Blockquarry to return the Mining Servers.

50.    Bitmain brings this Complaint under AAA Commercial Rule 38, which permits a party to an arbitration to make a request for interim measures to a court without waiving the right to arbitration, and AAA Commercial Rule 54 which allows a party to bring a judicial proceeding relating to the subject matter of the arbitration without waiving its right to arbitration.  For the avoidance of doubt, Bitmain is not seeking any permanent relief from this Court that Bitmain is also seeking in the arbitration.

### FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

51.    Bitmain incorporates the allegations of Paragraphs 1 through 50 above herein by reference.

52.    On or about November 2, 2023, Blockquarry and Gaffney BPW entered into an agreement (the "Settlement Agreement") settling their claims in this litigation.

53.    The Settlement Agreement is a valid and binding contract supported by sufficient and valuable consideration exchanged between the parties.

54.    Upon information and belief, Gaffney BPW has performed in good faith and complied with its obligations under the Settlement Agreement.

55.    Bitmain is a third-party beneficiary who may enforce the Settlement Agreement. Upon information and belief, the Settlement Agreement conferred a direct and substantial benefit on Bitmain by requiring Blockquarry to disburse the Mining Servers to Bitmain by December 19, 2023.

56.    Blockquarry has breached the Settlement Agreement by not disbursing the Mining Servers to Bitmain.

57.    As a direct and proximate cause of Blockquarry's breach, Bitmain has been injured and is entitled to any relief as the Court deems just and proper.

### FOR A SECOND CAUSE OF ACTION
**(Breach of Contract Accompanied by a Fraudulent Act)**

58.    Bitmain incorporates the allegations of Paragraphs 1 through 57 above herein by reference.

59.    The Settlement Agreement is an enforceable contract between Gaffney BPW and Blockquarry.

60.    Bitmain is a third-party beneficiary of the Settlement Agreement with the right to enforce the Settlement Agreement against Blockquarry.

61.    As set forth in greater detail throughout this Complaint and incorporated herein by reference, Blockquarry has breached the Settlement Agreement.

62.    Also as set forth in greater detail through this Complaint, Blockquarry's breaches of the Settlement Agreement were accompanied by separate and distinct fraudulent acts, including but not limited to the following:

        a.    Making fraudulent misrepresentations to Bitmain about its intent to return the Mining Servers to Bitmain after removing the Mining Servers from the Gaffney Data Center Facility;

11

b.   Making fraudulent misrepresentations to Gaffney BPW about its intent to return the Mining Servers to Bitmain after removing the Mining Servers from the Gaffney Data Center Facility;

c.   Making fraudulent misrepresentations to Bitmain regarding the reasons for Blockquarry's delay in returning the Mining Servers, including Blockquarry's intention to test the Mining servers; and

d.   Making fraudulent misrepresentations regarding Bitmain's ownership of the Mining Servers;

63.   Blockquarry's breaches and accompanying misrepresentations were done with fraudulent intent.

64.   The circumstances surrounding Blockquarry's various breaches, explained in greater detail throughout this Complaint, evidence a dishonest design and devious scheme orchestrated in an effort to secure control of the Mining Servers in violation of the Settlement Agreement and South Carolina law.

65.   Bitmain and Gaffney BPW relied on Blockquarry's various misrepresentations.

66.   Blockquarry's fraudulent actions and breaches were willful, reckless, and made in conscious disregard of Bitmain's rights under the Settlement Agreement.

67.   As a direct and proximate result of Blockquarry's fraudulent actions and breaches, Bitmain has been injured and is entitled to any relief as the Court deems just and proper.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Intervenor-Plaintiff Bitmain Technologies Georgia Limited respectfully requests that the Court grant judgment in its favor against Defendant Blockquarry in the form of:

a.   An Order provisionally enjoining Blockquarry from further transferring, selling, damaging or otherwise disposing of the Mining Servers until Bitmain can obtain appropriate relief in its pending arbitration against Blockquarry; and/or

b.   Appropriate relief requiring Blockquarry to comply with the terms of the settlement agreement between Blockquarry and Gaffney BPW; and/or

c.   Bitmain's costs and attorneys' fees in bringing this Complaint; and/or

d.   Any and all other relief that the Court deems just and equitable.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   */s/Paul Collins*
Paul Collins
Federal ID No. 09055
paul.collins@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
803.255.9747

*Attorneys for Plaintiff Bitmain Technologies Georgia Limited*

Columbia, South Carolina
March 27, 2024

13

# Exhibit A

**Farrell, Kaitie**

| | |
|---|---|
| **From:** | Farrell, Kaitie |
| **Sent:** | Monday, November 20, 2023 3:05 PM |
| **To:** | Taylor Speer (TSpeer@foxrothschild.com); 'Ginny Bozeman' |
| **Cc:** | Feinstein, Marc; Pao, William K.; Stutz, Kate |
| **Subject:** | RE: Bitmain Machine Removal |

Thanks Ginny. Taylor, could you please let us know when Blockquarry was given access to the site to remove the machines and when it completed the removal.

