**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., ) | Civil Action No. 7:23-cv-01427-TMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Litchain Corp. and Gaffney Board of Public Works, ) | |
| ) | |
| Defendants. ) | |
| ) | **BITMAIN'S MEMORANDUM OF LAW** |
| ) | **IN SUPPORT OF ITS MOTION TO** |
| Gaffney Board of Public Works, ) | **INTERVENE** |
| ) | |
| Defendant and Counter-/Cross-Claimant ) | |
| ) | |
| vs. ) | |
| ) | |
| Blockquarry Corp. f/k/a ISW Holdings, Inc., ) | |
| Counterclaim-Defendant, ) | |
| ) | |
| Counterclaim-Defendant ) | |
| ) | |
| and ) | |
| ) | |
| Litchain Corp. ) | |
| ) | |
| Crossclaim-Defendant ) | |

Bitmain Technologies Georgia Limited ("Bitmain") submits this Memorandum in Support of its Motion to Intervene in the instant litigation. For the reasons discussed below, the Court should allow Bitmain to intervene in this litigation to bring claims against Blockquarry Corp. f/k/a ISW Holdings, Inc. ("Blockquarry") and the Gaffney Board of Public Works ("Gaffney BPW") arising from Gaffney BPW's decision to release Bitmain's property to Blockquarry and Blockquarry's subsequent theft of Bitmain's property.

1

## **PRELIMINARY STATEMENT**

Blockquarry has stolen Bitmain's property. As the Court is aware from prior filings of the existing parties, this litigation involves the use of a data center facility owned by Gaffney BPW (the "Gaffney Data Center Facility") to mine bitcoin. Bitmain is the owner of 4,513 servers used for mining bitcoin (the "Mining Servers") that, until recently, were located at the Gaffney Data Center Facility. Despite Blockquarry's representations that it would coordinate the return of the Mining Servers with Bitmain, Blockquarry has removed Bitmain's Mining Servers from the Gaffney Data Center Facility, over Bitmain's objections and with no legal right to do so, and now holds them at its own facility in Missouri. Hundreds—possibly thousands—of Bitmain's Mining Servers have been damaged or lost during the pendency of this litigation.

Blockquarry is unlawfully detaining the Mining Servers based on the theory that Bitmain does not, in fact, own the Mining Servers—a theory that Blockquarry hatched only recently, after securing release of the Mining Servers from Gaffney BPW with the promise that it would return the Mining Servers to Bitmain. Blockquarry's reversal regarding the ownership of Bitmain's Mining Servers is the culmination of months of chicanery in which Blockquarry has strung Bitmain along with promises to return Bitmain's property only to fabricate new pretexts for withholding them at every turn. This must end.

Bitmain has initiated an arbitration against Blockquarry with the American Arbitration Association ("AAA") pursuant to the parties' agreement to arbitrate claims arising under a hosting services agreement, seeking, *inter alia*, damages for Bitmain's lost Bitcoin ("BTC") profits, the value of the Mining Servers, and the return of the Mining Servers. Bitmain brings this Motion and seeks to intervene under AAA Commercial Rule 38, which permits a party to an arbitration to

2

make a request for interim measures to a court without waiving the right to arbitrate. Bitmain also seeks relief not available to it under its arbitration agreement with Blockquarry.

Bitmain has a right to intervene in this litigation to protect its ownership interest in the Mining Servers. Bitmain has moved expeditiously to intervene after resigning itself to the conclusion that Blockquarry would not adequately protect Bitmain's interest in the Mining Servers and return them to Bitmain. If the Court does not allow Bitmain to intervene, Bitmain will lose valuable protections, such as the ability to protect and preserve the safety and value of the Mining Servers until an arbitrator can award Bitmain permanent relief, to seek sanctions for Blockquarry's waste of the Mining Servers, and to enforce its third-party rights under the settlement agreement between Gaffney BPW and Blockquarry. Moreover, even if the Court finds that Bitmain may not intervene in this litigation as a matter of right under Federal Rule of Civil Procedure 24(a), the Court should permit Bitmain to intervene under the liberal standard of Rule 24(b).

