CIL-202206-008

**EXHIBIT 1**

## BIT5IVE, LLC
### AMENDMENT #1 TO HOSTING AND SECURITY AGREEMENT

This Amendment #1 to that Hosting and Security Agreement (this "**Amendment**") is effective as of May _21_, 2022, by and between Bit5ive, a Florida LLC ("**Host**"), and Crypto Infiniti LLC ("**Client**", and together with the Host, the "**Parties**"), as an amendment to that Hosting and Security Agreement (the "**Agreement**") which is not dated, and is entered into by and between the Parties, and is attached hereto as Exhibit A.

**WHEREAS,** the Parties desire and agree to amend the Agreement as set forth herein;

**NOW, THEREFORE,** in consideration of the premises and of the mutual promises herein contained, the parties agree as follows:

1. Paragraph 1.2 is hereby amended and restated fully as follows:

    Installation and Testing. Upon receipt of Client's Equipment, Host shall perform commercially reasonable testing in accordance with Host's equipment testing procedures and notify Client of any malfunctioning Client Equipment within forty-eight (48) hours of discovering the malfunction. Host shall install properly functioning Client's Equipment in the Client Space under the supervision of the Client's assigned supervisor. Host shall be liable for any damage to the equipment caused by the technical irregularity performed by Host during the installation. The location of the Client Space shall be 2076 Foster Mill Drive, LaFayette, GA 30728 as to 4MW and shall be 124 Hyatt St., Gaffney, SC 29341 as to 8MW; *provided, however*, that Client's reasonable preferences identified to Host may be considered. Host shall not be liable for any defects or malfunctions in Client's Equipment or for failing to identify any hidden defects during installation or testing.

2. Paragraph 12.6 is hereby amended and restated fully as follows:

    Assignment. Either Party may assign this Agreement or resell the Services, or sublicense or sublease the Services without the prior written consent of the other Party in such Party's sole and exclusive discretion.

3. Exhibit A is hereby amended and restated fully as follows:

Exhibit A

Client Equipment

| QTY | Description |
|---|---|
| 1,055 | Bitmain Antminers |

4. The table under the first recital is hereby amended to reflect the following which shall be effective beginning on July 1, 2022:
    a. Total Power Supply: 12MW
    b. Monthly Hosting Rate: Actual Electric Consumption of Client Equipment at $0.055/kWh as to 8mw at the Gaffney, South Carolina facility and $0.06/kWh as to 4mw at the Lafayette, GA facility.

1

c. The term of the Agreement shall begin on the Commencement Date and end on the date two (2) calendar year(s) following of the Commencement Date (the **"Initial Term"**).
d. The Agreement is automatically renewing for periods of one year unless terminated solely by the Client in compliance with the Initial Terms.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Hosting and Security Agreement as of the Effective Date.

**Bit5ive LLC**

By: _/s/ R. D. Collazo_

Name: Robert Collazo
Title: President and CEO

Email: robert@bit5ive.com

Address: 12301 NW 112 Ave
Medley, FL 33178


**Crypto Infiniti LLC**

By: _/s/ Yi Lin_

Name: Yi Lin

Title: Director

2

## Hosting and Security Agreement

This Hosting and Security Agreement ("**Agreement**") is effective as Service Commencement Date ("**Effective Date**"), by and between Bit5ive, a Florida LLC ("**Host**"), and the client listed below ("**Client**", and together with the Host, the "**Parties**"), for bitcoin mining hosting and related services.

WHEREAS, Client's information is as follows:

> Client Name: Crypto Infiniti LLC
>
> Client Email: cryptoinfiniti8@gmail.com
>
> Client Address: 200 S. Virginia 8th Floor
>
> Reno Nevada 89501
>
> Monthly Hosting Rate: Actual Electric Consumption of Client Equipment at $0.06/kWh
>
> Hosting Amount Due at Signing: $360,000
> four (4) months upfront estimated monthly usages at $0.06/kWh plus one (1) month estimated monthly usage at $0.06/kWh as security deposit)
>
> Estimated Service Commencement Date: June 21st to June 25th

WHEREAS, Host is a hosting provider of turnkey bitcoin mining services, and Client seeks to utilize Host's services.

