IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br>   Plaintiff, <br><br>v. <br><br>Litchain Corp. and Gaffney Board of Public Works, <br><br>   Defendants. | C/A No. 7:23-cv-01427-TMC |
| Gaffney Board of Public Works, <br><br>   Defendant/Counter and Cross-Claimant, <br><br>v. <br><br>Blockquarry Corp. f/k/a ISW Holdings, Inc., <br><br>   Counterclaim Defendant, <br><br>and <br><br>Litchain Corp., <br><br>   Crossclaim Defendant. | **PROPOSED CROSSCLAIM DEFENDANT CRYPTO INFINITI LLC'S REPLY TO GAFFNEY'S RESPONSE IN OPPOSITION TO ITS FED. R. CIV. P. 24(a)(2) MOTION TO INTERVENE** |

The proposed intervenor CI[1] submits this reply to Gaffney's response in opposition to its motion to intervene.

  **I. CI'S PRELIMINARY STATEMENT REGARDING GAFFNEY**

Gaffney previously stated that after the "termination of the ground lease, [it] padlocked the premises to keep it secure." (ECF No. 26, at 8). Subsequently, "[i]t . . . received demands for the

---

[1] CI will continue to use the short form names of the parties and witnesses consistent with its opening motion.

1

return of the [bitcoin mining] equipment left onsite from Litchain, Blockquarry, Bitmain, and BEEQB, LLC. (ECF No. 26, at 8) (affidavit citations omitted). Further, "[d]ue to the potentially competing demands for the return of the [bitcoin mining] equipment, Gaffney BPW asserted amended counter and crossclaims for declaratory judgment and interpleader that seek relief consistent with the relief sought herein." (ECF No. 26, at 8) (affidavit citations omitted). Notwithstanding the prudent course of action outlined by Gaffney, it and Blockquarry later reached an agreement that resulted in Blockquarry taking *all* the bitcoin mining equipment.

On March 6, 2024, after having learned about this conduct, CI moved to intervene in Gaffney's then-pending interpleader and declaratory judgment counterclaims/crossclaims. CI's litigation goal is, of course, to present evidence that it is the owner of the bitcoin mining equipment detailed in the Zhang Declaration attached to its motion, and to have the same returned to it. (ECF No. 94-2, Zhang Declaration, ¶¶24-30, 42).

On March 12, 2024, Gaffney informally responded to CI's motion by voluntarily dismissing the interpleader claim. (ECF No. 95). In its formal response, Gaffney now argues that its remaining declaratory judgment claim is moot—even though it is still pending and Gaffney still seeks a ruling on that claim—because it already released the bitcoin mining equipment to Blockquarry. (Gaffney Response, at 2). The mootness argument is that because Gaffney already allowed Blockquarry to take the bitcoin mining property, there is nothing for the Court to rule on. The Court should, respectfully, reject this argument.

The Court has the unquestionable authority to require Blockquarry and Gaffney to cause the bitcoin mining equipment to be returned to its owners pursuant to an Order issued by the Court. At their own peril, Gaffney and Blockquarry moved the bitcoin mining equipment without first

2

seeking approval from the Court. Their conduct does not render the declaratory judgment claim moot.

Gaffney also appeals to the Court to consider its "rate payers" and the further expense of litigation. (Gaffney Response, at 12). The Court should, respectfully, reject that argument, too. Those same "rate payers" certainly had no complaints receiving the substantial monthly electric utility payments while the site was active.

## II.  GAFFNEY'S DECLARATORY JUDGMENT CLAIM IS ACTIVE AND NOT MOOT

Gaffney argues that the CI's motion should be denied because the claims it seeks leave of court to defend are, "dismissed, inactive, and moot." (Gaffney Response, at 8). As noted above, Gaffney dismissed its interpleader claim after CI moved to intervene. However, it has not dismissed the declaratory judgment claim regarding the deposit refund and the bitcoin mining equipment. Gaffney still seeks entry of an Order from the Court ruling on it. (Gaffney Response, at 8). That claim, as styled by Gaffney, "Relat[es] to [the] Return of Deposit Refund and Cryptocurrency Mining Equipment." (ECF No. 23, at 38). That claim seeks a declaratory judgment "as to the manner in which the Deposit Refund and Cryptocurrency Mining Equipment left onsite at 150 Hyatt Street should be distributed." (ECF No. 23, ¶67 (last sentence)). Accordingly, "inactive" is not a word that describes that claim.

Gaffney finally argues that the declaratory judgment claim is moot because it already allowed Blockquarry to take possession of the equipment. Gaffney is wrong. "The mootness doctrine is rooted in the case-or-controversy limitation on federal judicial power contained in Article III, Section 2 of the Constitution." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). "A pending lawsuit is rendered moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 162 (citations

3

omitted). In a declaratory judgment action, "[t]he real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).

It is axiomatic that the Court has jurisdiction over the parties and can issue an Order, binding on the parties to the litigation, that resolves any motion or claim before the Court. An Order of the Court will affect the behavior of the parties, as between each other, regarding which party takes final possession of the property in dispute. An Order from this Court will "declare the rights and other legal relations of [the] interested part[ies]." 28 U.S.C. § 2201; *see also* Gaffney Am. Answer Counterclaim and Crossclaim, at 38, ¶ 66 (citing the statute).