Kaitlyn G. Farrell
O: +1-213-430-7869
kfarrell@omm.com

---

**From:** Ginny Bozeman <gbozeman@popeflynn.com>
**Sent:** Monday, November 20, 2023 11:26 AM
**To:** Farrell, Kaitie <kfarrell@omm.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>; Taylor Speer (TSpeer@foxrothschild.com) <TSpeer@foxrothschild.com>
**Subject:** RE: Bitmain Machine Removal

[EXTERNAL MESSAGE]

Kaitie,

Per the confidentiality clause in our release and settlement agreement, all I can tell you is that the equipment will be disbursed by Blockquarry to Bitmain by December 19 and that the coordination of this return must be made through Blockquarry. Taylor Speer, counsel for Blockquarry, is copied on this email so that you can coordinate that return with him.

Thanks,

**Ginny Bozeman**
Senior Counsel

DIRECT: (803) 354-4947
CELL: (901) 299-0667
FAX: (803) 354-4899

popeflynn.com | vCard



1411 Gervais St.
Suite 300
Columbia, SC 29201

**CONFIDENTIAL COMMUNICATION:** The information contained in this message may contain legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this transmission is strictly prohibited. If you have received this communication in error, please notify us by telephone or email immediately and return the original message to us or destroy all printed and electronic copies. Nothing in this transmission is intended to be an electronic signature nor to constitute an agreement of any kind under applicable law unless otherwise expressly indicated. Intentional interception or dissemination of electronic mail not belonging to you may violate federal or state law.

**From:** Farrell, Kaitie <kfarrell@omm.com>
**Sent:** Monday, November 20, 2023 12:53 PM
**To:** Ginny Bozeman <gbozeman@popeflynn.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** Bitmain Machine Removal

Hi Ginny,

Could you please let us know when Blockquarry was given access to the site to remove the machines and when it completed the removal.

Thank you,
Kaitie

## O'Melveny

**Kaitlyn G. Farrell**
kfarrell@omm.com
O: +1-213-430-7869

_____

O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA  90071
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

Exhibit B

**Farrell, Kaitie**

---

| | |
|---|---|
| **From:** | Clifford, Nicholas B. <Nicholas.Clifford@tuckerellis.com> |
| **Sent:** | Tuesday, December 5, 2023 9:36 AM |
| **To:** | Speer, R. Taylor |
| **Cc:** | Feinstein, Marc; Farrell, Kaitie; Pao, William K.; Stutz, Kate |
| **Subject:** | FW: Bitmain's Machines |

[EXTERNAL MESSAGE]

Taylor,

You indicated in the email below that you would have an update on the status of the machines this week.

Please provide us with the following information about Bitmain's machines:

1.      Current location including the name, address, and email address/telephone number of any facility where they are located;
2.      The status of the machines (i.e., in storage, in use, in transit); and
3.      Written confirmation that Blockquarry will not move them again and will turn over custody of the machines to Bitmain immediately.

Thank you,
Nick

**Nicholas Clifford**
Direct: 314-571-4962
Cell: 314-809-7416
Nicholas.clifford@tuckerellis.com

---

**From:** Farrell, Kaitie <kfarrell@omm.com>
**Sent:** Monday, December 4, 2023 5:58 PM
**To:** Clifford, Nicholas B. <Nicholas.Clifford@tuckerellis.com>
**Cc:** Stutz, Kate <kstutz@omm.com>
**Subject:** FW: Bitmain's Machines

<<< EXTERNAL EMAIL >>>

---

**From:** Speer, R. Taylor <TSpeer@foxrothschild.com>
**Sent:** Friday, November 17, 2023 7:07 AM
**To:** Farrell, Kaitie <kfarrell@omm.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** RE: Bitmain's Machines

[EXTERNAL MESSAGE]

Kaitie, the personal property formerly on the Gaffney premises continues in transport. The property is being well cared for in transit. The inventory and testing discussed below will begin early next week. I expect to have something substantive to you by end of next week and potentially early the following week (i.e., week beginning Dec. 4). Best,

**R. Taylor Speer**
Counsel

2 W. Washington Street
Suite 1100
Greenville, SC 29601
☐ (864) 751-7665
☐ (864) 751-7800
☐ tspeer@foxrothschild.com

**Learn about our new brand.**

---

**From:** Speer, R. Taylor
**Sent:** November 9, 2023 1:57 PM
**To:** Farrell, Kaitie <kfarrell@omm.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** RE: Bitmain's Machines

Hi, Kaitie. I would communicate with you verbally if there was a need; there is no need at this time.