Blockquarry and Gaffney BPW have also violated the Court's April 12 Order to protect Bitmain's property from waste and spoliation. Blockquarry has also failed to comply with the terms of its settlement agreement with Gaffney BPW—and may have entered into the agreement with no intention of complying. And Blockquarry has, for months, promised to return Bitmain's property, only to covertly move the property out of state and repeatedly obstruct Bitmain's rightful recovery of its property. If the Court were not to allow Bitmain to intervene in this lawsuit, it would impede Bitmain's ability to protect its interests in the Mining Servers. Intervention is therefore proper under Rule 24.

**FACTUAL BACKGROUND**

**I.	Bitmain Engages Blockquarry to Operate a Data Center for Bitcoin Mining.**

On June 21, 2021, Bitmain and Blockquarry entered into a Service Framework Agreement (the "First SFA") under which Blockquarry was required to provide and operate a data center facility, at which Bitmain would use the Mining Servers to mine bitcoin. The First SFA required Blockquarry to provide sufficient space and electrical power to operate Bitmain's Mining Servers. Because Blockquarry did not itself own a facility that satisfied the requirements of the First SFA, Blockquarry subleased the Gaffney Data Center Facility from Litchain Corp. ("Litchain"), which had leased the facility from its owner, Gaffney BPW. Between February 7, 2022 and April 11, 2022, the Mining Servers were delivered to the data center facility. On September 1, 2022, Bitmain and Blockquarry terminated the First SFA and entered into a new agreement with substantially similar terms, the Second Service Framework Agreement ("Second SFA").

In January 2023, Gaffney BPW stopped providing electricity to the Gaffney Data Center Facility due to a dispute between Gaffney BPW and Litchain, which Bitmain understands related to allegedly unpaid rent and electric bills. As a result of this dispute, Gaffney BPW padlocked and blocked physical access to the Gaffney Data Center Facility on February 16, 2023, preventing Bitmain from removing its Mining Servers, which were then non-functional due to the cessation in power services to the facility.

**II.	Blockquarry Brings the Current Litigation.**

On April 7, 2023, Blockquarry brought this litigation against Gaffney BPW and Litchain seeking monetary damages, injunctive relief, and declaratory judgment. (ECF No. 1.) On April 10, 2023, Blockquarry moved for a temporary restraining order and preliminary injunction seeking the immediate return of a deposit Blockquarry paid to Gaffney BPW and the return of property at

the Gaffney Data Center Facility. (ECF No. 7.) On April 12, 2023, the Court denied Blockquarry's request for a temporary restraining order. (ECF No. 9.) The majority of the remaining activity in this litigation has dealt with the parties' efforts to locate and serve Litchain, which both parties eventually accomplished by publication by October 2023. (*See, e.g.,* ECF Nos. 27, 36, 37, 51–59, 65–67.)

### III. Blockquarry Removes Bitmain's Mining Servers from the Gaffney Data Center Facility and Transports Them to Missouri Over Bitmain's Objection.

On October 17, 2023, the parties requested a 30-day stay of all litigation deadlines due to ongoing settlement negotiations. (ECF No. 17.) The next day, Taylor Speer, Blockquarry's counsel, committed to "provid[ing] a plan for distribution to Bitmain." (T. Speer email of October 18, 2023, attached hereto as Exhibit A.) Blockquarry and Gaffney BPW then signed a secret settlement agreement and stipulated to the dismissal of their claims against each other on November 2, 2023. (ECF No. 73.) Upon information and belief, the settlement agreement addressed the return of Bitmain's property, but the parties did not seek Bitmain's input and refused to share the agreement with Bitmain. However, Gaffney BPW's counsel represented to Bitmain that under the terms of this settlement, "the equipment [i.e., the Mining Servers] will be disbursed by Blockquarry to Bitmain by December 19." (G. Bozeman email of November 20, 2023, attached hereto as Exhibit B.)

Blockquarry has not made good on this promise. Instead, Blockquarry has moved Bitmain's Mining Servers to a facility in Missouri over Bitmain's repeated objections. Despite promises to inform Bitmain of the location of its Mining Servers, Blockquarry did not even disclose the location of the facility to which it had transported Bitmain's Mining Servers until December 19, 2023.

5

Bitmain has recently become aware that many of its Mining Servers have been lost or damaged while in Blockquarry's possession. Blockquarry finally allowed Bitmain access to the Croker, Missouri facility at which Blockquarry is storing the Mining Servers, on December 28, 2023. During the site visit, Bitmain discovered that Blockquarry is no longer in possession of more than 1,500 of the Mining Servers and that other of the Mining Servers were damaged due to water leakage and rust. (N. Clifford Letter of December 29, 2023, attached hereto as Exhibit C.) Moreover, Bitmain has reason to believe that Blockquarry filed the serial numbers off of more than 3,000 of the Mining Servers. In addition, Blockquarry itself has represented to the Court that it is no longer in possession of more than 300 Mining Servers that Bitmain has identified by serial number as its own. (ECF No. 88.)