NOW, THEREFORE, in consideration of the premises and of the mutual promises herein contained, the parties agree as follows:

**1.     Host Service Obligations.**

1.1.     Services. Client has, or shall promptly, deliver the Digital Asset mining equipment listed on **Exhibit A** attached hereto (the "**Client Equipment**") to Host. Host shall receive and test Client's Equipment, provide rack space allocation for Client's Equipment ("**Client Space**"), installation services, electrical power supply, cooling infrastructure, network connectivity, and technical support, as outlined in Section 1.4, 1.5, and 1.6 (collectively, the "**Services**"), for the Term (as defined in Section 3.01). Host shall promise the capability to host and repair the exact models of mining equipment listed on Exhibit A.

1.2     Installation and Testing. Upon receipt of Client's Equipment, Host shall perform commercially reasonable testing in accordance with Host's equipment testing procedures and notify Client of any malfunctioning Client Equipment within 48 hours of discovering the malfunction. Host shall install properly functioning Client's Equipment in the Client Space under the supervision of the Client's assigned supervisor. Host shall be liable for any damage to the equipment caused by the technical irregularity performed by the Host during the installation. The location of the Client Space shall be determined by Host, in its sole discretion, provided, however, that Client's reasonable preferences identified to Host may be considered. Host shall not be liable for any defects or malfunctions in Client's Equipment or for failing to identify any hidden defects during installation or testing.

1.3.     Commencement Date. Host shall make commercially reasonable efforts to begin providing Services on the Estimated Service Commencement Date identified in the preamble of this Agreement, provided, however, that, subject to Section 3(c), Host shall not be responsible for any delay in the date Service begins for any reason, including delay in receipt of Client's Equipment,

force majeure, lack of available rack space, or electrical or network connectivity problem. The Host agrees the Commencement Date will be the date that 95% of the equipment is on and commissioned in working order.

1.4.    <u>Maintenance</u>. Host shall perform such maintenance actions as Host deems necessary or desirable with respect to the buildings and facilities owned or leased by Host in which the Client Space is located ("**Data Center**"), and maintain Host's network ("**Maintenance**"). Client acknowledges and agrees that the performance of Maintenance may cause the network to be temporarily inaccessible and the Services temporarily unavailable to Client. Host shall use commercially reasonable efforts to conduct such Maintenance in a manner so as to avoid or minimize the unavailability of the Services. If Maintenance is expected to interrupt the availability of Services, Host shall give Client notice 48 hours prior by e-mail prior to conducting such maintenance, identifying the time and anticipated duration of the Maintenance.

1.5.    <u>Repairs</u>. Host shall monitor Client's Equipment and shall, within a reasonable period, contact Client if any of Client's Equipment is not operational. At Client's request, Host shall perform diagnostic and repair engineering work ("**Engineering Work**") on Client's Equipment. Host shall be the exclusive provider of Engineering Work. Engineering Work shall be billed in hour increments and shall include all time expended to diagnose problems, communicate and receive Client instructions, perform repairs and report results. Engineering Work will be billed at the rate of $25.00 per hour, not including the cost of any materials or equipment supplied or purchased by Host. Client hereby releases, subject to the Host exercising reasonable care and diligence, and shall hold Host, its employees and contractors harmless from and against all losses relating to Host's performance of such Engineering Work. The response time for Engineering Work shall be based upon available resources at time of Client request. Client hereby authorizes Host to open and modify Client Equipment for repairs requested in accordance with this Section 1.05, and acknowledges that such requests may void the warranty of the equipment. Any hardware repair or replacement determined necessary by Host shall be as agreed by the parties prior to making additional purchases.

1.6.    <u>Downtime</u>. Except in the event of Maintenance, Client's Equipment failure, and force majeur conditions, each month, Host shall provide the Services to Client ninety five percent (95%) of the time[1] ("**Minimum Service Level**"). Client agrees that Host may assign Host's mining equipment or the mining equipment of other clients that is materially similar to Client's Equipment to target Client's Bitcoin address, according to Host's Service policies and programs. In the event that Services are not provided at the Minimum Service Level, Client shall receive a credit equal and limited to a discount in proportion to the Monthly Rate for the amount of downtime beyond the Minimum Service Level ("**Service Level Credit**").[2] The Service Level Credit shall be applied in equal installments over the Clients next two (2) monthly payments. In the last two (2) months of the term any Service Level Credit must be refunded for its cash value.