Furthermore, there is a live controversy over whether Gaffney and Blockchain ran afoul of this Court's April 12, 2023, Order.[2] As the Court knows, it "admonishe[d] all litigants that ***any party*** that engages in spoliation of evidence or waste of the personal property at issue in this action, or otherwise dissipates such personal property, tangible or intangible, pending an Order of this court does so at its own peril and the court reserves the right to sanction any such conduct." (ECF No. 9) (emphasis added). Notwithstanding this Order—and notwithstanding Gaffney and Blockquarry's receipt of multiple claims of property interests in the bitcoin mining equipment from third parties—Gaffney and Blockquarry cavalierly chose to let Blockquarry take the bitcoin mining equipment.

---

[2] The motions practice between Gaffney and Blockquarry regarding security at the site, (ECF Nos. 96, 104), further demonstrate there is a live controversy on this issue. Reading between the lines of the motions and affidavits, it appears that some of the bitcoin miners were either stolen, lost, or damaged during their storage or removal. This controversy, and who is to blame, strengthens the need for the Court to allow CI to intervene and potentially use the Court's April 12, 2023, Order to be made whole.

4

In addition, CI has a legally cognizable interest in the outcome of the question of who owns what property and whether Blockquarry is wrongly in possession of the property of others. (*See* Zhang Declaration, ¶¶24-30, 42).[3] This legally cognizable interest will be addressed by a Court Order declaring "the manner in which the Deposit Refund and Cryptocurrency Mining Equipment left onsite at 150 Hyatt Street should be distributed." (ECF No. 23, ¶67 (last sentence)). Gaffney cannot manufacture mootness by transferring the bitcoin mining equipment. The Court can still issue an Order finding that Gaffney should not have allowed the transfer of the bitcoin mining equipment and directing it and Blockquarry to pay to have the bitcoin mining equipment transferred to its rightful owners, as determined by the Court. The Court can, alternatively, issue an Order directing Gaffney and Blockquarry to pay to have the bitcoin mining equipment transferred to its rightful owners, as determined by the Court, and simply avoid addressing the parties' premature movement of that equipment. The potentiality for the Court to issue either of those Orders, pursuant to the pending declaratory judgment claim, means that the claim is not moot.

Lastly, Gaffney argues in passing that it "no longer has standing to bring" the declaratory judgment claim to which CI seeks to intervene. (Gaffney Response, at 9). This argument is, of course, undermined by the fact that Gaffney still seeks entry of an Order addressing this precise claim. The standing argument is not otherwise briefed. Accordingly, CI will not address the passing argument.

---

[3] A company named Bitmain Technologies Georgia Limited filed a motion to intervene on March 27, 2024. (ECF No. 106). Bitmain maintains that Blockquarry is wrongfully in possession of its bitcoin mining equipment. (ECF No. 106-2, at 2). Bitmain's motion and CI's motion are a direct result of Gaffney and Blockquarry's conduct.

### III. GAFFNEY'S TIMELINESS ARGUMENTS ARE ADDRESSED IN CI'S REPLY TO BLOCKQUARRY'S RESPONSE AND GAFFNEY'S FED. R. CIV. P. 24(a)(2) ARGUMENT IS ADDRESSED IN THE MOOTNESS SECTION ABOVE

Gaffney argues that CI's motion was untimely and that it does not meet the FED. R. CIV. P. 24(a)(2) requirements for intervention. (Gaffney Response, at 9-10). CI's reply to Blockquarry's response sets forth the position of CI on the timeliness issue. (CI Reply to Blockquarry Response, at 3-9). CI's motion was timely based upon the timeline and facts identified in its motion to intervene and reply to Blockquarry's response. Gaffney's secondary argument, that CI does not meet the requirements of Rule 24(a)(2), is premised on Gaffney's incorrect legal argument that the declaratory judgment claim is moot. As noted above, the claim is not moot.

### IV. CONCLUSION

Gaffney's efforts to prevent CI from reclaiming its property through this action should be rejected. The Court has jurisdiction over the parties and the property involved in this dispute. As a result, CI must intervene in this action to reclaim its property.[4] CI's motion should be deemed timely. CI meets each of the elements necessary for intervention as of right. Accordingly, CI respectfully requests that the Court grant its motion.

*[SIGNATURE PAGE FOLLOWS]*

---

[4] If the Court is inclined to allow Gaffney to remove itself from the dispute, then CI respectfully requests the opportunity to amend its motion to intervene to include a proposed declaratory judgment complaint against Blockquarry regarding CI's ownership of the bitcoin mining equipment.

|  |  |
|---|---|
|  | Respectfully submitted, |
| April 3, 2024 | **BURL F. WILLIAMS, P.A.** |
|  | /s/ Burl F. Williams<br>Burl F. Williams (D.S.C. Bar No. 10556)<br>201 Riverplace Suite 501<br>Greenville, South Carolina 29601<br>864-546-5035<br>burl@burlfwilliams.com |
|  | *Counsel for Crypto Infiniti LLC* |