As previously discussed, Blockquarry is transporting the personal property formerly on the Gaffney premises to its location in Jackson County, Missouri. This personal property includes the miners owned (or claimed) by Bitmain. When the personal property arrives at its intended location, Blockquarry will inventory and test it—recall there was no electricity available at the Gaffney site. When Blockquarry's inspection is complete, I will advise you and your colleagues of the same, and our clients can either agree on a purchase and sale or Bitmain will be invited to retrieve its property. In that regard, you should expect a communication from me at the end of next week or the beginning of the following week (e.g., Monday, November 20). Until that time, please cease the demands, telephone calls, and emails. I frequently discuss this matter with Blockquarry, and, if there are any relevant intervening updates, I will communicate them to you.

Incidentally, Bitmain has appeared relatively inconsolable during this process. That sentiment is inconsistent with Blockquarry's conduct, which was to invest considerable of time and litigation fees to ensure BPW did not convert Bitmain's personal property. Additional patience is required here.

Best,



**R. Taylor Speer**
Counsel
Greenville, SC
(864) 751-7665
* 827-7665

**From:** Farrell, Kaitie <kfarrell@omm.com>
**Sent:** November 7, 2023 9:03 PM
**To:** Speer, R. Taylor <TSpeer@foxrothschild.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** [EXT] RE: Bitmain's Machines

Taylor,

Bitmain's business team is available Thursday night Beijing time to discuss.

Bitmain requests that Blockquarry immediately send videos and photos showing the package and condition of the machines.  Bitmain also requests that Blockquarry immediately send the specific address of the Jackson County, Missouri facility.

Thank you,
Kaitie

Kaitlyn G. Farrell
O: +1-213-430-7869
kfarrell@omm.com

**From:** Farrell, Kaitie
**Sent:** Tuesday, November 7, 2023 12:22 PM
**To:** 'Speer, R. Taylor' <TSpeer@foxrothschild.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** RE: Bitmain's Machines

Taylor,

As discussed, we are surprised and dismayed to hear that the machines are already in transit.  As we very clearly communicated to you on Monday, Bitmain did not want its machines to be transported to Jackson County, Missouri and requested that Bitmain off rack and pack the machines from the Gaffney BPW site.  Blockquarry had no right to transport the machines from the Gaffney BPW site to Missouri without Bitmain's authorization.  Bitmain will hold Blockquarry liable for any damages resulting from the transport of Bitmain's machines and reserves all rights.

Please let us know immediately when the machines will arrive at the Missouri facility and please provide Blockquarry's availability for a business-to-business meeting to discuss the return of the machines.

Kaitlyn G. Farrell
O: +1-213-430-7869
kfarrell@omm.com

**From:** Farrell, Kaitie
**Sent:** Monday, November 6, 2023 10:30 AM
**To:** 'Speer, R. Taylor' <TSpeer@foxrothschild.com>
**Cc:** Feinstein, Marc <mfeinstein@omm.com>; Pao, William K. <wpao@omm.com>; Stutz, Kate <kstutz@omm.com>
**Subject:** Bitmain's Machines

Hi Taylor,

How does Blockquarry plan to transport the machines to Jackson County?  Will it off-rack and package the machines or will the containers be transported with miners on rack?  Does Blockquarry have proper insurance

3

to cover any potential damage or loss that occurs during transportation?  Due to these potential risks, Bitmain does not want its machines to be transported to Jackson County, Missouri and demands that it be able to off rack and pack the machines from the Gaffney BPW site.  At minimum Blockquarry must take responsibility for the safety and security of Bitmain's machines if Blockquarry were to transport them.  Once Bitmain has possession of the machines the parties can discuss purchasing the machines.

Bitmain would like to set up a business meeting with Blockquarry as soon as possible to arrange the return and purchase of the machines.

Thank you,
Kaitie

## O'Melveny

**Kaitlyn G. Farrell**
kfarrell@omm.com
O: +1-213-430-7869

O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA  90071
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.