### IV. Blockquarry Challenges Bitmain's Right to Recover the Mining Servers.

Throughout this litigation, Blockquarry has represented to the Court that it does not itself own the majority of the bitcoin mining servers at the Gaffney Data Center Facility. In fact, it has repeatedly stated that the Mining Servers are the property of its "client," Bitmain. *E.g.*, ECF No. 1 at ¶ 30 ("Blockquarry's clients own personal property kept on the Premises, including over 5,000 Bitcoin mining servers"); ECF No. 9 at 7 ("Blockquarry's clients own over 5,000 Bitcoin mining servers installed in Blockquarry's mining pods on the Premises"); *id.* at 9 (property at the Gaffney Data Center Facility "is the property of Blockquarry and Blockquarry's clients"); *id.* at 13 ("if Blockquarry's clients' personal property, of which Blockquarry is the bailee, is not returned, the likely irreparable harm could be even more grave"). Blockquarry's Complaint identified "over 5,000 Bitcoin mining servers" at the facility, of which Blockquarry admitted it was the bailee, (ECF No. 1 at ¶ 30), a claim Blockquarry repeated in its Motion for a Temporary Restraining Order and Preliminary Injunction, (ECF No. 9 at 7), and its Motion for Partial Default Judgment as to

6

Litchain. (ECF No. 63.) Blockquarry is right to make these representations to the Court. The Mining Servers are Bitmain's property. Until now, Bitmain has relied on Blockquarry's representations to the Court and its private representations to Bitmain in allowing Blockquarry to represent Bitmain's interests in this litigation.

But now, in a pretextual effort to further stymie the proper return of Bitmain's property, Blockquarry has broken its promise to return the Mining Servers and has recently attempted to cast doubt on Bitmain's right to recover them.[1] Contrary to Gaffney BPW's representation that Blockquarry would disburse the Mining Servers to Bitmain by December 19, Blockquarry now refuses to return the Mining Servers to Bitmain "until Bitmain proves ownership." (T. Speer email of January 12, 2024, attached hereto as Exhibit D.) But Bitmain has already done so. In February 2023, Bitmain provided a purchase order to Blockquarry that plainly established Bitmain's ownership of the Mining Servers. (*Id.*; February 20, 2024 letter from M. Feinstein to T. Speer, attached hereto as Exhibit E; K. Farrell email of February 28, 2024, attached hereto as Exhibit F.) Bitmain also, with Blockquarry's knowledge, provided to Gaffney BPW in May 2023 an inventory of Mining Servers to which Bitmain possessed a right of return, which Blockquarry did not challenge until recently. Additionally, Blockquarry has challenged the inclusion of an inventory of Bitmain's Mining Servers in any order the Court might issue in this litigation. (ECF No. 88.)

---

[1] A cursory review of the chain of custody for the Mining Servers shows the absurdity of Blockquarry's position. Blockquarry took possession of the Mining Servers at the Gaffney Data Center as Bitmain's bailee. The Mining Servers were operated at the Gaffney Data Center for a time before Gaffney BPW disconnected electrical power and locked the facility. Once Gaffney BPW unlocked the facility, Blockquarry removed the Mining Servers and transported them to its facility in Missouri. At all times Blockquarry was either responsible for the Mining Servers as bailee or in direct possession of the Mining Servers. It strains credulity to suggest that unbeknownst to any of the parties another entity entered the Gaffney Data Center or Blockquarry's Missouri facility and replaced Bitmain's Mining Servers with its own. And in the unlikely event that did happen, Blockquarry, as bailee of Bitmain's Mining Servers, would be responsible for the loss.

**STANDARD OF REVIEW**

"Individuals or organizations may seek intervention under Rule 24 in two ways: by right or with the court's permission." *Middleton v. Andino*, 481 F. Supp. 3d 563, 566 (D.S.C. 2020). A potential intervenor has a right to join pending federal litigation where "(1) the application to intervene [is] timely; (2) the applicant [has] an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Backus v. South Carolina*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012) (citing Fed.R.Civ.P. 24(a); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir.1981)).