**3.    <u>Client Obligation</u>**

3.1.    <u>Accurate Information</u>. Client shall provide Client's Bitcoin address to Host in compliance with Host's Bitcoin address procedure. Client shall verify that Host has correctly installed Client's Bitcoin address and shall immediately notify Host if there is any inaccuracy in Client's Bitcoin address.

3.2.    <u>Security</u>. Client shall provide all end-user equipment, software and all other telecommunications, and related equipment that Client deems necessary or desirable for Client's receipt of Digital Assets. Host shall be solely responsible for installation, maintenance, configuration, connection, inter-connection, and all other support in connection with all equipment and personal property to be used by Client to access the Host website and receive and store Digital Assets. Client shall keep Client's Digital Assets, including Client's private key, secure. Host does not provide, and Client shall hold Host harmless from, user or access security with respect to any of Client's Equipment or the Data Center, and shall be solely responsible for user access security and network access to Client's Equipment. Host shall not provide any service to detect or identify any security breach of Client's Equipment or the Data Center. Host does not provide any

---

[1]

[2]

tests employing tools and techniques intended to gain unauthorized access to Client's Equipment or Client's personal property.

3.3.   Compliance with Laws. Client shall at all times comply with the laws, regulations and rules of any applicable governmental or regulatory authority, including, without limitation, Money Service Business regulations under the Financial Crimes Enforcement Network ("**FinCen**"); state money transmission laws; laws, regulations, and rules of relevant tax authorities; applicable regulations and guidance set forth by FinCEN; the Bank Secrecy Act of 1970; the USA PATRIOT Act of 2001; AML/CTF provisions as mandated by U.S. federal law and any other rules and regulations regarding AML/CTF; issuances from the Office of Foreign Assets Control ("**OFAC**"); the National Futures Association; the Financial Industry Regulatory Authority; and the Commodity Exchange Act.

4.   **Term & Right Of Termination.**

4.1.   Initial Term. The term of the Agreement shall begin on the Commencement Date and end on the first anniversary of the Effective Date ("**Initial Term**"). At the end of the Initial Term, this Agreement shall expire.

4.2.   Termination.

(a)   Termination by Either Party. This Agreement may be terminated by either Party, at any time, without liability to the other Party, for any one or more of the following: (i) the non-terminating Party breaches any material term of this Agreement and fails to cure such breach (if susceptible to cure) within fifteen (15) days after receipt of written notice of the same (provided, however, in the event this Agreement provides that termination of any rights shall be immediate for any specific breach, then no such notice period shall not be required); (ii) the non-terminating Party becomes the subject of a voluntary or involuntary proceeding relating to insolvency, bankruptcy, receivership, liquidation, or reorganization for the benefit of creditors, and such petition or proceeding is not dismissed within sixty (60) days of the filing thereof; or (iii) a court or other government authority having jurisdiction over the Services prohibits Host from furnishing the Services to Client.

(b)   Termination by Host. Host may terminate Client's rights to any or all Services if (i) Client fails to pay any sum for Services when such payment is due (and such failure remains uncured for a period of 30 days.)

(c)   Termination by Client. Client may terminate any or all Services if (i) Client provides Host with written notice of non-renewal at least ninety (90) days before the end of the Term, (ii) Service has not started as of the date two (2) months after the Estimated Service Commencement Date, or (iii) Client pays a termination fee in the amount of fifty percent (50%) of the remaining fees for the Term, or (iv) Host failed to maintain the Minimum Service Level for 3 consecutive months during the Term, or (v) Host failed to provide agreed host and repair services to the Client's equipment.

4.3.   Return of Client Mining Equipment. Upon Client's request, and provided that Client is current on all amounts due to Host, Host shall return Client's Equipment. Shipping and handling costs shall be paid by Client to Host in advance. Risk of loss during shipping shall be borne by Client. Host recommends insurance on all such shipments and, at Client's direction and cost, will obtain such insurance on behalf of Client. Upon termination of this Agreement for any reason, if Client does not provide return directions within fifteen (15) days of termination of this Agreement, Host shall dispose of Client's Equipment and account to the Client for any proceeds net of costs. Host is not responsible for any cosmetic damage or operation deficiency from Client's Equipment, and Host will not repair or reimburse the Client in any form.