Even when intervention is not required by Rule 24(a), District Courts have the discretion to allow intervention under Rule 24(b) where "the proposed intervenor, on timely motion, 'has a claim or defense that shares with the main action a common question of law or fact' and the intervention will not 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Planned Parenthood S. Atl. v. Wilson*, No. CV 3:21-00508-MGL, 2021 WL 878791, at *2 (D.S.C. Mar. 9, 2021) (citing Fed.R.Civ.P. 24(b)(1)(B), (b)(3)).

The standard of review should be liberally construed in favor of intervention "to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

**ARGUMENT**

Bitmain has the right to intervene in this litigation. Bitmain's motion is a timely response to Blockquarry's refusal to return Bitmain's Mining Servers or to admit Bitmain's ownership

interest in the Mining Servers—a change in its representations to the other parties and the Court that now casts doubt on Blockquarry's ability to adequately protect Bitmain's interest in the subject matter of this litigation. If the Court were not to allow Bitmain to intervene in this litigation, no other party would protect Bitmain's interest in protecting and preserving the safety of the Mining Servers until Bitmain can obtain relief in its pending arbitration against Blockquarry. Forcing Bitmain to pursue its claims through separate litigation will at minimum lead to the inefficient use of judicial resources and runs the risk of depriving Bitmain the ability to fully recover in the arbitration.

Alternatively, the Court should exercise its discretion to allow Bitmain to intervene in this litigation given common issues of law and fact relating to preserving Bitmain's Mining Servers.

## I. Bitmain's Motion is Timely

"When determining the timeliness of a motion to intervene, the Court must examine three factors: '[1] how far the underlying suit has progressed; [2] the prejudice any resulting delay might cause the other parties; and [3] why the movant was tardy in filing its motion.'" *Planned Parenthood S. Atl.*, No. CV 3:21-00508-MGL, 2021 WL 878791, at *3 (quoting *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014)). Each factor weighs in favor of Bitmain.

### A. Bitmain Has Moved Expeditiously in Response to Drastic Changes in the Litigation Landscape.

In determining the timeliness of a motion to intervene, courts in the Fourth Circuit do not simply calculate the amount of time that has elapsed since the suit was filed. *See Atkins v. State Bd. of Ed. of N. C.*, 418 F.2d 874, 876 (4th Cir. 1969) ("[T]imeliness is not an absolute. It should be evaluated in light of all the circumstances"). Rather, "the timeliness of a motion to intervene is determined by reference to the date when the movants learned that intervention was needed to protect their interests." *Saunders v. S.C. Pub. Serv. Auth.*, No. CV 2:03-0934-23, 2006 WL

9

8445351, at *4 (D.S.C. Apr. 12, 2006), *aff'd sub nom. Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303 (Fed. Cir. 2007). A motion to intervene is timely where the movant responds quickly to new information in the case that implicates its interests. *See United States of Am. for use & benefit of Robert Lloyd Elec. Co. v. Fluor Enterprises, Inc.*, No. 6:19-CV-2419-JD, 2021 WL 5331173, at *2 (D.S.C. Nov. 16, 2021) (motion for intervention was timely even though filed two years after filing of litigation because it came thirty-two days after defendant's counterclaim, which implicated the potential intervenor's interests).

Until recently, Bitmain did not have reason to intervene in this litigation because Blockquarry's representations to Bitmain and the Court led Bitmain to believe that Blockquarry would adequately protect Bitmain's ownership interest in the Mining Servers. Blockquarry has represented to the Court numerous times that significant amounts of personal property at the Gaffney Data Center Facility belong to Blockquarry's client, Bitmain, and that Blockquarry understood its obligation as a bailee to safeguard that property.[2] Contrary to Blockquarry's representation to the Court that "Blockquarry and the third-party [i.e., Bitmain] will coordinate return of this property [i.e., the Mining Servers] to the third-party," (Mot. for Partial Def. J., ECF