5.   **Invoice, Rates And Payment Terms.**

5.1.  <u>Invoice</u>. Host will provide an invoice to the Client setting out the all Fee's and Services, including as set out in the Rates below, and for any Repairs provided under this agreement. The invoice will be provided by the Host to the Client via email no later than 5 days past the end of month to an address specified by the Client.

5.2.  <u>Rates</u>. Host will invoice, via electronic communication, Client for all Services on a monthly basis, at the rate set forth in the preamble and in the agreement or as agreed in writing between the parties from time to time, setting out the basis of fees. The Host will invoice for the Monthly rate in advance and all other charges in areas.

5.3.  <u>Payment Term</u>. Client shall pay all invoices in within 10 days of receipt, with time is of the essence in the payment of each and every invoice. If any invoice amount shall be due and unpaid on the fifth (5th) day of any month for which any fees have not been paid in full to Host (subject to a Disputed Invoice), the Host may turn off Client's Equipment, and/or disable Client's access to accounts until all fees due to Host are paid in full, or redirect the Clients equipment for the Hosts benefit until payment is made. If after 30 days the Host continues to be unpaid, the Host may (i) terminate Service, and must apply the Security Deposit to the outstanding balance and, subject to their continuing to be an outstanding balance, (ii) seize and dispose of or sell the Client's Equipment for market value and use the proceeds to satisfy any amounts due to the Host (including disposal costs) by Client and account to the Client for the balance of proceeds.

5.4.  <u>Payment Currency and Taxes</u>

(a)  Except for payments made in United States Dollars or USD Tether (USDT, equivalent to US Dollar), Host reserves the right to reject any payment, or require additional payment based on the conversion rate of such payment to United States Dollars.

(b)  Client shall be responsible for all taxes (including, without limitation, sales, use, transfer, privilege, excise, consumption and other taxes), fees, duties, governmental assessments, impositions and levies, related to the provision of Services.

5.5.  <u>Rate Changes</u>. Host reserves the right to modify its rates (a) at the end of the agreement Term for the renewal term, provided Host notifies Client at least ninety (90) days in advance of the effective date of such rate change, upon a material and substantiated increase in any of Host's operating costs, including, without limitation, power rates, facility leasing rates, tax rates or increased regulatory compliance costs.

5.6.  <u>Security Deposit</u>. A security deposit equivalent to the rate for one (1) month shall be required at the execution of the agreement. The security deposit shall be returned within 3 business days to Client at the end of the Agreement Term. Client shall not be entitled to a refund of the security deposit if any damages, default in payment, or overages are incurred.

5.7.  <u>Disputed invoices</u>. Any disputed invoices must be registered in writing within seven (7) days of the invoice date and the undisputed portion paid in full. Disputes registered after thirty (30) days must be paid in full first. Client waives the right to dispute an invoice amount after sixty (60) days past the invoice date. Any disputed amounts resolved in favour of Client will be credited to Customer's account and amounts payable to Host shall be paid within ten (10) days of dispute resolution.

5.8.  <u>Upfront Payment</u>. An upfront payment equivalent to the rate for four (4) months shall be required at the execution of the agreement. The Upfront Payment shall serve as the first three (3) monthly payments and the final monthly payment of Client's term. Any remaining of the first three (3) month upfront payments shall be credited to the fourth month payment. Any remaining of the final month payment of the terms shall be returned within 3 business days to the Client at the end of the agreement term.

7.  <u>**SECURITY INTEREST**</u>. CLIENT HEREBY GRANTS HOST A SECURITY INTEREST IN ALL CLIENT'S EQUIPMENT IN HOST'S POSSESSION, NOW OR AT ANY TIME HEREAFTER, IN

ORDER TO SECURE THE TIMELY PERFORMANCE OF THIS AGREEMENT BY CLIENT AND SECURE THE PAYMENT OF ALL INVOICES, CHARGES, AND COSTS. FURTHERMORE, CLIENT GRANTS HOST A SECURITY INTEREST IN ALL CLIENT'S EQUIPMENT FOR THE PAYMENT OF ENGINEERING WORK, LABOR OR OTHER CHARGES THAT ARE DUE AND UNPAID BY THE CLIENT.