---

[2] *See, e.g.*, ECF No. 1 at ¶ 30 ("Additionally, Blockquarry's clients own personal property kept on the Premises, including over 5,000 Bitcoin mining servers installed in Blockquarry's mining pods. Blockquarry is the bailee of its client's personal property kept on the Premises."); ECF No. 9 at 7 ("[I]n addition to Blockquarry's own servers, Blockquarry's clients own over 5,000 Bitcoin mining servers installed in Blockquarry's mining pods on the Premises, in addition to other personal property. Blockquarry is the bailee of its client's personal property kept on the Premises."); *id.* at 9 (property at the Gaffney Data Center Facility "is the property of Blockquarry and Blockquarry's clients."); *id.* at 13 ("if Blockquarry's clients' personal property, of which Blockquarry is the bailee, is not returned, the likely irreparable harm could be even more grave."); Mot. for Partial Default J., ECF No. 63 at 4 (Blockquarry "is the owner of the Cryptocurrency Mining Equipment and bailee for other personal property on the Premises."); *id.* at 7 ("As alleged as is undisputed by the Utility, some of the personal property belongs to a third-party, which is Blockquarry's client.)

No. 63 at 7), Blockquarry has removed Bitmain's Mining Servers from the Gaffney Data Center and has transported them to Blockquarry's facility in Missouri over Bitmain's objection.[3]

Two months ago, Blockquarry for the first time asserted that Bitmain cannot prove ownership of the Mining Servers and now refuses to return Bitmain's Mining Servers. Bitmain moved quickly to intervene after Blockquarry demonstrated it cannot adequately protect Bitmain's interest in this litigation by challenging Bitmain's ownership of the Mining Servers. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394, 97 S. Ct. 2464, 2470, 53 L. Ed. 2d 423 (1977) (intervention was timely where putative class member moved to intervene "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives").

As noted above, Blockquarry has consistently represented that it served as bailee of Bitmain's property at the Gaffney Data Center Facility, and Gaffney BPW has disclaimed any ownership interest in the Mining Servers. (*See, e.g.*, ECF No. 23 at ¶ 49, stating "Gaffney BPW does not make an independent claim of entitlement to the Cryptocurrency Mining Equipment and does not wish to keep, use, or otherwise assert control over it.") Only with Blockquarry's January 12, 2024 Response to Gaffney BPW's Motion for Partial Default Judgment as to Litchain—in which Blockquarry disputes Gaffney BPW's reference to an inventory of Bitmain's Mining Servers—have the existing parties disputed Bitmain's ownership of the Mining Servers. (ECF No. 88.)

Bitmain's Motion is timely. Bitmain has moved expeditiously to intervene in this litigation after discovering that, contrary to its representation to Bitmain, to Gaffney BPW, and to the Court,

---

[3] Bitmain believes that the removal of the Mining Servers from the Gaffney Data Center Facility violates the Court's April 12, 2023 Order that the parties not allow the property as the Gaffney Data Center Facility to be spoliated or wasted.

11

Blockquarry had no intention of returning Bitmain's Mining Servers and in fact had allowed Bitmain's Mining Servers to be damaged. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 560 (E.D. Va. 2018) (motions to intervene were timely when intervenors filed their motions shortly after a party's new litigation strategies implicated the intervenors' interests for the first time).

**B.     Blockquarry Is Responsible for Any Delay in Bitmain's Motion to Intervene.**

A motion to intervene is timely where the potential intervenor has "legitimate reasons for [its] delay." *Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 478 (M.D.N.C. 2005) (intervention nine months after filing of the complaint was timely where intervenor "sought alternative methods of resolution instead of immediately intervening in this action."). Any delay in Bitmain bringing this Motion is due to Bitmain's attempt to resolve its dispute with Blockquarry without litigation, during which Blockquarry strung Bitmain along, continually representing that it would return the Mining Servers to Bitmain while having no intention of doing so. After Blockquarry transported Bitmain's property to Missouri, Bitmain sought to resolve its dispute with Blockquarry by negotiating Blockquarry's purchase of the Mining Servers. Only after Blockquarry terminated these negotiations on February 14, 2024 did Bitmain understand that it could not protect its ownership interest in the Mining Servers without resorting to legal process. (Ex. E.)

Preventing Bitmain from intervening in this litigation due to any perceived delay would only reward Blockquarry's dilatory and extortionate tactics.

**C.     Intervention Would Not Prejudice the Existing Parties.**

The Court need not consider the potential prejudice to the existing parties of Bitmain's motion to intervene, because "prejudice bears on the timeliness criteria if there is 'any resulting delay' from '***belated*** intervention.'" *Maxum Indem. Co. v. Biddle L. Firm, PA*, 329 F.R.D. 550,

12

554 n.2 (D.S.C. 2019) (quoting *Alt*, 758 F.3d at 591). Here, as discussed above, Bitmain has moved quickly to respond to new facts that require it to intervene in this litigation to protect its interest in the Mining Servers, therefore its intervention is not "belated." For the reasons discussed, the fault for any delay rests squarely on Blockquarry.