8. **Waivers**.

8.1.     Digital Assets. Host does not own or control any Digital Assets the Equipment and does not own or control the underlying software protocols of Digital Asset networks which govern the operation of Digital Assets. Host is not responsible for the operation of the underlying protocols, and makes no guarantees regarding their security, functionality, or availability. In no event shall Host be liable to Client or anyone else for any loss or injury resulting directly or indirectly from any services provided by Host, including, but not limited to, any loss caused in whole or in part by any inaccuracies or incompleteness, delays, interruptions, errors or omissions, including, but not limited to, those arising from Host's negligence or contingencies beyond Host's control in procuring, compiling, interpreting, computing, reporting, or delivering the Services thereon or the information therein. In no event shall Host be liable to Client or anyone else for any decision made or action taken by Client in reliance on, or in connection with the Services. This limitation on liability includes, without limitation, any damage or interruptions caused by any computer viruses, spyware, scamware, trojan horses, worms, or other malware that may affect Client's computer or other equipment, or any phishing, spoofing, domain typosquatting, or other attacks, failure of mechanical or electronic equipment or communication lines, telephone or other interconnect problems, unauthorized access, theft, operator errors, strikes or other labor problems, or any force majeure. If this disclaimer of liability section is deemed to conflict with any other section of this agreement, this disclaimer of liability section supersedes the other section (collectively, "**Hacking**"). For purposes of this Agreement, "**Digital Asset**" means any digital asset, cryptocurrency, virtual currency, digital currency, or digital commodity, including, without limitation bitcoin and ether, which is based on the cryptographic protocol of a computer network that may be (a) centralized or decentralized, (b) closed or open-source, and (c) used as a medium of exchange and/or store of value.

8.2.     Limitation on Liability. Client understands and agrees that use of telecommunications and data communications networks and the Internet may not be secure and that connection to and transmission of data and information over the Internet and such facilities provides the opportunity for unauthorized access to wallets, computer systems, networks, and all data stored therein. Information and data transmitted through the Internet or stored on any equipment through which Internet information is transmitted may not remain confidential and Host does not make any representation or warranty regarding privacy, security, authenticity, and non-corruption or destruction of any such information. Host does not warrant that the Services or Client's use will be uninterrupted, error-free, or secure. Host shall not be responsible for any adverse consequence or loss whatsoever to Client's (or its users' or subscribers') use of the Services or the Internet. Use of any information transmitted or obtained by Client from Host is at Client's own risk. Host is not responsible for the accuracy or quality of information obtained through its network, including as a result of failure of performance, error, omission, interruption, corruption, deletion, defect, delay in operation or transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites. Host does not control the transmission or flow of data to or from Host's network and other portions of the Internet, including the Digital Asset networks. Such transmissions and/or flow depend in part on the performance of telecommunications and/or Internet services provided or controlled by third parties. At times, actions or inactions of such third parties can impair or disrupt Host or Client's connections to the Services. Host does not represent or warrant that such events will not occur and Host disclaims any and all liability resulting from or related to such acts or omissions.

8.3.     No Other Warranty. The Services (including all materials supplied and used therewith) are provided "as is" "where is", and Client's use of the Services is at its own risk. Host does not make, and hereby disclaims, any and all representations and warranties, express or implied, whether in fact or by operation of law, statutory or otherwise, including, but not limited to, any representation or warranty regarding the price or liquidity of any Digital Asset, either now or in the future, warranties of merchantability, habitability, marketability, profitability, fitness for a particular purpose, suitability, noninfringement, title, or arising from a course of dealing, or trade practice.

8.4.    <u>Consequential Damages Waiver</u>. In no event will either Party be liable to the other for any type of incidental, special, exemplary, punitive, indirect or consequential damages, including, but not limited to, lost revenue, lost profits, replacement goods, loss of technology, rights or services, loss of data, or interruption or loss of use of service or equipment, even if such Party was advised of the possibility of such damages, and whether arising under theory of contract, tort, strict liability or otherwise.