"[C]ourts should be reluctant to dismiss a request for intervention as untimely inasmuch as the proposed intervenor may be seriously harmed if intervention is denied." *Loc. 1829 of United Mine Workers of Am. v. Island Creek Coal Co.*, 157 F.R.D. 380, 383 (N.D.W. Va. 1994). As discussed below, if the court does not grant Bitmain's request to intervene, Bitmain may lose the ability to seek sanctions against Blockquarry for the spoliation, waste, or dissipation of the Mining Servers in violation of the Court's April 12 Order. *See infra*, § II.B.

## II.     Bitmain Has the Right to Intervene in This Litigation.

Having brought a timely motion, Bitmain has a right to intervene in this litigation. Blockquarry's recent challenge to the ownership of the Mining Servers puts its interests directly at odds with the interest Bitmain seeks to protect by intervening. Without a party to adequately protect its interests, Bitmain's ownership interest in the Mining Servers may be impaired by Blockquarry's failure to abide by the terms of its settlement agreement with Gaffney BPW and both Blockquarry and Gaffney BPW's failure to comply with the Court's April 12 Order.

### A.     Bitmain Has an Ownership Interest in the Mining Servers.

To intervene as a matter of right, the proposed intervenor must have "an interest in the subject matter" of the current litigation. *Backus*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2. Bitmain easily satisfies this requirement.

Bitmain seeks to intervene in this litigation to protect its ownership interest in the Mining Servers that were hosted at the Gaffney Data Center Facility. "'Interests in property are the most

elementary type of right that Rule 24(a) is designed to protect.'" *Genesis Press, Inc. v. MAC Funding Corp.*, No. C.A. 6:08-2115-HMH, 2008 WL 3200742, at *1 (D.S.C. Aug. 5, 2008) (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.1970). Bitmain has an interest in seeking provisional injunctive relief to maintain the status quo in order to protect and preserve the safety of Bitmain's Mining Servers while Bitmain seeks permanent relief in the pending arbitration against Blockquarry and seeking sanctions for violation of the Court's April 12, 2023 Order. *See Id.* at *2 (allowing owner of printing presses to intervene in litigation that concerned an insurance claim for damage to its printing presses); AAA Commercial Rule 38 ("A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."); AAA Commercial Rule 54 ("No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.").

Moreover, Bitmain is a third-party beneficiary with an interest in the settlement agreement between Blockquarry and Gaffney BPW. In requiring Blockquarry to transfer property to Bitmain, the settlement agreement "confer[s] a direct and substantial benefit" on Bitmain, making Bitmain a third-party beneficiary with the ability to enforce the settlement agreement. *TC X, Inc. v. Commonwealth Land Title Ins. Co.*, 928 F. Supp. 618, 623 (D.S.C. 1995), *aff'd*, 86 F.3d 1152 (4th Cir. 1996).

Bitmain has the right to intervene in this litigation to protect its ownership interest in the Mining Servers that Blockquarry is unlawfully detaining and to prevent further loss or damage.

> **B.    Denying Bitmain the Right to Intervene in this Litigation Would Impair Bitmain's Ability to Protect Its Interest in the Mining Servers.**

Bitmain can amply demonstrate "that the ability to protect its interest would be impaired if denied the ability to intervene." *Thomas v. Andino*, 335 F.R.D. 364, 370 (D.S.C. 2020). "This

14

requirement is one of 'practical impairment,'" and does not require that a potential intervenor have no remedy absent intervention. *Maxum Indem. Co.*, 329 F.R.D. at 555. Procedural limitations on an intervenor's ability to protect its interests can constitute "practical impairment." *See Feller*, 802 F.2d at 730.