8.5.    <u>Electronic Communications Privacy Act Notice</u>. Host may monitor any and all communications through or with the Data Center. Client agrees Host is not considered a "secure communications medium" for the purposes of the Electronic Communications Privacy Act of 1986, and that no expectation of privacy is thereby created.

8.6.    <u>Security</u>. The Security of Client's account and any Digital Assets is solely the Client's responsibility. Client shall notify Host if Client suspects Client's account or Digital Assets have been hacked, stolen, accessed without authorization, or otherwise compromised. If Host suspects any security violations have occurred related to Client's account or Digital Assets, Host may suspend access to Client's account and hardware pending resolution. Host may cooperate in any government or legal investigation regarding any aspect of the Services.

8.7.    <u>Legal Processes</u>. Host and its affiliates, service providers, and their respective officers, directors, agents, joint venturers, employees and representatives, may comply with any writ of attachment, execution, garnishment, tax levy, restraining order, subpoena, warrant or other legal process, which Host reasonably and in good faith believes to be valid. Host may notify Client of such process by electronic communication. Host may charge Client for associated costs, in addition to any legal process fees. Client agree to indemnify, defend, and hold all of us harmless from all actions, claims, liabilities, losses, costs, attorney's fees, or damages associated with Host's compliance with any process that Host reasonably believes in good faith to be valid.

9.    <u>**Representations, and Indemnification**</u>.

9.1.    <u>Mutual Representations</u>. Host represents, warrants and covenants that: (a) Host has full power and authority to enter into this Agreement and perform Host's obligations hereunder, and (b) Host's performance of its obligations hereunder will not violate any applicable laws or require the consent of any third party.

9.2.    <u>Client Representations</u>. Client represents, warrants and covenants that: (a) Client has full power and authority to enter into this Agreement and perform Client's obligations hereunder, (b) Client has clear title, free and clear of all security interests or liens, to Client's equipment, including the legal right to use, operate and locate Client's Equipment in the Data Center; and (c) Client's performance of its obligations hereunder and receipt of the Digital Assets will not violate any applicable laws or require the consent of any third party.

9.3.    <u>Indemnity</u>. In addition to any other applicable rights under this Agreement, Client agrees to indemnify, defend and hold harmless Host and its officers, managers, partners, members, agents, employees, affiliates, attorneys, heirs, successors and assigns (collectively "**Host Parties**") from any and all claims, demands, actions, suits, proceedings, and all damages,

8

judgments, liabilities, losses, and expenses, including, but not limited to, reasonable attorneys' fees ("**Losses**"), arising from or relating to (a) any legal, regulatory or governmental action against or including Client, (b) the maintenance or operation of Client's Equipment, (c) any Loss by any of Client, its officers, managers, partners, members, agents, employees, affiliates, attorneys, heirs, successors or assigns (collectively "**Client Parties**"), (d) any claim by an affiliate of the Client Parties, including a customer, relating to, or arising out of, this Agreement or the Services (including claims arising from or relating to interruptions, suspensions, failures, defects, delays, impairments or inadequacies in any of the aforementioned Services), (e) any breach or nonperformance by Client Parties of any provision or covenant contained in this Agreement or the Services, or (f) any claim related to Hacking.

10. **Mutual Confidentiality**.

    10.1.   Disclosure and Use. Each Party agrees that it will not use in any way, nor disclose to any third party, the other Party's Confidential Information, and will take reasonable precautions to protect the confidentiality of such information, as stringently as it takes to protect its own Confidential Information, but in no case will the degree of care be less than reasonable care. Nothing herein shall preclude disclosure by a Party to that Party's attorneys, accountants and employees who have a bona fide need to know the other Party's Confidential Information in connection with the receiving Party's performance under this Agreement. Each Party agrees to only make copies of the other's Confidential Information for purposes consistent with this Agreement, and each Party shall maintain on any such copies a proprietary legend or notice as contained on the original or as the disclosing Party may request. For purposes of this Section 8.01, "**Confidential Information**" means information which (i) derives actual or potential economic value from not being generally known to, and not available through proper means, by other persons who could obtain economic value from receipt or use of such information, (ii) is the subject of reasonable efforts by its owner to maintain its confidentiality or secrecy, or (iii) is by its nature confidential, trade secrets or otherwise proprietary to its owner. Confidential information includes the terms and conditions of this Agreement, software source and object code, inventions, know-how, data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, configurations, plans, processes, financial and business plans, names of actual or potential Clients or suppliers, Data Center configuration, and proprietary technology developed or created by Host, including Host's operations, design, content, hardware designs, algorithms, software (in source and object forms), user interface designs, architecture, class libraries, and documentation (both printed and electronic), know-how, trade secrets and any related intellectual property rights throughout the world, and any derivative works, improvements, enhancements or extensions thereof.