Bitmain must intervene in this litigation to prevent further loss or damage to the Mining Servers until Bitmain can obtain relief in the arbitration against Blockquarry. Blockquarry and Gaffney BPW's violations of the Court's April 12, 2023 Order, which cautioned that "any party that engages in spoliation of evidence or waste of the personal property at issue in this action, or otherwise dissipates such personal property, tangible or intangible, pending an order of this court does so at its own peril and the court reserves the right to sanction any such conduct," (ECF No. 9), demonstrates why such injunctive relief is appropriate. And it appears that Blockquarry does not intend to return the Mining Servers to Bitmain under the settlement agreement between Gaffney BPW and Blockquarry, which Gaffney BPW represented would occur by December 19, 2023. As discussed above, Bitmain's Mining Servers have been damaged, and Blockquarry has removed the Mining Servers to Missouri over Bitmain's objection, giving Bitmain grounds to seek sanctions against Blockquarry. This litigation is the proper venue for Bitmain to seek sanctions for violation of an order of this Court in this litigation. If the Court does not allow Bitmain to intervene in this litigation, Bitmain may lose such a remedy.

Similarly, denial of Bitmain's request to intervene in this litigation would significantly impact Bitmain's ability to enforce the settlement agreement between Gaffney BPW and Blockquarry, which required Blockquarry to disburse the Mining Servers to Bitmain by December 19, 2023.

### C. The Existing Parties Are Not Adequately Protecting Bitmain's Interest in the Mining Servers.

The Supreme Court has set a low bar for determining the adequacy of an existing party's representation of a potential intervenor's interest. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538, 92 S. Ct. 630, 636, 30 L. Ed. 2d 686 (1972). The intervenor need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id.*; *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (allowing intervention by party that "may share some objectives" with existing party).

By denying Bitmain's ownership of the Mining Servers, transporting the Mining Servers to Missouri over Bitmain's objection, and refusing to return the Mining Servers to Bitmain, Blockquarry has demonstrated that it does not adequately protect Bitmain's interests in the Mining Servers. In addition, Gaffney BPW has disclaimed all interest in the Mining Servers, (*see, e.g.*, ECF No. 68 at 5, stating that "Gaffney BPW . . . does not and has never made an independent claim to the Cryptocurrency Mining Equipment) and entered into an agreement with Blockquarry that allowed Blockquarry to remove the Mining Servers from the Gaffney Data Center Facility. (Ex. B.)

### III. Alternatively, Permissive Intervention is Appropriate.

"'Permissive Intervention' . . . allows the court, in its discretion, to permit anyone to intervene upon timely motion who 'has a claim or defense that shares with the main action a common question of law or fact.'" *vonRosenberg v. Lawrence*, No. CV 2:13-587-RMG, 2017 WL 3638436, at *2 (D.S.C. Aug. 23, 2017) (quoting Fed. R. Civ. P. 24(b)(1)(B)). "Rule 24(b) is to be construed liberally in favor of intervention," so that all claims regarding a particular set of facts may be resolved in one action. *Backus*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2.

### A. Bitmain's Proposed Intervenor Complaint Shares Common Questions of Law and Fact with Claims in the Current Litigation.

"The court may allow intervention if the movant shows that its timely motion to intervene alleges at least one common question of law or fact." *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009). Bitmain's proposed intervenor complaint shares common questions of fact and law with the existing parties' claims. Bitmain seeks to maintain the status quo in order to protect and preserve the Mining Servers.

### B. No Prejudice

Bitmain's intervention in this litigation will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). Bitmain does not seek to set aside the parties' settlement agreement or alter their proposed orders of default judgment against Litchain. Rather, Bitmain seeks to enter this litigation to protect Bitmain's Mining Servers until it can obtain relief in the pending arbitration against Blockquarry.

### CONCLUSION

Blockquarry has deceived Gaffney BPW, Bitmain, and the Court by representing that it acknowledged Bitmain's ownership of the Mining Servers and would return them to Bitmain as soon as Gaffney BPW released the Mining Servers from its facility. Blockquarry has strung Bitmain along for months while Bitmain attempted to resolve this issue without burdening the Court, but Blockquarry's recent termination of negotiations between the parties has shown this effort to be futile. Accordingly, Bitmain moves to intervene in this litigation to protect its interest in property that Blockquarry has unlawfully detained and to enforce the Gaffney BPW-Blockquarry settlement agreement.

*[SIGNATURE PAGE FOLLOWS]*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By:    */s/Paul Collins*
       Paul Collins
       Federal Bar No. 9055
       paul.collins@nelsonmullins.com
       1320 Main Street, 17th Floor
       Columbia, SC 29201
       803.255.9747

*Attorneys for Plaintiff Bitmain Technologies Georgia Limited*

Columbia, South Carolina

March 27, 2024