    10.2.   Exclusions from Confidentiality Obligations. Notwithstanding the confidentiality obligations required herein, neither Party's confidentiality obligations hereunder shall apply to information which: (a) is already known to the receiving Party (other than the terms of this Agreement); or (b) is required to be disclosed by Law, provided, however, if either Party is at any time requested or required to disclose any information supplied to it in connection with this Agreement, the Party agrees to provide the other Party with prompt notice of such request.

11. **Remedies**.

    11.1.   Service Failures. Client accepts that Service shall not be available uninterrupted, error-free or on a completely secure basis. Except as set forth in Section 1.06, payments due to Host are not subject to Client's charge, offset, diminution or other deduction. In the event that Host fails to provide Service and Host determines in its reasonable judgment that such failure was the result of (i) any Force Majeure condition, (ii) any actions or inactions of Client, including any

activity under Client's control or within the obligations undertaken by Client (including, without limitation, Hacking, inaccurate or corrupt data, use of the Services other than in accordance with the directions of Host, failure or inability of Client to receive Digital Assets, failure of the underlying software protocols of the Digital Asset networks, and problems in Client's local environment), or (iii) Maintenance, then Host shall have no obligation to credit Client any amount for any such failure.

11.2.    Alternative Dispute Resolution. Except as set forth in this Section 9, any and all disputes, complaints, controversies, claims and grievances arising under, out of, in connection with, or in any manner related to this Agreement or the relationship of parties hereunder shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The obligation to arbitrate shall extend to any affiliate, subsidiary, officer, employee, shareholder, principal, agent, trustee in bankruptcy or guarantor of a party making or defending any claim hereunder. Any decision and award of the arbitrator shall be final, binding and conclusive upon all of the parties hereto and said decision and award may be entered as a final judgment in any court of competent jurisdiction. Notwithstanding said Rules, any arbitration hearing to take place hereunder shall be conducted in Miami, Florida, before one (1) arbitrator who shall be an attorney who has substantial experience in commercial law issues. This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Florida (not including the choice of law rules thereof). However, neither Party shall institute an arbitration, or any other proceeding to resolve such disputes between the parties before that Party has sought to resolve disputes through direct negotiation with the other Party. If disputes are not resolved within three (3) weeks after a demand for direct negotiation, the parties shall attempt to resolve disputes through mediation conducted in Miami, Florida. If the parties do not agree on a mediator within ten (10) days, either Party may request the American Arbitration Association to appoint a mediator who shall be an attorney who has substantial experience in commercial law issues. If the mediator is unable to facilitate a settlement of disputes within forty-five (45) days, the mediator shall issue a written statement to the parties to that effect and the aggrieved Party may then seek relief through arbitration as provided above. The fees and expenses of the mediator shall be split and paid equally by each of the parties. In the event of any arbitration between the parties hereto involving this Agreement or the respective rights of the parties hereunder, the Party who does not prevail in such arbitration shall pay all the prevailing Party's reasonable attorneys' and experts' fees, costs and expenses incurred by the prevailing Party in resolving said matter. As used herein the term 'prevailing Party' shall include, but not be limited to, a Party who obtains legal counsel or brings an action against the other by reason of the other's breach or default and obtains substantially the relief sought whether by compromise, settlement, or judgment. execution of this Agreement, the parties consent to the jurisdiction of the American Arbitration Association and waive any objection which either Party may have to any proceeding so commenced based upon improper venue or forum non conveniens.

12.    **Miscellaneous Provisions**.

12.1.    Modification. This Agreement may be modified only by a written instrument executed by authorized representatives of each of the Parties.

12.2.    Service Agreement. This Agreement is a services agreement and is not intended to and will not constitute a lease of or tenancy or other interest in the Data Center or any of premises owned or leased by Host, any equipment provided by the Host or any other real or personal property.

12.3.    Relocation of Client Equipment or Client Space. If it is necessary or desirable, for Host's efficient use of the Data Center, to relocate the Client Equipment or Client Space to another area in the Data Center(s), the Parties will cooperate in good faith with each other to facilitate such

relocation. Host shall be solely responsible for the costs incurred by Host in connection with any such relocation. Relocation made by Host at the request of Client, will be at the sole expense of Client. Host will use commercially reasonable efforts to minimize and avoid any interruption in Services during such relocation.

12.4.   <u>Force Majeure</u>. Host shall not be responsible for any failure to perform its obligations under this Agreement if such failure is caused by hurricane, war, labor strike, terrorist act, fire, flood, earthquake, natural disaster, act of Government, or other events beyond the Host's reasonable control.

12.5.   <u>Notice</u>. Any notice required to be given hereunder may be delivered or furnished using electronic communications and shall be in writing and shall be deemed to have been delivered when sent.

12.6.   <u>Assignment</u>. Neither Party may assign this Agreement or resell the Services, or sublicense or sublease the Services without the prior written consent of the other, provided, however, either Party may freely assign or transfer its rights or obligations under this Agreement if such transfer occurs by operation of law under a bona fide merger, divestiture, consolidation, or reorganization, or to any purchaser of all or substantially all of the assets of the business of the assigning Party, provided the assignee is bound by this Agreement, is financially able to complete its obligations, and is not a direct competitor of the non-assigning Party.

12.7.   <u>Entire Understanding</u>. This Agreement constitutes the entire understanding and agreement of the Parties related to the subject matter hereof, and supersedes and replaces any and all prior or contemporaneous discussions, agreements and understandings related to such matters. This Agreement may be executed electronically in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument.

12.8.   <u>Attorneys' Fees</u>. If either Party retains an attorney to enforce the terms of this Agreement or to collect money due hereunder, the prevailing Party shall be entitled to recover reasonable attorneys' fees, court costs and other related expenses incurred in connection therewith.

12.9.   <u>Independent Contractors</u>. Host and Client are independent contractors; this Agreement will not establish any relationship of partnership or agency. Client has no rights as a tenant or otherwise under any real property or landlord/tenant laws.

12.10.  <u>Savings Clause</u>. If any provision of this Agreement is adjudged by a court or arbitrator to be invalid, illegal or unenforceable, the same will not affect the validity, legality, or enforceability of any other provision of this Agreement. All terms and conditions of this Agreement will be deemed enforceable to the fullest extent permissible under applicable law.

12.11.  <u>No Waiver</u>. The failure by either Party to enforce any rights hereunder shall not constitute a waiver of such right(s) or of any other or further rights hereunder. The waiver of any breach or default of this Agreement will not constitute a waiver of any subsequent breach or default.

12.12.  <u>Third Party Beneficiaries</u>. There shall be no third party beneficiaries to this Agreement.

12.13.  <u>Governing Law</u>. This Agreement will be governed by and construed in accordance with the laws of the State of Florida except its conflicts of law principles.

12.14.  <u>Construction</u>. Capitalized terms used but not defined in this Agreement shall have the meanings given to them in the Definitions, attached hereto as <u>Schedule A</u>. The recitals and preamble are incorporated herein as if set forth at length.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have executed this Hosting and Security Agreement as of the Effective Date.

**Bit5ive LLC**

By: _[signature]_

Name: Robert Collazo
Title: President and CEO

Email: robert@bit5ive.com

Address: 12301 NW 112 Ave
Medley, FL 33178

**Crypto Infiniti LLC**

By: _Yi Lin_

Name: Yi Lin

Title: Director

13

**Exhibit A**

**Client Equipment**

The client equipment is the combination of:

| QTY | Description |
| --- | --- |
| 491 | Bitmain T17plus Antminers, 58 th/s, 50 W/th |
| 69 | Avalon A1166PRO, 81 th/s, 42W/th |